IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 19-cv-01711 |
| v. | ) ) ) | Honorable Thomas M. Durkin |
| RIVER NORTH EQUITY LLC, EDWARD M. LICEAGA, MICHAEL A. CHAVEZ, NANOTECH ENTERTAINMENT, INC., NANOTECH GAMING, INC., DAVID R. FOLEY, LISA L. FOLEY, JEFFREY A. FOLEY, and BENNIE L. BLANKENSHIP, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

---

**DEFENDANTS RIVER NORTH EQUITY LLC AND EDWARD M. LICEAGA'S
MEMORANDUM IN SUPPORT OF
<u>MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S COMPLAINT</u>**

Defendants River North Equity LLC ("**River North**") and Edward M. Liceaga ("**Mr. Liceaga**"), by and through their undersigned counsel, hereby respectfully move this Court to partially dismiss Plaintiff Securities and Exchange Commission's ("**Plaintiff,**" "**SEC,**" or the "**Commission**") Complaint (Docket Entry 1), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the ground that Count VII (against River North), Count VIII (against Mr. Liceaga), and Count IX (against Mr. Liceaga) of the Complaint fail to state a claim against either River North or Mr. Liceaga upon which relief may be granted. In furtherance of the same, River North and Mr. Liceaga respectfully state as follows:

## I.      INTRODUCTION

This is a matter wherein Plaintiff has alleged that Defendants David R. Foley ("**Defendant Foley**") and Bennie L. Blankenship ("**Defendant Blankenship**") orchestrated an illegal market manipulation scheme so that Defenant Foley could sell shares of Nanotech Entertainment, Inc. ("**NTEK**") and Nanotech Gaming, Inc. ("**NTGL**") to River North. Although Plaintiff's Complaint does not allege that either River North or Mr. Liceaga was aware of such illegal market manipulation scheme, Plaintiff has charged River North with purportedly acting as an unregistered securities dealer in violation of the federal securities laws for purchasing and selling the NTEK and NTGL shares at issue in this matter, and has charged Mr. Liceaga with purportedly (1) aiding and abetting River North's purportedly violative conduct and (2) acting as a control person over River North in connection with its purportedly violative conduct.[1]

With sparse factual allegations, which appear to present a case of first impression in this Circuit, the SEC is attempting to expand the registration requirements under the Securities

---

[1] Count I of the Commission's Complaint also charges River North and Mr. Liceaga with violating Sections 5(a) and 5(c) of the Securities Act of 1933. Such allegations are not addressed in this Motion to Dismiss, and River North and Mr. Liceaga will both seek dismissal of Count 1 at the summary judgment stage in this matter.

Exchange Act of 1934 (the **"Exchange Act"**) far beyond the scope for which they were intended. More importantly, the Commission's claims directly contrast long-established guidance set forth in prior SEC pronouncements, which make a distinction between a "trader," who is <u>not</u> required to be licensed with the Commission, and a "dealer," who is subject to Commission registration. If the Commission's attempt in this matter is successful, then every day trader, hedge fund, or other market participant who purchased and sold securities for a profit would be acting as an unregistered dealer and subject to sanctions. Such an outcome is unjust on its face because Congress, and not the federal courts, is the proper forum for the Commission to engage in rulemaking. Indeed, due process forbids the Commission from doing so. As set forth herein, Counts VII, VIII, and IX of the Commission's Complaint fail to state a cause of action against either River North or Mr. Liceaga upon which relief may be granted.

## II.    THE COMMISSION'S ALLEGATIONS

Plaintiff's allegations in its Complaint relevant to this Motion to Dismiss are as follows: River North is based in Chicago, and has operated as an investment firm that buys and sells penny stocks through the conversion of promissory notes since 2013. Complaint at ¶19. According to its website, River North invests in small and microcap businesses, and purchases penny stocks from certain holders of convertible debt instruments and then sells those shares. *Id.* at ¶44  During the time period at issue in this matter, River North purchased and sold 60 other microcap securities, acquiring more than 9 billion shares from these companies and obtaining more than $14 million from the sale of those shares. *Id.* at ¶45. "River North operated as a [securities] dealer, and as part of its regular business regularly engaged in buying and selling securities for its own account . . . without being registered with the SEC." *Id.* at ¶134  Mr. Liceaga is River North's President and sole manager. *Id.* at ¶20. He "has testified that he

specialized in purchasing convertible debt and aged debt instruments." *Id.* at ¶45. Based upon the foregoing allegations, the Commission has charged River North with acting as an unregistered securities dealer in violation of Section 15(a) of the Exchange Act (Count VII) for buying and selling the NTEK and NTGL shares for River North's own accounts, and has charged Mr. Liceaga with (1) aiding and abetting River North's violations of Section 15(a) of the Exchange Act (Count VIII) and (2) acting as a control person over River North in connection with its buying and selling the NTEK and NTGL shares at issue in this matter (Count IX). *Id.* at ¶¶133-145.[2]

