EXHIBIT A

# *Chapter 2*

---

# **What Is a Broker-Dealer?**

---

**Robert L.D. Colby**

*Chief Legal Officer, Financial Industry Regulatory Authority, Inc.*

**Lanny A. Schwartz**

*Partner, Davis Polk & Wardwell LLP*

**Zachary J. Zweihorn**⋆

*Counsel, Davis Polk & Wardwell LLP*

*[Chapter 2 is current as of July 25, 2016.]*

§ 2:1    **Exchange Act Registration Requirement**
  § 2:1.1    **Section 15**
  § 2:1.2    **Consequences of Registration**
  § 2:1.3    **Application of Certain Rules to Broker-Dealers Even If Not Registered**
  § 2:1.4    **State Registration Requirements**
  § 2:1.5    **Consequences of Illegally Doing Business As an Unregistered Broker-Dealer**
§ 2:2    **What Is a Broker?**
  § 2:2.1    **Generally**
  § 2:2.2    **Effecting Transactions**
  § 2:2.3    **Clerical and Ministerial Activities**

---

⋆    Chapter 2 was first published in September 2010. The authors gratefully acknowledge the assistance of Hallie T. Damon, Scott D. Farbish, Meghan E. King, and Mark Sater, associates at Davis Polk & Wardwell LLP, in the preparation of this chapter.

BROKER-DEALER REGULATION

§ 2:2.4    "In the Business"
§ 2:2.5    "For the Account of Others"
§ 2:2.6    Role of Compensation in Analysis
§ 2:2.7    Specific Contexts
         [A]    Finders
         [B]    Private Placement Agents
         [C]    M&A Brokers
         [C][1]    Private Company M&A Broker No-Action Letter
         [C][2]    Foreign M&A Brokers
         [D]    Networking Arrangements
         [D][1]    Banks
         [D][2]    Insurance
         [E]    Issuers and Their Associated Persons
         [E][1]    Issuers
         [E][2]    Associated Persons of Issuers
         [E][3]    Issuers and Associated Persons in
                   Demutualizations, Exchange Offers, Conversions,
                   Proxy Solicitations
         [F]    Bulletin Boards
         [G]    ATSs and Securities Exchanges
         [H]    Payroll Processing Services
         [I]    Personal Service Companies
         [J]    Other Service Providers to the Securities Industry,
                Broker-Dealers or Issuers
         [J][1]    Communications Services
         [J][2]    Confirmation and Other Processors
         [J][3]    Transfer Agents and Stock Plan Services
         [J][4]    Research Services
         [J][5]    Accountants
         [K]    Investment Advisers
§ 2:3    What Is a Dealer?
    § 2:3.1    Section 3(a)(5)(A)
         [A]    Generally
         [B]    Buying and Selling Securities for Own Account
         [C]    Engaged in the Business
    § 2:3.2    "Traders" versus "Dealers"—Section 3(a)(5)(B)
         [A]    Generally
         [B]    Funds As Traders
         [C]    Issuers
         [D]    Dealers in OTC Derivatives
§ 2:4    What Is a Security?
    § 2:4.1    Statutory Definition
    § 2:4.2    Case Law on "Investment Contracts"
         [A]    Generally
         [B]    Investment of Money
         [C]    Common Enterprise
         [D]    Expectation of Profits
         [E]    Solely from the Efforts of the Promoter or a Third Party

