# EXHIBIT B

## *1986 SEC No-Act. LEXIS 2609*

United States Securities and Exchange Commission

Jul 27, 1986

**Reporter**
1986 SEC No-Act. LEXIS 2609 *

 **[*1]**  National Council of Savings Institutions

Securities Exchange Act of 1934 -- Section 15(a)

## Core Terms

dealer, saving, own account, buying, regular, exempt, trader, securities trading, savings bank, stock, national bank, street

**Total Number of Letters:** 3

## SEC-Reply-1

UNITED STATES

SECURITIES AND EXCHANGE COMMISSION

WASHINGTON, D.C. 20549

June 26, 1986

Martin E. Lybecker, Esq.

Drinker Biddle & Reath

Suite 500

1752 N Street, N.W.

Washington, D.C. 20036

Dear Mr. Lybecker:

This is in response to your letters of December 3, 1985 and May 27, 1986, on behalf of your client, the National Council of Savings  Institutions (the "NCSI"), concerning the applicability of the broker-dealer registration  requirement of Section 15(a) of the SEcurities Exchange Act of 1934 (the "Act") to certain securities trading  activities of NCSI members.  From your letter and subsequent telephone conversations, I understand the facts to be as follows.

NCSI is a national trade association of state and federally chartered savings  banks and savings  and loan associations (the "Members").   NCSI's members currently purchase and sell various types of securities for their own account  or investment portfolios.   Under certain state laws, members possess investment powers that differ significantly from powers permitted national banks under the Glass-Steagall Act, *12 U.S.C. §§ 24(7)* and 37B.

Many state banking  laws have "leeway" provisions **[*2]** permitting state savings  institutions to make any investment not otherwise prohibited by law.  New York State law, for example, has such a provision.  New Jersey law expressly authorizes New Jersey savings  banks, subject to certain  restrictions, to invest  in "stocks,  preferred or common, issued or guaranteed by

1986 SEC No-Act. LEXIS 2609, *2

a corporation created or existing under the laws of the United States or any State, district or territory thereof. . . ." New Hampshire state law expressly authorizes New Hampshire savings banks, subject to certain restrictions, to invest in "the obligations or stock of any individual, partnership or corporation. . . ." Similarly, Massachusetts law expressly authorizes Massachusetts' savings banks to invest in "preferred and common stock. " In summary these state savings institutions may engage in a broader range of securities activities than national banks.

You represent that with respect to NCSI members trading for their own investment portfolios, such members do not (i) handle other people's money or securities, (ii) make a market in securities, or (iii) furnish the services usually provided by securities dealers. With respect to the latter, when trading for their own **[*3]** investment portfolios, NCSI members do not try to obtain a regular clientele or hold themselves out as engaged in a regular business of buying and selling securities. In addition, NCSI members engage in such transactions directly with registered securities broker-dealers and not directly with the public. Each member's portfolio trading is a function of that individual member's investment judgment with respect to the appropriateness of continuing to hold a particular security or the desirability of buying a different security.

It is your opinion that the above activities of NCSI members are properly characterized as trading and not as dealing and therefore, that registration with the Commission as a broker-dealer is not required. Accordingly, you request on behalf of NCSI's members that the Commission exempt from the provisions of Rule 3b-9 those NCSI members whose securities trading activities fall within the representations set forth above.

The staff does not believe that it is necessary or appropriate to resolve the issue of the requirement for broker-dealer registration on the part of NCSI members in the context of Rule 3b-9. [1] Rather it appears that Section 3(a)(5) of the **[*4]** Act is controlling in the situation described above. [2] In that regard, the staff has consistently taken the position that a person who buys and sells securities for his own account in the capacity of a "trader" is generally not considered to be "engaged in the business" of buying and selling securities and consequently, is not deemed to be a "dealer" under the Act. However, the practical distinction between a "trader" and a "dealer" is often difficult to make and depends substantially upon the facts of a given situation. As a general matter, a trader does not handle other people's money or securities; he does not hold himself out as being willing to buy and sell securities for his own account on a continuous basis; and he does not furnish the services which are usually provided by dealers, such as quoting the market in one or more securities rendering incidental investment advice, or extending or arranging for the extension of credit in connection with securities activities.
 **[*5]**

Accordingly, a determination of a Member's status under the Act would depend upon an analysis of all of that Member's securities activities, and not just one portion of such activities. If a Member is uncertain as to its status under the Act or any other provisions of the federal securities laws, the Member is advised to consult private counsel experienced in securities matters.

Sincerely,

Susan J. Walters

Branch Chief, Legal Interpretations

Office of Chief Counsel

# SEC-Inquiry-1

---

[1] Arguably, many savings institutions including certain NCSI members are not "banks" as defined in Section 3(a)(6) of the Act and therefore are not subject to Rule 3b-9.