For the purposes of the instant motion, it is important to note the absence of certain allegations in the Commission's Complaint. For example, the Complaint correctly does not allege that River North or Mr. Liceaga <u>ever</u> (a) advertised or otherwise held itself out publicly as willing to buy or sell securities for or from its own account on a continuing basis (contemporaneously), (b) purchased or sold securities as principal from or to customers, (c) carried a dealer inventory in securities, (d) quoted a market in any securities, (e) provided investment advice, (f) extended or arranged for the extension of credit in connection with securities transactions, (g) ran a book of repurchase and/or reverse repurchase agreements, (h) used an interdealer broker for securities transactions, (i) loaned securities to customers, (j) issued or originated securities, (k) guaranteed contract performance or indemnified parties for any loss or liability from the failure of a transaction to be successfully consummated, or (l) participated in a selling group or acted as an underwriter. As detailed more fully herein, the absence of such allegations is significant in connection with this Court's review of the conclusory allegations in the Commission's Complaint.

---

[2] *See supra* note 1.

### III. ARGUMENT

In this matter, the Commission is essentially attempting to cast River North and Mr. Liceaga in the same mold as a Merrill Lynch, UBS, or the numerous other securities dealers who buy and sell securities contemporaneously, make markets in securities issued by public companies, and engage in numerous other activities common to securities dealers. After engaging in a lengthy investigation into River North's and Mr. Liceaga's activities and finding no fraudulent conduct, the Commission is now attempting to use this Court to reverse its longstanding public policy against taking enforcement actions against "traders," who simply buy and sell securities for their *own* benefit and self-interest but who are not in the business of providing services to third-parties. As set forth below, the Commission's Complaint is vague and conclusory, and fails to meet the requirements of Rule 12(b)(6).

### A. THE SEC IS AN ORDINARY LITIGANT WHEN IT INVOKES THE PROCESSES OF THE COURTS

As a preliminary matter – and at the risk of stating the obvious – although the SEC is a governmental agency, once it becomes a litigant and seeks redress from the court, it is subject to the same pleading and discovery standards as any other litigant. *See SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 414 (S.D.N.Y. Jan. 13, 2009) ("Like any ordinary litigant, the Government must abide by the Federal Rules of Civil Procedure."). Accordingly, the Commission is not entitled to any leniency from this Court for its pleading deficiencies detailed herein.

### B. STANDARD OF REVIEW – MOTIONS TO DISMISS UNDER RULE 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a complaint that fails to plead facts sufficient to "state a claim to relief that is plausible on its face" should be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). Moreover, even

4

though the Court must accept the Plaintiff's allegations as true at the pleading stage, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *Iqbal*, 556 U.S. at 678. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Shield Tech. Corp. v. Paradigm Positioning*, LLC, 908 F. Supp. 2d 915, 917 (N.D. Ill. 2002). To survive a Rule 12(b)(6) motion, the Commission's Complaint "must not only provide defendant[s] with fair notice of a claim's basis but must also be facially plausible." *See SEC v. Ustian*, 229 F.Supp.3d 739, 760 (Jan. 24, 2017 N.D. Ill.). As further articulated herein, Plaintiff has failed to state a claim against either River North or Mr. Liceaga with respect to Counts VII, VIII, and IX of its Complaint, and dismissal of such claims is appropriate.

### C. RIVER NORTH ACTED AS A TRADER, AS OPPOSED TO A DEALER, AND THE COMMISSION HAS NOT ALLEGED OTHERWISE

#### 1. The SEC has Long Recognized the Distinction Between "Dealers" and "Traders"

Count VII of the Complaint alleges that River North acted as an unregistered securities dealer. Complaint at ¶¶133-136. Section 3(a)(5)(A) of the Exchange Act defines "dealer" as, in pertinent part, "any person engaged in the business of buying and selling securities (not including security-based swaps, other than security-based swaps with or for persons that are not eligible contract participants) for such person's own account through a broker or otherwise." 15 U.S.C. §78c(a)(5)(A). The primary factors in determining whether a person is a "dealer" are whether the person trades for his or her own account and whether he or she does so "as part of a regular business." Robert L.D. Colby, Lanny A. Schwartz, and Zachary J. Zweilhorn, *Broker-Dealer Regulation*, Chapter 2, at §2.3.1.A. (Practicing Law Institute, 2016) (relevant portion attached

5

hereto as "Exhibit A"). Unless an exemption is available, dealers must register with the SEC pursuant to Section 15(a) of the Exchange Act.