*What Is a Broker-Dealer?*

§ 2:4.3      Case Law on "Notes"
§ 2:4.4      OTC Derivatives
     [A]    Generally
     [B]    Case Law on Derivatives Prior to the Adoption of the Commodity Futures Modernization Act
     [C]    CFMA—Section 3A, 15(i)
     [D]    The Dodd-Frank Wall Street Reform and Consumer Protection Act
     [D][1]    New and Amended Definitions
     [D][1][a]    "Swap," "SBS" and "Security"
     [D][1][b]    "SBS Dealer," "SBS MSP" and "SBS SEF"
     [D][1][c]    Broker-Dealer Registration Issues
     [D][2]    The Volcker Rule and Swaps Pushout Rule
§ 2:4.5      Security Futures
§ 2:5    Exempted Securities
§ 2:5.1      Generally
§ 2:5.2      Government Securities
     [A]    Definition
     [B]    Regulation of Government Securities Brokers and Dealers
§ 2:5.3      Municipal Securities
     [A]    Definition
     [B]    Regulation of Municipal Securities Dealers
§ 2:5.4      Other Exempted Securities
§ 2:6    Intrastate Broker-Dealers
§ 2:7    Other Exemptions from Registration
§ 2:7.1      Commercial Paper Dealers
§ 2:7.2      Foreign Broker-Dealers Operating Under Rule 15a-6
     [A]    Background
     [A][1]    Pre-Rule 15a-6 Precedents
     [A][2]    Jurisdictional Language in Section 15 and Section 30
     [B]    Rule 15a-6
     [B][1]    Generally
     [B][2]    Unsolicited Transactions
     [B][3]    Research
     [B][4]    Rule 15a-6(a)(3) Arrangements
     [B][5]    Rule 15a-6(a)(4)
     [C]    Other Cross-Border Issues
     [D]    Proposal to Amend Rule 15a-6
§ 2:7.3      Mutual Recognition of Foreign Broker-Dealers
§ 2:7.4      Banks
     [A]    Pre-GLBA Background
     [B]    Bank Brokerage Activities
     [B][1]    Section 3(a)(4)(B)
     [B][2]    Regulation R
     [B][3]    Networking Arrangements
     [B][4]    Trust and Fiduciary Activities

       [B][5]    Sweep Accounts and Money Market Funds
       [B][6]    Safekeeping and Custody
       [C]   Bank Dealer Activities
       [C][1]    Section 3(a)(5)(C)
       [C][2]    Bank Riskless Principal Activities—Rule 3a5-1
       [C][3]    Bank Regulation S Transactions—Rule 3a5-2
       [C][4]    Bank Securities Lending—Rule 3a5-3
  § 2:7.5    Charitable Exemption—Section 3(e)
  § 2:7.6    Funding Portals
  § 2:7.7    Associated Persons of Registered Broker-Dealers
       [A]   Section 15(a)(1)
       [B]   Retired Brokers—SEC Guidance and FINRA Rules
            Concerning Trailing Commissions
  § 2:7.8    Miscellaneous Exemptions—Rule 15a-2 and 15a-5
  § 2:7.9    General Exemptive Authority
§ 2:8    Doing Business As an Unregistered Broker-Dealer
  § 2:8.1    SEC and State Enforcement
  § 2:8.2    Private Actions—Exchange Act § 29(b)
  § 2:8.3    Concerns for Controlling Persons
  § 2:8.4    Concerns for Registered Broker-Dealers
       [A]   Compensation Sharing
       [B]   Participating in Syndicates with Unregistered Persons
       [C]   Aiding and Abetting
  § 2:8.5    Concerns for Issuers
       [A]   Liability for Aiding and Abetting or Causing
       [B]   State Liability for Engaging Unlicensed Agents
       [C]   Section 29

## § 2:1    Exchange Act Registration Requirement

### § *2:1.1*    *Section 15*

A central element of the investor protection scheme established by the federal securities laws is the comprehensive framework for the registration and regulation of persons engaged in the business of buying and selling securities.

The Securities Exchange Act of 1934 (the "Exchange Act") is the primary federal legislation governing "brokers" and "dealers" in securities.[1] With certain exceptions, section 15 of the Exchange Act requires

---

1.    As discussed below, the Exchange Act defines a "broker" and a "dealer" differently. However, most rules do not distinguish between a "broker" or a "dealer" in their application. In the rest of this chapter, the term "broker-dealer" will be used unless there is a need to distinguish between a "broker" and a "dealer."

[T]he staff has declined to take a no-action position with respect to broker-dealer registration for a registered investment adviser that proposed to assist a broker-dealer with solicitation and receive transaction-related compensation. Moreover, even in the absence of commissions or other transaction-related fees, the staff has declined to take a no-action position regarding the broker-dealer registration of an investment adviser that proposed to locate issuers, solicit new clients, and act as a customers' agent in structuring or negotiating transactions.[212]

## § 2:3     What Is a Dealer?

### § 2:3.1     Section 3(a)(5)(A)

#### [A]    Generally

The term "dealer" is defined in section 3(a)(5)(A) of the Exchange Act as "any person engaged in the business of buying and selling securities . . . for such person's own account through a broker or otherwise." Section 3(a)(5)(B) explicitly excludes from the "dealer" definition "a person that buys or sells securities . . . for such person's own account, either individually or in a fiduciary capacity, but not as a part of a regular business." Hence, whether a person is a "dealer" turns on two factual questions: (i) whether a person is "buying and selling securities for its own account," and (ii) whether a person is engaged in that activity "as part of a regular business."[213]