[2] Section 3(a)(5) defines a " dealer" as, in relevant part, "any person engaged in the business of buying and selling securities, through a broker or otherwise . . . for his own account, either individually or in some fiduciary capacity, but not as a part of a regular business." As adopted, Rule 3b-9 does not affect the staff's historic analysis of Section 3(a)(5).

1986 SEC No-Act. LEXIS 2609, *5

LAW OFFICES

DRINKER BIDDLE & REATH

SUITE 500

1752 N STREET, N.W.

WASHINGTON, D.C. 20036

(202) 429-7400

May 27, 1986

Ms. Susan Walters

Branch Chief, Legal Interpretations

Division of Market Regulation

Securities and Exchange Commission

Room 5045

450 Fifth Street, N.W.

Washington, D.C. 20549

Re: Status of Savings Institutions Securities

Trading Activities Under Rule 3b-9

Dear Ms. Walters:

As you know, our December 3, 1985 letter to Chief Counsel Mary E. Chamberlin indicates that certain members of the National Council of Savings Institutions ("NCSI") possess the authority to invest in securities that could not be acquired by national banks because, unlike national banks, NCSI members are not subject to Section 16 **[*6]** of the Glass-Steagall Act. Our letter cited the laws of New York and Pennsylvania as examples of express authorizations of such investments. In our recent telephone conversation, you asked for additional examples. This letter responds to your request.

New Jersey law expressly authorizes New Jersey savings banks, subject to certain restrictions, to invest in "stocks, preferred or common, issued or guaranteed by a corporation created or existing under the laws of the United States or any State, district or territory thereof. . . ." *New Jersey Stat. Ann. § 17:9A-180.5(1)*(West 1985). New Hampshire expressly authorizes New Hampshire savings banks, subject to certain restrictions, to invest in "the obligations or stock of any individual, partnership or corporation. . . ." *N.H. Rev. Stat. Ann. § 387:3* (1985). Similarly, Massachusetts expressly authorizes Massachusetts savings banks, subject to certain restrictions, to invest in "preferred and common stock . . ." Mass. Gen. Laws Ann. Ch. 168 § 50(1) (1986).

I trust the above has been fully responsive to your request. Please let me know if you have any questions or require any further information.

Very truly yours,

Alan G. Priest

# SEC-Inquiry-2

---

**[*7]** LAW OFFICES
DRINKER BIDDLE & REATH
SUITE 500
1752 N STREET, N.W.
WASHINGTON, D.C. 20036

1986 SEC No-Act. LEXIS 2609, *7

(202) 429-7400

December 3, 1985

BY HAND

Mary E. Chamberlin, Esq.

Chief Counsel

Division of Market Regulation

Securities and Exchange Commission

Room 5024

450 Fifth Street, N.W.

Washington, D.C. 20549

Re: Status of Savings Institutions Securities

Trading Activities Under Rule 3b-9

Dear Ms. Chamberlin:

Paragraph (c) of Rule 3b-9 under the Securities Exchange Act of 1934 ("1934 Act") permits the Commission upon written request to exempt a bank, either conditionally or on specific terms and conditions, where the Commission determines that the bank's securities trading activities are not withiin the intended meaning and purpose of Rule 3b-9. In Securities Exchange Act Release No. 22205 (July 1, 1985), the Commission explained that it had reserved exemptive authority to ensure that Rule 3b-9 is not applied inappropriately where a bank's services appear to come within the letter but not within the intended meaning and purpose of Rule 3b-9. [1984-1985 Transfer Binder] Fed. Sec. L. Rep (CCH) P83,800 at 87,589. This letter is submitted on behalf of the National Council of Savings Institutions [*8] ("NCSI") pursuant to Rule 3b-9(c) to request that the Commission exempt from the provisions of Rule 3b-9 certain securities trading activities engaged in by NCSI's members.

<u>Background</u>

NCSI is a national trade association of state and federally-chartered savings banks and savings and loan associations. NCSI's members account for more than 40 percent of the deposits held by all types of savings institutions. Since 1933, certain of NCSI's members have purchased and sold all manner and types of securities for their own account because those activities were neither subject to the restrictions in Section 16 of the Glass-Steagall Act nor prohibited by Section 21 of the Glass-Steagall Act. <u>*12 U.S.C. §§ 24*</u>(7) and 378. See <u>*Investment Company Institute v. Federal Deposit Insurance Corp., 606 F. Supp. 683 (D.D.C. 1985).*</u>

Indeed, many state banking laws have "leeway" provisions permitting a savings institution to make any investment not otherwise prohibited by law. N.Y. Banking Law § 235(31)(McKinney 1985). Other state banking laws permit affiliates, subsidiaries, or service corporations of a savings institution to engage in activities that the savings institution may not directly [*9] engage in. 7 Pa. Cons. Stat. § 504(b)(xiii)(1985). In either instance, savings institutions have long enjoyed investment powers that differ significantly from those permitted to national banks under Section 16 of the Glass-Steagall Act. Therefore, savings institutions have purchased and sold (and expect to continue to purchase and sell) for their own account securities that are not within the scope of paragraph (b) of Rule 3b-9.