Section 3(a)(5)(B) of the Exchange Act contains an exemption for "a person that buys or sells securities (not including security-based swaps, other than security-based swaps with or for persons that are not eligible contract participants) for such person's own account, either individually or in a fiduciary capacity, but not as part of a regular business." 15 U.S.C. §78c(a)(5)(A). The SEC has taken the position that a person must buy and sell securities – or be willing to do so – contemporaneously to be considered a "dealer." *See, e.g.*, National Council of Savings Institutions, SEC No-Action Letter, 1986 SEC No-Act. LEXIS 2609 (July 27, 1986) (discussing the distinction between a "dealer" and "trader") (attached hereto as "Exhibit B").[3] Commentators have noted that "[t]his approach is necessary to distinguish dealers from investors who buy and sell securities for investment purposes, but sometimes hold the position for only a short period of time." Colby, at §2.3.1.B, at 2-58.

"Traders" are excluded from the definition of a "dealer" by Section 3(a)(5)(B). The dealer-versus-trader distinction has provided a framework for distinguishing those that fall within the definition of "dealer," as opposed to "traders" (who also buy and sell securities for their own accounts but do not fall within the definition of a "dealer.") In 2002, for example, the

---

[3] An SEC No-Action Letter is a letter issued by the SEC Staff providing that it will not prosecute an individual or entity based upon specific facts and circumstances set forth in the individual's or entity's request. Fast Answers: No Action Letters (Mar. 23, 2017), *available at* https://www.sec.gov/fast-answers/answersnoactionhtm.html; *see also, Garner v. Wolfinbarger,* 56 F.R.D. 499, 503 (S.D. Ala. 1972) (A SEC No-Action Letter is "a letter from the SEC staff that it would not recommend prosecution in the event" that certain actions were or were not taken by the requestor).

Some federal courts have stated while SEC No-Action Letters are not afforded the same level of deference as rule-making orders, they are nonetheless treated as "persuasive." *NYCERS v. SEC*, 45 F.3d 7, 13 (2d Cir. 1995). Indeed, the Eleventh Circuit has looked to SEC No-Action Letters in resolving disputes over terminology and definitons that are germane to the securities industry. *SMF Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1339 (11th Cir. 2010); *see also Thompson v. RelationServe Media, Inc.*, 610 F.3d 628 (11th Cir. 2010).

6

Commission proposed rules regarding bank securities activities under the Exchange Act as part of its implementation of Gramm-Leach-Bliley Act of 1999. *See* Definition of Terms in and Specific Exemption for Banks, Savings Associations, and Savings Banks Under Sections 3(a)(4) and 3(a)(5) of the Securities Exchange Act of 1934 (**"Proposed Dealer Exemption Rule"**), Exchange Act Release No. 46745 (Oct. 30, 2002), 67 Fed. Reg. 67,496, 67,498 (Nov. 5, 2002) (the **"Release"**) (attached hereto as "Exhibit C"). In the Release, the SEC discussed the dealer-versus-trader distinction at some length, describing the distinction as follows:

> As developed over the years, the dealer/trader distinction recognizes that dealers normally have a regular clientele, hold themselves out as buying or selling securities at a regular place of business, have a regular turnover of business (or participate in the distribution of new issues), and generally transact a substantial portion of their business with investors (or, in the case of dealers who are market makers, principally trade with other professionals). **In contrast, traders have less regular volume, do not handle others' money or securities, do not make a market, and do not furnish the dealer-type services such as rendering investment advice, extending or arranging credit, or lending securities.**

Proposed Dealer Excemption Rule at *6 (emphasis added). As the SEC's own guidance makes clear, dealers make money by helping others through securities transactions, such as by handling investor monies or securities, making markets, extending credit to investors, or giving investment advice to investors. *See Guide to Broker-Dealer Registrations,* "Who is a Dealer" ("[I]ndividuals who buy and sell securities for themselves generally are considered traders not dealers"), http://www.sec.gov/divisions/marketreg/bdguide.htm#lI (April 2008).