---

212.    InTouch Global, LLC, SEC No-Action Letter (Nov. 14, 1995) (citing PRA Securities Advisers, L.P., SEC Denial of No-Action Request (Mar. 3, 1993) (notwithstanding the fact that PRA would be compensated by an annual fee based on the percentage of assets under management, the staff refused to take a no-action position with PRA based on three representations by PRA: (i) PRA would be actively engaged in locating prospective real estate investment trusts (REITs) issuers and negotiating the terms of the private placement transaction and the securities on behalf of clients; (ii) PRA would be approaching new clients to interest them in purchasing the REITs; and (iii) a registered broker-dealer would not be involved in effecting these transactions); Boston Advisory Group, SEC Denial of No-Action Request (Oct. 2, 1980)); *see also* Study on Investment Advisers and Broker-Dealers, *supra* note 29, at 12–13 (discussing instances where investment advisers are dually registered as broker-dealers in order to provide a "variety of services not available through entities that are solely registered as investment advisers or broker-dealers.").

213.    *See* Definition of Terms in and Specific Exemptions for Banks, Savings Associations, and Savings Banks Under Sections 3(a)(4) and 3(a)(5) of the Securities Exchange Act of 1934, SEC Release No. 34-47364 (Feb. 13, 2003) [hereinafter Bank Exemptions Adopting Release]. For a detailed

As discussed above,[214] before the GLBA was enacted in 1999, banks were excluded from the definitions of both "broker" and "dealer." The GLBA amended sections 3(a)(4) and 3(a)(5) and replaced the blanket exclusion for banks with eleven exemptions from the statutory definition of "broker" and five exemptions from the statutory definition of "dealer."[215]

The Dodd-Frank Act amended the definition of "dealer" to provide that a dealer in security-based swaps with eligible contract participants is not required to register as a broker-dealer. In addition, it creates a new designation of, and requires registration and regulation of, "security-based swap dealers." These topics are discussed further below in section 2:4.4.

### [B] Buying and Selling Securities for Own Account

To be a dealer, a person has to both buy and sell securities.[216] In contrast, a person is a broker as long as he participates in securities transactions, which can be either purchase or sale, at key points in the chain of distribution.[217]

A dealer purchases and sells securities in principal transactions where it either buys securities from customers and takes them into its own inventory or sells securities to customers from its inventory.[218] These transactions also include so-called "riskless principal" transactions,[219] in which, after receiving an order to buy (or sell) from a customer, the broker-dealer purchases (or sells) the security from (or

---

review of the SEC's precedents concerning dealers, see Ignacio A. Sandoval, Steven W. Stone et al., *Challenges in Requiring High-Frequency Traders to Register as Dealers*, NAT'L L.J. (June 10, 2014) [hereinafter Sandoval & Stone].

214.   *See supra* section 2:2.7[D][1].
215.   *See* Exchange Act §§ 3(a)(4)(B) and 3(a)(5)(C). For a detailed discussion of these exemptions, see *infra* section 2:7.4.
216.   Letter from Ezra Weiss, Chief Counsel, Division of Market Regulation, to Joseph McCulley (Aug. 2, 1972); Eastside Church of Christ v. Nat'l Plan, Inc., 391 F.2d 357, 361 (5th Cir.), *cert. denied*, 393 U.S. 913 (1968).
217.   *See* Exchange Act § 3(a)(4); Mass. Fin. Servs., Inc. v. Sec. Inv'r Prot. Corp., 411 F. Supp. 411, 415 (D. Mass.), *aff'd*, 545 F.2d 754 (1st Cir. 1976), *cert. denied*, 431 U.S. 904 (1977); *see also* SEC v. Nat'l Exec. Planners, Ltd., 503 F. Supp. 1066, 1073 (M.D.N.C. 1980); Transfer Online, SEC Denial of No-Action Request (May 3, 2000).
218.   *See* Proposing Release, Definition of Terms in and Specific Exemptions for Banks, Savings Associations, and Savings Banks Under Sections 3(a)(4) and 3(a)(5) of the Securities Exchange Act of 1934, SEC Release No. 34-46745 (Oct. 30, 2002) [hereinafter Bank Exemptions Proposing Release].
219.   *Id.*

to) another person in a contemporaneous offsetting transaction.[220] Entities that engage in such transactions as a matter of course would be involved in the business of buying and selling securities for their own accounts, even if the risk associated with the transactions is minimal or nonexistent.[221]