<u>Legal Analysis</u>

The term "dealer" is defined in Section 3(a)(5) of the 1934 Act to mean "any person engaged in the business of buying and selling securities for his own account, through a broker or otherwise, but does not include a bank. . . ." Nonetheless, paragraph (a)(3) of Rule 3b-9 provides that the term "bank" as used in the definition of "dealer" in Section 3(a)(5) does not include a bank that "deals in . . . securities." Thus, it could be asserted that any bank that trades in securities for its own account may be ineligible by virtue of Rule 3b-9 for the exclusion for banks from the definition of "dealer" in the 1934 Act.

1986 SEC No-Act. LEXIS 2609, *9

The Commission has historically interpreted the phrase "engaged in the business" in the definition of dealer  in juxtaposition **[*10]**  with the last clause in Section 3(a)(5) to exclude as ordinary traders  certain persons whose securities trading  activities are limited to buying and selling  securities for their own account.  E. Weiss, Registration  and Regulation of Brokers and Dealers  6-9 (1965)(corporate treasurers, family investment corporations, bank nominees; persons without membership in exchanges or associations of dealers  and who do not provide the services to others that dealers  customarily supply to customers).  Professor Loss, in his usual trenchant manner, has provided the most succinct "bright line" analysis of the factors that distinguish a dealer  from a trader.

There is no ready distinction.  However, a dealer  has characteristic attributes: He ordinarily tries to obtain a regular  clientele.  He is apt to transact a substantial portion  of his business idrectly with investors  rather than with other dealers  or through exchange members, although there are "marketmakers" who trade principally with other professionals.  A dealer  ordinarily holds himself out as one engaged in buying and selling  securities at a regular  place of business.  And his business (except when he participates in underwriting)  **[*11]**  is ordinarily characterized by a regular  turnover, whereas a trader's  transactions are generally more irregular in both volume and time.  A trader,  on the other hand, does not handle  other people's money or securities; he does not "make a market"; and he does not furnish  the services that are usually provided by delaers, such as quoting the market, rendering incidental investment advice,  extending or arranging for the extension of credit,  and lending securities to customers.  Needless to say, a person does not have to exhibit all or any given number of these dealer characteristics in order to be considered a dealer.  L. Loss, Fundamentals of Securities Regulation 680 (1983, Supp. 1985)(footnote omitted).

See generally N. Wolfson, R. Phillips, & T. Russo, Regulation of Brokers, Dealers,  and Securities Markets $ 1.06 (1977).

Applying those principles to the facts at hand, with respect to the securities they purchase and sell for their own account savings  institutions do not: (i) handle  other people's money or securities; (ii) "Make a market"; or (iii) furnish  the services that are usually provided by dealers.  Moreover, savings  institutions do not in this context: (a)  **[*12]**  try to obtain a regular clientele  or hold themselves out as engaged in buying and selling  securities at a regular  place of business;  or (b) transact a substantial portion  of their business directly with investors  rather than through other dealers  or through exchange members. Although savings  institutions may have a regular  turnover  of securities they purchase and sell for their own account,  that turnover  is not for the purpose of making a market in any particular security; rather, it is a function of the individual savings institution's investment judgment with respect to the appropriateness of continuing to hold a particular security or the desirability of buying a different security.  In short, it is our opinion that savings  institutions are properly characterized  as traders,  and not dealers,  with respect to the securities they purchase and sell for their own account.  Nonetheless, NCSI would prefer to receive an exemption  for its members to resolve any ambiguity that the promulgation of Rule 3b-9 may have caused.

The exemption  NCSI seeks for its members is fully consistent with the purposes of Rule 3b-9, i.e., ensuring adequate investor protections for investors  and fair **[*13]**  competition among all participants in the securities markets.  Securities Exchange Act Release No. 22205 (July, 1985).  Not surprisingly, the purposes of Rule 3b-9 reflect generally the purposes Congress has identified in Section 2 of 1934 Act to be the bases underlying the Act itself.  Therefore, the policy considerations which the Commission has historically relied upon in excluding ordinary traders  from the definition of dealer  in the 1934 Act also serve to justify the requested exemption  from the scope of Rule 3b-9 for the securities trading  activities of NCSI's members.

Conclusion

Based upon the foregoing, NCSI respectfully requests on behalf of its members that the Commission exempt  from the provisions of Rule 3b-9 those of NCSI's members whose securities trading  activities fall within the representations set forth above.  NCSI understands that, should the securities trading  activities of any of its members not be consistent with those representations, this exemption  would no longer be applicable to that member.

Please let me know if you have any questions or require any further information.

Respectfully submitted,

Martin E. Lybecker

DRINKER BIDDLE & REATH

1986 SEC No-Act. LEXIS 2609, *13

Attorneys **[*14]** for National Council of Savings Institutions

**Load Date:** 2014-10-07

---

End of Document