The SEC has not alleged – nor can it allege – that River North engaged in any of the conduct that would render it a dealer pursuant to the SEC's own standards and pronouncements. Neither River North nor Mr. Liceaga are alleged to have handled monies for third-parties, made markets in any security, provided advice, or lent monies. Indeed, lest there be any confusion

7

over the distinction between a "dealer" and "trader," and what constitutes "a regular business" for purposes of the definition, the SEC explained it in *Gordan Wesley Sodorff, Jr.* (Admin. File Proc. No. 3-7390), 1992 SEC LEXIS 2190 (Sept. 2, 1990), which was an appeal from a decision by a National Association of Securities Dealer's Disciplinary Panel. In *Sodorff,* the SEC stated that:

> The definition of dealer contains an exclusion for activity that is not part of "a regular business." **The purpose of this phrase is to "exclude from the definition of 'dealer' members of the public who buy and sell securities for their own account as ordinary traders," even though their trading may involve more than isolated transactions**. Unlike an investor or trader, Sodoroff's profits did not result from appreciation in the value of the securities, but rather from his markup over the price he paid. Sodoroff solicited investors and handled their money and securities, rendered investment advice, and sent subscription agreements to investors for their review and signature, all of which are characteristics of dealer activity.

*Id.* at *18 (emphasis added). In reference to these activities, the SEC stated: "[t]hese factors distinguish the activities of a dealer from those of a private investor or trader." *Id.* at n.27; *see also* Burton Securities, SEC No-Action Letter, 1977 SEC No-Act. LEXIS 2871 at *2 (Dec. 5, 1977) ("[A] person who buys and sells securities for his own account in the capacity of a 'trader' or individual investor is generally not considered to be 'engaged in the business' of buying and selling securities . . . ."). As noted herein, the Commission in this matter has only alleged that River North traded for its own account, and has not alleged that River North provided any services to third-parties.

Similarly, in a number of SEC No-Action Letters concerning the requirement of dealer registration under Section 15(a), the Commission's Staff has stated that a person or entity would *not* be a "dealer" based on a consideration of the following factors, if it did not: (i) advertise or otherwise hold itself out publicly as willing to buy or sell securities from its own account on a continuing basis; (ii) purchase or sell securities as principal from or to customers; (iii) carry a

8

dealer inventory in securities; (iv) quote a market in securities; (v) provide investment advice; (vi) extend or arrange for the extension of credit in connection with securities transactions; (vii) run a book of repurchase and reverse repurchase agreements; (viii) use an interdealer broker for securities transactions; (ix) lend securities to customers; (x) issue or originate securities; (xi) guarantee contract performance or indemnify the parties for any loss or liability from the failure of the transaction to be successfully consummated; and (xii) participate in a selling group or act as an underwriter. *See, e.g.*, Acqua Wellington North American Equities Fund, Ltd., SEC No-Action Letter, 2001 SEC No-Act. LEXIS 756 (Oct. 11, 2001); Davenport Management, Inc., SEC No-Action Letter, 1993 No-Act LEXIS 624 (Apr. 13, 1993); Fairfield Trading Corporation, SEC No-Action Letter, 1988 WL 233618 (S.E.C. No-Action Letter) (Jan. 10, 1988); Burton Securities, SEC No-Action Letter, 1977 SEC No-Act. LEXIS 2871 (Dec. 5, 1977) (attached hereto as "Exhibit D" through "Exhibit G," respectively).

In this matter, the Commission has not alleged that River North engaged in any of the conduct set forth in this long-standing guidance. Indeed, nothing in the Complaint's allegations suggests that River North was anything other than simply a self-interested market participant whose sole purpose was to buy shares that originated from convertible debt instruments and then liquidate the shares for the purpose of making a profit for its benefit while managing its capital at risk. That does not trigger any of the factors set forth by the SEC through No-Action Letters or the guidance provided on its public website. The SEC has simply alleged, in conclusory fashion, that River North regularly engaged in buying and selling securities for its own account as "part of its regular business," without explaining how River North's business is part of a "regular business" for purposes of Section 3(a)(5), which defines "dealer" as well as exceptions to such definition. Such distinction is significant, as the phrase "regular business" is a term of art

9

within the Commission's pronouncements and No-Action Letters. Such deficiency renders the Commission's allegation regarding "regular business" nothing more than a conclusory allegation, which fails to meet the standard required pursuant to Rule 12(b)(6) and renders the Complaint ripe for dismissal.