The SEC has taken the position that a dealer must buy and sell, or be willing to buy and sell, contemporaneously.[222] This approach is necessary to distinguish dealers from investors who buy and sell a security for investment purposes, but sometimes hold the position for only a short amount of time. The distinction between active trader and dealer can be very fine.

The Dodd-Frank Act added "security-based swaps" to the definition of "security" in section 3(a)(10) of the Exchange Act. In addition, it introduced the concept of a non-dealer "major security-based swap participant" and imposes registration and regulatory requirements on these entities. Therefore, significant participation in security-based swaps may require an entity to register as a major security-based swap participant even if it does not qualify as a "dealer" or "security-based swap dealer." The Dodd-Frank Act is discussed further below in section 2:4.4.

### [C]   Engaged in the Business

Section 3(a)(5)(A) requires a "dealer" to be "engaged in the business" of buying and selling securities for its own account.[223] As discussed in section 2:2.4, courts have read into the term "engaged in the business" a certain regularity of participation in purchasing and selling activities.[224] To be "engaged in the business" of buying and selling securities, a person has to conduct securities transactions as a

---

220.    *See id.* at n.28; *see also* Rule 10b-10(a)(2)(ii)(A); Confirmation of Transactions, SEC Release No. 34-33743, n.11 (Mar. 9, 1994).
221.    *See* Bank Exemptions Proposing Release, *supra* note 218.
222.    *See, e.g.*, Letter from Susan J. Walters, Office of Chief Counsel, to Martin E. Lybecker, National Council of Savings Institutions (July 27, 1986) (discussing the distinction between a dealer and a trader).
223.    *See* Exchange Act § 3(a)(5)(A).
224.    *See* SEC v. Am. Inst. Counselors, Inc., Fed. Sec. L. Rep. (CCH) ¶ 95,388 (D.D.C. 1975) (citing Loss, Securities Regulation (2d ed. 1961)); *see also* SEC v. Kenton Capital, Ltd., 69 F. Supp. 2d 1 (D.D.C. 1998); SEC v. Margolin, 1992 U.S. Dist. LEXIS 14872 (S.D.N.Y. Sept. 30, 1992); SEC v. Hansen, 1984 U.S. Dist. LEXIS 17835 (S.D.N.Y. Apr. 6, 1984); SEC v. Nat'l Exec. Planners, Ltd., 503 F. Supp. 1066, 1073 (M.D.N.C. 1980); Mass. Fin. Servs., Inc. v. Sec. Inv'r Prot. Corp., 411 F. Supp. 411, 415 (D. Mass.), *aff'd*, 545 F.2d 754 (1st Cir. 1976), *cert. denied*, 431 U.S. 904 (1977).

part of a regular business,[225] and more often than on a single isolated basis.[226]

### § 2:3.2     *"Traders" versus "Dealers"—Section 3(a)(5)(B)*

#### [A]   Generally

Section 3(a)(5)(B) explicitly excludes those who buy or sell securities for their own accounts, "but not as a part of a regular business." These persons are commonly known as "traders."[227] Individuals who buy and sell securities for their own investment accounts and do not carry on a public securities business generally are traders and not dealers.[228] The level of a dealer's activity in securities transactions is