### 2. At Least One Federal Court Has Analyzed the "Dealer" Definition Utilzing the Factors Set Forth in SEC No-Action Letters

One of the only federal cases dealing with the dealer-trader distinction is *SEC v. Federated Alliance Group*, 1996 U.S. Dist. LEXIS 12499 (W.D.N.Y., Aug. 21, 1996). In *Federated*, the SEC brought a case against the defendants for operating an unregistered government securities dealer. The court recognized that the definitional sections of the Exchange Act dealing with "dealer" have "not been the subject of extensive judicial examination and interpretation," and appropriately looked to the factors set forth in SEC No-Action Letters, essentially mirroring most of the twelve (12) factors identified herein. *Id*. at *8. The Commission argued that while the *Federated* defendants did not meet many of the factors, they nonetheless "made money by purchasing government securities and distributing them to individuals across the country. . . ." *Id*. The *Federated* Court found this argument unpersuasive, however, and concluded that accepting such argument would "excessively broad[en]" the "definition of a dealer" beyond that contemplated by the guidance provided in SEC No-Action Letters. According to the *Federated* court, the SEC's position in the case "would embrace every securities trader who makes money through buying and selling securities." *Id*. In this matter, the SEC now seeks again to accomplish the same objective that it attempted, but failed to accomplish, in *Federated*. In a manner consistent with the *Federated* Court, this Court should reject the SEC's attempt as well.

10

D. **THE COMMISSION HAS NOT ADEQUATELY ALLEGED AIDING AND ABETTING LIABILITY AGAINST MR. LICEAGA BECAUSE THE COMMISSION HAS FAILED TO ALLEGE A PRIMARY CAUSE OF ACTION AGAINST RIVER NORTH UNDER SECTION 15(A) OR MR. LICEAGA'S AWARENESS OF WRONGDOING**

Count VIII of the Complaint alleges that Mr. Liceaga aided and abetted River North's violation of Section 15(a) of the Exchange Act. Complaint at ¶¶137-140. It is well-established that aider and abettor liability in a Commission enforcement action requires (1) a primary violation of the federal securities law; (2) the aider and abettor's general awareness that his actions were part of an overall course of conduct that was illegal; and (3) the aider and abettor's substantial assistance in the primary violation. *See SEC v. Ustian*, 229 F.Supp.3d 739, 776 (Jan. 24, 2017 N.D. Ill.); *SEC v. Nutmeg Grp., LLC*, 2011 WL 5042094 at *2 (Oct. 19, 2011 N.D. Ill.) (citing *Monetta Fin. Serv., Inc. v. SEC*, 390 F.3d 952, 956 (7th Cir. 2004). As noted herein, the Commission has failed to allege a cause of action for River North's purported violation of Section 15(a), and has also not alleged that Mr. Liceaga had a general awareness that his actions were part of a course of conduct that required registration. To the contrary, the publicly-available guidance on the issue clearly points to the notion that River North was acting as a "trader" rather than a "dealer." Based upon these pleading deficiencies, Count VIII of the Commission's Complaint against Mr. Liceaga is fatally deficient and should be dismissed.

E. **THE COMMISSION HAS NOT ADEQUATELY ALLEGED CONTROL PERSON LIABILITY AGAINST MR. LICEAGA BECAUSE THE COMMISSION HAS FAILED TO ALLEGE A PRIMARY CAUSE OF ACTION AGAINST RIVER NORTH UNDER SECTION 15(A)**

Count IX of the Complaint alleges that Mr. Liceaga is liable as a control person under Section 20(a) of the Exchange Act for River North's violation of Section 15(a) of the Exchange Act. Complaint at ¶¶141-145. In order to state a claim for control person liability under Section 20(a) in this matter, the Commission must adequately allege (1) a primary violation of the federal securities law; (2) that Mr. Liceaga exercised general control over the operations of the primary

11

violator; and (3) that Mr. Liceaga possessed the power or ability to control the transaction(s) or activity upon which the primary violation was predicated. *SEC v. Ustian,* 229 F.Supp.3d at 777 (citing *SEC v. Buntrock*, 2004 WL 1179423, at *9 (May 25, 2004 N.D. Ill.). "Control person liability is a form of secondary liability, and to state a claim under [Section] 20(a), a plaintiff must first adequately plead a primary violation of the securities laws by the controlled person." *Puskala v. Koss Corp.*, 799 F.Supp.2d 941, 956 (July 28, 2011 E.D. Wisc.); *see also Pension Trust Fund for Operating Eng'rs v. Kohl's Corp.*, 266 F.Supp.3d 1154, 1169 (E.D. Wis. Jul. 20, 2017) (dismissing Section 20(a) claim at motion to dismiss stage for plaintiff's failure to adequately plead primary violation). In this matter, the Commission's failure to adequately allege a cause of action for River North's purported violation of Section 15(a) means that the Commission's secondary, derivative control person claim against Mr. Liceaga under Section 20(a) should be dismissed.