---

225.    *See* Eastside Church of Christ v. Nat'l Plan, Inc., 391 F.2d 357, 361 (5th Cir.), *cert. denied*, 393 U.S. 913 (1968) (National Plan, Inc. was found to be a dealer because it purchased many church bonds prior to the ones in question for its own account as a part of its regular business and sold some of them). Securities transactions between affiliated entities acting as principal with each other generally are not thought to trigger "dealer" status because such activities do not constitute the conduct of a "regular business" of securities dealing. *See* Fenchurch Paget Fund, Ltd., SEC No-Action Letter (Aug. 3, 1987). By way of analogy, in the context of security-based swaps, the SEC's definition of "security-based swap dealer" provides that security-based swap activity between majority-owned affiliates does not constitute "dealing" and therefore does not trigger a security-based swap dealer registration requirement. *See* Further Definition of "Swap Dealer," "Security-Based Swap Dealer," "Major Swap Participant," "Major Security-Based Swap Participant" and "Eligible Contract Participant," SEC Release No. 34-66868 (Apr. 27, 2012) [hereinafter Swap Entity Definition Release]; Exchange Act Rule 3a71-1(d). The full text of the final rules defining these terms may be found in their entirety in an online appendix located on the Davis Polk & Wardwell LLP website, http://net.davispolk.com/swaps/sbsappendix.pdf [hereinafter Online Appendix]. *But cf.* SEC Staff Compliance Guide to Banks on Dealer Statutory Exceptions and Rules, http://www.sec.gov/divisions/marketreg/bankdealerguide.htm, at Question 2 (implying a bank may need an exemption from broker-dealer registration when engaging in securities transactions with affiliates).

226.    *See* Letter from Ezra Weiss, Chief Counsel, Division of Market Regulation, to Joseph McCulley (Aug. 2, 1972); *see also* SEC v. Am. Inst. Counselors, Inc., Fed. Sec. L. Rep. (CCH) ¶ 95,388 (D.D.C. 1975) (citing Loss, Securities Regulation (2d ed. 1961)); Stephen V. Hart, SEC No-Action Letter (Feb. 5, 1980) ("isolated transactions for one's own account will not subject a person to the requirement of registration as a 'dealer in securities,' particularly when a person's securities activities are relatively minor measured against his other activities . . . .").

227.    *See* Bank Exemptions Proposing Release, *supra* note 218; Public Securities Locating Services, SEC No-Action Letter (Sept. 8, 1973); Swap Entity Definition Release, *supra* note 225; Online Appendix, *supra* note 225.

228.    SEC Guide to Broker-Dealer Registration, *supra* note 85; *see also* Testimony of Richard R. Lindsey, Director, Division of Market Regulation, SEC,

usually more than that of an active trader.[229] However, regularity and level of participation in buying and selling securities or volume of transactions are often not enough to make a person a "dealer."[230] The SEC, through its no-action letters, has identified some activities that are typical for dealers, but are not usually engaged in by ordinary traders.

Factors that indicate a person is acting as a dealer include:

(i)  issuing or originating securities;[231]

(ii)  having a regular clientele;[232]

(iii)  advertising or otherwise holding itself out as buying or selling securities on a continuous basis or at a regular place of business;[233]

---

before the House Committee on Banking & Financial Services, Concerning Hedge Fund Activities in the U.S. Financial Markets, at n.2 (Oct. 1, 1998), http://www.sec.gov/news/testimony/testarchive/1998/tsty1498.htm.

229.  *See* SEC v. Ridenour, 913 F.2d 515 (8th Cir. 1990). The SEC's Chair recently implied that the SEC might view some "high frequency trading" firms as dealers, and, in any event, has requested the SEC staff to prepare "a rule to clarify the status of unregistered active proprietary traders to subject them to our rules as dealers." *See, e.g.*, Mary Jo White, Chair, Securities and Exchange Commission, Remarks at Sandler O'Neill & Partners, L.P. Global Exchange and Brokerage Conference: Enhancing Our Equity Market Structure (June 5, 2014) [hereinafter White Speech]. To this effect, the SEC's official regulatory agenda indicates that the SEC plans to "propose a new, metrics-based rule to establish that a person engaged in a large volume of intraday trading activity for its own account without holding a significant overnight position is a dealer." *See* Office of Management and Budget, Office of Information and Regulatory Affairs, Unified Agenda RIN No. 3235-AL64 (Spring 2015), http://www.reginfo.gov/public/do/eAgendaViewRule?pubId=201504&RIN=3235-AL64. Some practitioners have expressed a view that such a position is controversial. *See* Sandoval & Stone, *supra* note 213.

230.  *See* United Trust Co. (Morris, Larson, King), SEC Denial of No-Action Request (Sept. 6, 1978) ("While the volume of such municipal securities activity appears to have been low, the level of a firm's activity with respect to municipal securities is not the measure of whether it is 'engaged in the business' of buying and selling municipal securities for its own account. The Company's apparent willingness to continue to engage in such municipal securities activity when requested to do so by customers suggests that the Company is 'engaged in the business.'").