### F. DUE PROCESS DOES NOT PERMIT THE SEC TO REVERSE EXISTING GUIDANCE THROUGH AN ENFORCEMENT ACTION

Due process requires that "laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Relying upon the *Grayned* Court's rationale, the Second Circuit has held that "we cannot defer to the Commission's interpretation of its rules if doing so would penalize an individual who has not received fair notice of a regulatory violation." *See Upton v. SEC*, 75 F.3d 92, 98 (2d Cir. 1996) ("The Commission may not sanction Upton pursuant to a substantial change in its enforcement policy that was not reasonably communicated to the public"). SEC Commissioner Michael S. Piwowar has articulated the same principal by noting that "due process starts with fundamental notions of fairness. Persons should be on notice as to what acts, or failures to act, constitute violations of the law and our regulations." *See* Michael S. Piwowar,

Commissioner, U.S. Securities and Exchange Commission, Remarks to the Securities Enforcement Forum (Oct. 14, 2014) (**"Remarks by Comm'r Pinowar"**), available at https://www.sec.gov/news/speech/2014-spch101414msp. In this matter, the allegations in the Commission's Complaint against River North and Mr. Liceaga in connection with Courts VII, VIII, and IX are a stark contradiction to the Commision's prior guidance, and violate the due process requirement of reasonable notice. Based upon the Commission's (and its Staff's) longstanding guidance, River North had no notice – let alone <u>reasonable</u> notice – that the Commission would consider River North's alleged activity to require registration as a dealer under Section 15(a). For the same reason, Mr. Liceaga had no notice that his operation of River North's alleged activity would subject him to potential aiding and abetting liability or control person liability for any purported violation of Section 15(a). None of the Complaint's allegations could have led one in River North's or Mr. Liceaga's shoes to believe that they were engaging in any conduct that would require registration as a securities dealer. As explained in detail above, none of the guidance set forth by the Commission or its Staff in pronoucements, SEC No-Action Letters, or even a "Q&A" on the Commission's own website, would suggest that either River North or Mr. Liceaga acted in any manner other than that of a trader seeking to make a profit. As the District of Columbia Circuit noted approximately twenty years ago, "[t]hose regulated by an administrative agency are entitled to 'know the rules by which the game will be played.'" *See Alaska Prof'l Hunters Ass'n v. FAA*, 177 F.3d 1030, 1035 (D.C. Cir. 1999) (internal citations omitted). Counts VII, VIII, and IX of the Commission's Complaint against River North and Mr. Liceaga violate due process, and the Commission's act of filing those claims is exactly the type of conduct that Commissioner Piwowar strongly critized in his speech

13

about the fundamental importance of due process in SEC enforcement actions. *See* Remarks by Comm'r Pinowar.

## IV. CONCLUSION

In light of the foregoing arguments concerning the SEC's failure to allege sufficient facts to support its claims against Defendants, Defendants respectfully moves this Court to dismiss the SEC's Complaint.

### DEFENDANTS' REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 78.3, River North and Mr. Liceaga hereby respectfully request oral argument on this Partial Motion to Dismiss.

Dated: May 10, 2019

Respectfully submitted,

/s/ Mark David Hunter_____
Mark David Hunter, Esquire
N.D.I.L Bar I.D. No. 12995
**Hunter Taubman Fischer & Li LLC**
2 Alhambra Plaza, Suite 650
Coral Gables, Florida 33134
Tel: (305) 629-1180
Fax: (305) 629-8099
Email: mhunter@htflawyers.com

## **CERTIFICATE OF SERVICE**

      The undersigned attorney hereby certifies that the aforementioned document was filed through the Court's CM/ECF system on May 10, 2019. Parties of record may obtain a copy through the Court's CM/ECF system. The undersigned certifies that no party of record requires service of documents through any means other than the CM/ECF system.

                                              /s/ Mark David Hunter_____
                                              Mark David Hunter