231.  *See* Louis Dreyfus Corp., SEC No-Action Letter (July 23, 1987).

232.  *See* Bank Exemptions Proposing Release, *supra* note 218; *see also* SEC v. Ridenour, 913 F.2d 515 (8th Cir. 1990).

233.  *See* Bank Exemptions Proposing Release, *supra* note 218; SEC v. Schmidt, Fed. Sec. L. Rep. (CCH) ¶ 93,202 (S.D.N.Y. 1971); Letter from Ezra Weiss, Chief Counsel, Division of Market Regulation to Joseph McCulley (Aug. 2, 1972); Continental Grain Company, SEC No-Action Letter (Nov. 6, 1987); Instant Funds, Inc., SEC No-Action Letter (Mar. 14,

(iv)   actively soliciting clients;[234]

(v)    having a regular turnover of inventory (or participating in the sale or distribution of new issues, such as by acting as an underwriter);[235]

(vi)   acting as a market maker or specialist on an organized exchange or trading system;[236]

(vii)  generally transacting a substantial portion of its business with investors (or, in the case of a dealer who is a market maker, other professionals);[237]

(viii) generally providing liquidity services in transactions with investors (or, in the case of a dealer who is a market maker, for other professionals);[238]

(ix)   buying and selling as principal directly from or to securities customers together with conducting any of an assortment of professional market activities such as providing investment advice, extending credit and lending securities in connection

---

1971); *see also* United Trust Co. (Morris, Larson, King), SEC Denial of No-Action Request (Sept. 6, 1978) (the company's apparent willingness to continue to engage in such municipal securities when requested to do so by customers suggests that the company is "engaged in the business").

234.   *See* SEC v. Nat'l Exec. Planners, Ltd., 503 F. Supp. 1066 (M.D.N.C. 1980).

235.   *See* Bank Exemptions Adopting Release, *supra* note 213. The term "underwriter" is defined in section 2(a)(11) of the Securities Act of 1933. It should be noted that the fact that an offering is exempt from registration under the Securities Act does not necessarily affect the status of a participant in that offering as an "underwriter" as defined in Securities Act § 2(a)(11). The SEC recently instituted an administrative proceeding against Ironridge Global Partners, LLC and an affiliate. According to the SEC, Ironridge would purchase an outstanding claim owed by a microcap issuer to a creditor and then entered into a court-approved settlement agreement with the issuer under which Ironridge would receive unrestricted stock in the issuer in satisfaction of the claim, in a securities issuance exempt from registration under section 3(a)(10) of the Securities Act. Ironridge would then engage in open market sales of the securities received. The SEC alleged that this conduct constituted underwriting activity and that Ironridge had therefore acted as an unregistered dealer. *In re* Ironridge Global Partners, LLC, SEC Release No. 75272 (June 23, 2015).

236.   *See* Bank Exemptions Proposing Release, *supra* note 218.

237.   *Id*.

238.   *See* Bank Exemptions Adopting Release, *supra* note 213. In an enforcement context, the SEC has argued that seeking to profit from markups or spreads rather than from appreciation in the value of securities is also indicative of being a dealer. *See In re* Sodorff, SEC Release No. 34-31134 (Sept. 2, 1992); *In re* OX Trading, LLC, Order on Motion for Partial Summary Disposition, Admin. Proc. Release No. 722 (Sept. 5, 2012).

with transactions in securities, and carrying a securities account;[239]

(x)    using an interdealer broker (other than a retail screen broker) to effect securities transactions;[240] and

(xi)   running a matched book of repurchase and reverse repurchase agreements.[241]

In contrast, some of the factors that have been relevant to determining that a person is acting as a trader rather than a dealer have been:

(i)     not buying and selling the same security simultaneously;[242]

(ii)    engaging in securities activities that are relatively minor measured against its other activities;[243]

(iii)   not handling others' money or securities;

(iv)   engaging in securities transactions with registered brokers or dealers only;[244]

(v)    not holding itself out as being willing to buy and sell securities for its own account on a continuous basis;

(vi)   not making a market;

(vii)  not having memberships in exchanges or associations of dealers;[245] and

(viii) not furnishing the services that are usually provided by dealers, such as quoting the market in one or more securities, rendering investment advice, extending or arranging for credit, or lending securities.[246]

---

239.    *Id.*; *see also* Louis Dreyfus Corp., SEC No-Action Letter (July 23, 1987).

240.    *See id.*

241.    *See* Bank Exemptions Adopting Release, *supra* note 213; *see generally* Bank Exemptions Proposing Release, *supra* note 218; Fairfield Trading Corp., SEC No-Action Letter (Jan. 10, 1988); United Savings Ass'n of Texas, SEC No-Action Letter (Apr. 2, 1987); Continental Grain Co., SEC No-Action Letter (Nov. 6, 1987).

242.    *See* Bank Exemptions Proposing Release, *supra* note 218; *see also* Letter from Susan J. Walters, Office of Chief Counsel, to Martin E. Lybecker, National Council of Savings Institutions (July 27, 1986).

243.    *See* Stephen V. Hart, SEC No-Action Letter (Feb. 5, 1980).

244.    *See* Bankers Guarantee Title & Trust Co., SEC No-Action Letter (Jan. 22, 1991); Citicorp Homeowners, Inc., SEC No-Action Letter (Oct. 7, 1987).

245.    *See* Stephen V. Hart, SEC No-Action Letter (Feb. 5, 1980).

246.    *See* Bank Exemptions Proposing Release, *supra* note 218; Letter from Susan J. Walters, Office of Chief Counsel, to Martin E. Lybecker, National Council of Savings Institutions (July 27, 1986).

A person does not have to exhibit all or any given number of these above-listed factors in order to be considered a dealer.[247] The practical distinction between a "trader" and a "dealer" is often difficult to make and depends substantially upon all of the relevant facts and circumstances of a given situation.[248]

While an underwriter would usually be a dealer, in limited circumstances being designated as "underwriter" under the Securities Act does not necessarily make an entity a dealer under the Exchange Act.[249]

There is no requirement that the purchase and sale of securities be a dealer's principal business or principal source of income.[250] A person can be "engaged in the business" if the person's securities activities are only a small part of its total business activities, or its income from such activities is only a small portion of its total income.[251] In addition, there is nothing in the concept of a "business" that precludes a person from being a broker or dealer because the person handles, with regularity, only a single issue of securities.[252]

A dealer can buy and sell securities for its own account through a broker or on its own.[253] The fact that a person buys or sells shares through a broker does not negate the possibility that the person is a dealer under section 3(a)(5).[254] Therefore, a dealer cannot avoid section 15 registration requirements merely by transacting securities through another Registered Broker-Dealer.[255]

---

247. Conroy v. Andeck Res., 484 N.E.2d 525 (Ill. App. Ct. 1985) (citing LOSS, SECURITIES REGULATIONS (2d ed. 1961)).
248. Letter from Susan J. Walters, Office of Chief Counsel, to Martin E. Lybecker, National Council of Savings Institutions (July 27, 1986); Stephen V. Hart, SEC No-Action Letter (Feb. 5, 1980); Burton Securities, SEC No-Action Letter (Dec. 5, 1977).
249. *See, e.g.*, Acqua Wellington North American Equities Fund, Ltd., SEC No-Action Letter (July 11, 2001) (granting no-action request because, although the offshore investment fund was named as a statutory underwriter in a registration statement for purposes of the Securities Act, it did not possess the other characteristics of a dealer under the circumstances).
250. *See* Stephen V. Hart, SEC No-Action Letter (Feb. 5, 1980); UFITEC v. Carter, 20 Cal. 3d 238, 571 P.2d 990 (1977).
251. *See* InTouch Global, LLC, SEC No-Action Letter (Nov. 14, 1995); SEC v. Kenton Capital, Ltd., 69 F. Supp. 2d 1 (D.D.C. 1998).
252. *See* SEC v. Am. Inst. Counselors, Inc., Fed. Sec. L. Rep. (CCH) ¶ 95,388 (D.D.C. 1975).
253. Exchange Act § 3(a)(5).
254. *See, e.g.*, Instant Funds, Inc., SEC No-Action Letter (Mar. 14, 1971); *In re* Rafferty Capital Markets, LLC, SEC Release No. 34-72171 (May 15, 2014).
255. *See, e.g.*, Boetel & Co., SEC No-Action Letter (Sept. 29, 1971). *See also In re* OX Trading, LLC, SEC Release No. 34-66831 (Apr. 19, 2012) (alleging firm conducted a business as an unregistered dealer by acting as a liquidity provider to other customers of affiliated broker-dealer).

Although the role of a securities dealer differs in some respects from the role of a swap dealer or security-based swap dealer, the dealer-versus-trader analysis has many similarities. In adopting joint rules further defining "swap dealer" and "security-based swap dealer," the Commodity Futures Trading Commission (CFTC) and the SEC stated that, given parallels between the way these terms and the term "dealer" are defined, analogous interpretative positions are warranted.[256] It can be anticipated that interpretive and enforcement positions taken in the context of swaps and security-based swaps will therefore become important for analyzing whether analogous activity would trigger securities dealer registration.

### [B]   Funds As Traders

The trader exception to the definition of dealer is often claimed by private equity funds, venture capital funds and hedge funds.[257] These funds are usually structured so that they will be exempt from regulation under the Investment Company Act, and rely on a private placement exemption from registration of securities issued by them under the Securities Act. In general, such funds seek to rely upon the "trader exception" to avoid federal broker-dealer registration requirements.

As a general matter, a fund does not have to register as a "dealer" under the Exchange Act if it does not:

(i)   act as an underwriter;

(ii)   carry a dealer inventory in securities;

(iii)   purchase or sell securities as principal from or to customers;

(iv)   handle other people's money or securities;

(v)   hold itself out as being willing to buy and sell securities for its own account on a continuous basis;

(vi)   quote the market in one or more securities;

(vii)   render incidental investment advice;

(viii) extend or arrange for the extension of credit in connection with securities activities;

(ix)   run a book of repurchase and reverse repurchase agreements;

---

256.   *See* Swap Entity Definition Release, *supra* note 225.
257.   *See* Hedge Fund Activities in the U.S. Financial Markets: Hearing Before the H. Comm. on Banking & Financial Services, 105th Cong. (Oct. 1, 1998) (testimony of Richard R. Lindsey, Director, Division of Market Regulation, SEC), http://www.sec.gov/news/testimony/testarchive/1998/tsty1498.htm.

(x) issue or originate securities;

(xi) use an interdealer broker to effect securities transactions; and

(xii) otherwise engage in other dealer activities.[258]

The SEC staff has provided no-action relief regarding hedging activities in government securities, provided that they were conducted with registered government securities broker-dealers.[259] In a no-action letter to Bankers Guarantee Title and Trust Company, the SEC granted no-action relief to the company's hedging activities in mortgage-related assets based on its representation that the company purchased and sold government securities for its own account and only engaged in transactions with government securities brokers and dealers.[260] In its letter granting no-action relief to Citicorp Homeowner Incorporated regarding its hedging activities, the SEC noted the company's representation that it would purchase and sell government securities:

(i) solely for its own account;

(ii) solely for risk management purposes and not for speculation; and

(iii) solely in transactions with registered government securities dealers.[261]

### [C] Issuers

Issuers generally are not usually considered "dealers" under the Exchange Act because they do not typically buy and sell securities for their own account.[262] However, under certain circumstances, issuers

---

258. *See* Acqua Wellington North American Equities Fund, Ltd., SEC No-Action Letter (July 11, 2001); Davenport Management, Inc., SEC No-Action Letter (Apr. 13, 1993); Louis Dreyfus Corp., SEC No-Action Letter (July 23, 1987); National Council of Savings Institutions, SEC No-Action Letter (June 26, 1986); Bank Exemptions Proposing Release, *supra* note 218. The SEC, however, is considering whether certain active proprietary traders should be required to register as dealers. *See supra* note 229 and accompanying text.

259. *See* Bankers Guarantee Title & Trust Co., SEC No-Action Letter (Jan. 22, 1991); *see also* Citicorp Homeowners, Inc., SEC No-Action Letter (Oct. 7, 1987).

260. *See* Bankers Guarantee Title & Trust Co., SEC No-Action Letter (Jan. 22, 1991).

261. *See* Citicorp Homeowners, Inc., SEC No-Action Letter (Oct. 7, 1987).

262. The SEC has stated: "[T]he Act has customarily been interpreted not to require the issuer itself to register as either a broker or a dealer; the issuer would not be effecting transactions for the account of others nor, generally, would it be engaged in the business of both buying and selling securities for its own account." Proposed Rulemaking, SEC Release No. 34-13195 (Jan. 21, 1977).