# EXHIBIT A

# *Chapter 2*

---

# What Is a Broker-Dealer?

---

**Robert L.D. Colby**

*Chief Legal Officer, Financial Industry Regulatory Authority, Inc.*

**Lanny A. Schwartz**

*Partner, Davis Polk & Wardwell LLP*

**Zachary J. Zweihorn**[*]

*Counsel, Davis Polk & Wardwell LLP*

*[Chapter 2 is current as of July 25, 2016.]*

§ 2:1    Exchange Act Registration Requirement
    § 2:1.1    Section 15
    § 2:1.2    Consequences of Registration
    § 2:1.3    Application of Certain Rules to Broker-Dealers Even If Not Registered
    § 2:1.4    State Registration Requirements
    § 2:1.5    Consequences of Illegally Doing Business As an Unregistered Broker-Dealer
§ 2:2    What Is a Broker?
    § 2:2.1    Generally
    § 2:2.2    Effecting Transactions
    § 2:2.3    Clerical and Ministerial Activities

---

[*]    Chapter 2 was first published in September 2010. The authors gratefully acknowledge the assistance of Hallie T. Damon, Scott D. Farbish, Meghan E. King, and Mark Sater, associates at Davis Polk & Wardwell LLP, in the preparation of this chapter.

§ 2:2.4      "In the Business"
§ 2:2.5      "For the Account of Others"
§ 2:2.6      Role of Compensation in Analysis
§ 2:2.7      Specific Contexts
             [A]    Finders
             [B]    Private Placement Agents
             [C]    M&A Brokers
             [C][1]    Private Company M&A Broker No-Action Letter
             [C][2]    Foreign M&A Brokers
             [D]    Networking Arrangements
             [D][1]    Banks
             [D][2]    Insurance
             [E]    Issuers and Their Associated Persons
             [E][1]    Issuers
             [E][2]    Associated Persons of Issuers
             [E][3]    Issuers and Associated Persons in
                       Demutualizations, Exchange Offers, Conversions,
                       Proxy Solicitations
             [F]    Bulletin Boards
             [G]    ATSs and Securities Exchanges
             [H]    Payroll Processing Services
             [I]    Personal Service Companies
             [J]    Other Service Providers to the Securities Industry,
                    Broker-Dealers or Issuers
             [J][1]    Communications Services
             [J][2]    Confirmation and Other Processors
             [J][3]    Transfer Agents and Stock Plan Services
             [J][4]    Research Services
             [J][5]    Accountants
             [K]    Investment Advisers
§ 2:3    What Is a Dealer?
    § 2:3.1    Section 3(a)(5)(A)
             [A]    Generally
             [B]    Buying and Selling Securities for Own Account
             [C]    Engaged in the Business
    § 2:3.2    "Traders" versus "Dealers"—Section 3(a)(5)(B)
             [A]    Generally
             [B]    Funds As Traders
             [C]    Issuers
             [D]    Dealers in OTC Derivatives
§ 2:4    What Is a Security?
    § 2:4.1    Statutory Definition
    § 2:4.2    Case Law on "Investment Contracts"
             [A]    Generally
             [B]    Investment of Money
             [C]    Common Enterprise
             [D]    Expectation of Profits
             [E]    Solely from the Efforts of the Promoter or a Third Party

§ 2:4.3    Case Law on "Notes"
§ 2:4.4    OTC Derivatives
           [A]    Generally
           [B]    Case Law on Derivatives Prior to the Adoption of the
                  Commodity Futures Modernization Act
           [C]    CFMA—Section 3A, 15(i)
           [D]    The Dodd-Frank Wall Street Reform and Consumer
                  Protection Act
           [D][1]    New and Amended Definitions
           [D][1][a]    "Swap," "SBS" and "Security"
           [D][1][b]    "SBS Dealer," "SBS MSP" and "SBS SEF"
           [D][1][c]    Broker-Dealer Registration Issues
           [D][2]    The Volcker Rule and Swaps Pushout Rule
§ 2:4.5    Security Futures
§ 2:5    Exempted Securities
  § 2:5.1    Generally
  § 2:5.2    Government Securities
             [A]    Definition
             [B]    Regulation of Government Securities Brokers and
                    Dealers
  § 2:5.3    Municipal Securities
             [A]    Definition
             [B]    Regulation of Municipal Securities Dealers
  § 2:5.4    Other Exempted Securities
§ 2:6    Intrastate Broker-Dealers
§ 2:7    Other Exemptions from Registration
  § 2:7.1    Commercial Paper Dealers
  § 2:7.2    Foreign Broker-Dealers Operating Under Rule 15a-6
             [A]    Background
             [A][1]    Pre-Rule 15a-6 Precedents
             [A][2]    Jurisdictional Language in Section 15 and Section
                       30
             [B]    Rule 15a-6
             [B][1]    Generally
             [B][2]    Unsolicited Transactions
             [B][3]    Research
             [B][4]    Rule 15a-6(a)(3) Arrangements
             [B][5]    Rule 15a-6(a)(4)
             [C]    Other Cross-Border Issues
             [D]    Proposal to Amend Rule 15a-6
  § 2:7.3    Mutual Recognition of Foreign Broker-Dealers
  § 2:7.4    Banks
             [A]    Pre-GLBA Background
             [B]    Bank Brokerage Activities
             [B][1]    Section 3(a)(4)(B)
             [B][2]    Regulation R
             [B][3]    Networking Arrangements
             [B][4]    Trust and Fiduciary Activities

          [B][5]    Sweep Accounts and Money Market Funds
          [B][6]    Safekeeping and Custody
          [C]    Bank Dealer Activities
          [C][1]    Section 3(a)(5)(C)
          [C][2]    Bank Riskless Principal Activities—Rule 3a5-1
          [C][3]    Bank Regulation S Transactions—Rule 3a5-2
          [C][4]    Bank Securities Lending—Rule 3a5-3
    § 2:7.5    Charitable Exemption—Section 3(e)
    § 2:7.6    Funding Portals
    § 2:7.7    Associated Persons of Registered Broker-Dealers
          [A]    Section 15(a)(1)
          [B]    Retired Brokers—SEC Guidance and FINRA Rules
                 Concerning Trailing Commissions
    § 2:7.8    Miscellaneous Exemptions—Rule 15a-2 and 15a-5
    § 2:7.9    General Exemptive Authority
§ 2:8    Doing Business As an Unregistered Broker-Dealer
    § 2:8.1    SEC and State Enforcement
    § 2:8.2    Private Actions—Exchange Act § 29(b)
    § 2:8.3    Concerns for Controlling Persons
    § 2:8.4    Concerns for Registered Broker-Dealers
          [A]    Compensation Sharing
          [B]    Participating in Syndicates with Unregistered Persons
          [C]    Aiding and Abetting
    § 2:8.5    Concerns for Issuers
          [A]    Liability for Aiding and Abetting or Causing
          [B]    State Liability for Engaging Unlicensed Agents
          [C]    Section 29

## § 2:1    Exchange Act Registration Requirement

### § 2:1.1    Section 15

A central element of the investor protection scheme established by the federal securities laws is the comprehensive framework for the registration and regulation of persons engaged in the business of buying and selling securities.

The Securities Exchange Act of 1934 (the "Exchange Act") is the primary federal legislation governing "brokers" and "dealers" in securities.[1] With certain exceptions, section 15 of the Exchange Act requires

---

1.    As discussed below, the Exchange Act defines a "broker" and a "dealer" differently. However, most rules do not distinguish between a "broker" or a "dealer" in their application. In the rest of this chapter, the term "broker-dealer" will be used unless there is a need to distinguish between a "broker" and a "dealer."

enforcement actions as well as private actions for rescission. There are a number of potential adverse consequences of doing business illegally as an unregistered broker-dealer, including:

(i)    cease-and-desist orders from the SEC or relevant state regulator or court injunctions;

(ii)    civil penalties including fines and disgorgement;

(iii)    criminal liabilities;

(iv)    potential rescission rights of investors under federal or state law; and

(v)    reputational harm.

For a more detailed discussion of these possible adverse consequences, see *infra* section 2:8.

## § 2:2      What Is a Broker?

### § 2:2.1     *Generally*

Section 3(a)(4)(A) of the Exchange Act defines a "broker" as "any person[41] engaged in the business of effecting transactions in securities for the account of others."[42] The definition focuses on three elements. A broker must:

(i)    be "engaged in the business,"

(ii)    of "effecting transactions in securities,"

(iii)    "for the account of others."

These three terms are not defined in the Exchange Act or the SEC rules thereunder. The courts and the SEC have taken an expansive view of the scope of these terms. Often, courts apply a "facts and circumstances" analysis in evaluating whether a person has acted as a broker, with no single element being dispositive.[43]

---

41.    The term "person" means "a natural person, company, government, or political subdivision, agency, or instrumentality of a government." *See* Exchange Act § 3(a)(9).

42.    Exchange Act § 3(a)(4)(A).

43.    *See, e.g.*, Study on Investment Advisers and Broker-Dealers, *supra* note 29, at 9 (listing examples of brokerage services and products); Maiden Lane Partners, LLC v. Perseus Realty Partners, G.P., II, LLC, No. 09–2521–BLS1, 2011 Mass. Super. LEXIS 86, at *12 (Mass. May 31, 2011); SEC v. Kramer, 778 F. Supp. 2d 1320, 1334 (M.D. Fla. 2011); DeHuff v. Dig. Ally, Inc., No. 3:08CV327TSL–JCS, 2009 U.S. Dist. LEXIS 116328, at *10–11 (S.D. Miss. Dec. 11, 2009).

### § 2:2.2 Effecting Transactions

Courts and the SEC have determined that a person "effects transactions in securities" if the person participates in such transactions "at key points in the chain of distribution."[44] According to the SEC, such participation may include, among other activities:

(i) assisting an issuer to structure prospective securities transactions;

(ii) helping an issuer to identify potential purchasers of securities;[45]

(iii) screening potential participants in a transaction for creditworthiness;

(iv) soliciting securities transactions (including advertising);[46]

(v) negotiating between the issuer and the investor;[47]

(vi) making valuations as to the merits of an investment or giving advice;[48]

(vii) taking, routing or matching orders, or facilitating the execution of a securities transaction;

---

44. *See* Mass. Fin. Servs., Inc. v. Sec. Inv'r Prot. Corp., 411 F. Supp. 411, 415 (D. Mass.), *aff'd*, 545 F.2d 754 (1st Cir. 1976), *cert. denied*, 431 U.S. 904 (1977); *see also* SEC v. Nat'l Exec. Planners, Ltd., 503 F. Supp. 1066, 1073 (M.D.N.C. 1980); Transfer Online, SEC Denial of No-Action Request (May 3, 2000). Distributions facilitated in an unconventional manner have also been found to give rise to broker-dealer status. *See, e.g.*, *In re* International Capital Grp., LLC, SEC Release No. 34-74172 (Jan. 29, 2015) (instituting proceedings for unregistered broker-dealer activity against person purporting to provide loans against microcap securities collateral, but raising cash for the loan through the sale of the collateral into the market).

45. *See, e.g.*, David W. Blass, Chief Counsel, Division of Trading and Markets, SEC, Remarks to American Bar Association, Trading and Markets Subcommittee (Apr. 5, 2013); *see also* Strengthening the Commission's Requirements Regarding Auditor Independence, SEC Release No. 34-47265, at n.82 (Jan. 28, 2003) (noting that an accounting firm that helps an issuer identify potential purchasers of securities may be "effecting transactions" and acting as a broker).

46. *See* SEC v. Margolin, No. 93-7309, 1992 U.S. Dist. LEXIS 14872, at *15–16 (S.D.N.Y. Sept. 30, 1992); *In re* Ireeco, LLC, SEC Release No. 34-75268 (June 23, 2015) (finding firm that solicited foreign nationals to invest in particular project in connection with obtaining an EB-5 visa was an unregistered broker).

47. *See* SEC v. Martino, 255 F. Supp. 2d 268, 270 (S.D.N.Y. Apr. 2, 2003); SEC v. Hansen, No. 83 Civ. 3692, 1984 U.S. Dist. LEXIS 17835, at *26 (S.D.N.Y. Apr. 6, 1984).

48. *Id.*

(viii) handling customer funds or securities;[49] and

(ix)  preparing and sending transaction confirmations (other than on behalf of a broker-dealer that executes the trades).[50]

Not all of the factors are of equal importance, however. Many of these factors are not in themselves sufficient to trigger broker registration, but rather indicate broker activity in conjunction with other criteria, especially compensation. Thus, evaluating the merits of investments and issuing confirmations are relatively weak factors. In contrast, helping an issuer identify potential purchasers, and handling customer funds and securities are moderate factors. In addition, structuring issuances, soliciting transactions negotiating with investors and taking and executing orders are strong indicators of broker activity. Each of these factors is substantially heightened when combined with transaction-based compensation.

---

49.   *See* The Investment Archive, LLC, SEC No-Action Letter (May 14, 2010). Handling customer funds may also include handling customer's digital currencies, such as bitcoin, in connection with bitcoin-denominated securities transactions. *See In re* BTC Trading, Corp., SEC Release No. 34-73783 (Dec. 8, 2014).

50.   *See* BondGlobe, Inc., SEC Denial of No-Action Request (Feb. 6, 2001); Progressive Technology Inc., SEC Denial of No-Action Request (Oct. 11, 2000); BD Advantage, Inc., SEC Denial of No-Action Request (Oct. 11, 2000); Transfer Online, SEC Denial of No-Action Request (May 3, 2000); Letter from Catherine McGuire, Chief Counsel, Division of Market Regulation, to Myles C.S. Harrington, President, MuniAuction, Inc. (Mar. 13, 2000); Definition of Terms in and Specific Exemptions for Banks, Savings Associations, and Savings Banks Under Sections 3(a)(4) and 3(a)(5) of the Securities Exchange Act of 1934, SEC Release No. 34-44291 (May 11, 2001); SEC v. Hansen, 1984 U.S. Dist. LEXIS 17835 (S.D.N.Y. Apr. 6, 1984); SEC v. Art Intellect, Inc., No. 2:11-CV-357, 3572013 U.S. Dist. LEXIS 32132, at *63 (D. Utah Mar. 6, 2013). Depending on additional circumstances, engaging in certain of these activities could also trigger registration requirements under other regulatory regimes, for example, as an investment adviser under the Investment Advisers Act of 1940 or as a municipal advisor under the Exchange Act. *See, e.g.*, Registration of Municipal Advisors, SEC Release No. 34-70462 (Sept. 20, 2013). In addition, the SEC or a court may also look to other contexts where the meaning of the term "effecting transactions" has been considered for guidance on the meaning of this term under section 3(a)(4). *See, e.g.*, Registration Process for Security-Based Swap Dealers and Major Security-Based Swap Participants, SEC Release No. 34-75611 (Aug. 5, 2015) (discussing the meaning of "effecting" transactions in security-based swaps, and citing various authorities interpreting the term "effecting" for purposes of other rules under the Exchange Act).

### § 2:2.3 *Clerical and Ministerial Activities*

Some acts of participation, however, will not be deemed "effecting" securities transactions. The SEC has stated that "[i]n our view, the term 'effect' should be construed broadly to encompass not only persons who are engaged directly in the offer or sale of securities, but also those persons who perform other than purely ministerial or clerical functions with respect to securities transactions."[51] That is, a person who conducts activities that go beyond those that are merely clerical or ministerial in nature will be required to register with the SEC as a broker-dealer, unless an exemption is available.[52]

In determining whether a person has performed functions beyond those that are clerical and ministerial in nature, the SEC considers the same set of relevant factors taken into account in determining whether a person has engaged in effecting the transactions of securities. Examples of persons providing certain limited clerical or ministerial services to broker-dealers include those that provide payroll processing services, communications services, and confirmation or other back-office services. For a more detailed discussion of each of these services, see section 2:2.7 below.

### § 2:2.4 *"In the Business"*

Courts have read "engaged in the business" as connoting a certain regularity of participation in purchasing and selling activities rather than a few isolated transactions.[53] Two factors are important in determining whether there is "regularity of business": (i) the number of

---

51. *See* SEC Denial of No-Action Request, Financial Surveys, Inc. (Aug. 29, 1973).

52. *See* Letter from Ezra Weiss, Chief Counsel, Division of Market Regulation, to Harold J. Smotkin, Clearing Service, Inc. (Jan. 3, 1972) (Clearing Service was required to register as broker-dealer, inasmuch as the services it performed went beyond those of a purely clerical or ministerial nature); Letter from Ezra Weiss, Chief Counsel, Division of Market Regulation, to William F. Clare, ESE Stock Transfer Corp. (Oct. 21, 1971) (ESE Stock Transfer Corp. was required to register because the services it intended to perform went beyond those which are merely clerical or ministerial in nature); *cf.* Universal Pensions, Inc., SEC No-Action Letter (Jan. 30, 1998) (granting no-action relief to a pension plan administrator performing recordkeeping and other administrative services, subject to conditions); Applied Financial Systems, Inc., SEC No-Action Letter (Sept. 25, 1971) (granting no-action relief to entity providing certain shareholder servicing and recordkeeping functions as clerical and ministerial).

53. SEC v. Am. Inst. Counselors, Fed. Sec. L. Rep. (CCH) ¶ 95,388 (D.D.C. 1975); *see also* SEC v. Kenton Capital, Ltd., 69 F. Supp. 2d 1 (D.D.C. 1998); SEC v. Margolin, 1992 U.S. Dist. LEXIS 14872 (S.D.N.Y. Sept. 30, 1992); SEC v. Hansen, 1984 U.S. Dist. LEXIS 17835 (S.D.N.Y. Apr. 6, 1984); SEC v. Nat'l Exec. Planners, Ltd., 503 F. Supp. 1066, 1073 (M.D.N.C. 1980); Mass.

transactions and clients,[54] and (ii) the dollar amount of securities sold, as well as the extent to which advertisement and investor solicitation were used.[55] However, neither of these factors is determinative. While a single isolated advertisement by a person seeking to purchase or sell securities may not in all cases cause a person to be a "broker," transactions by a person as the first step in a larger enterprise could still be found to meet the regularity threshold.[56] While the dollar amount of the transactions can indicate regularity, courts have held that there is no requirement that such activity be a person's principal business or principal source of income.[57] The SEC has stated that:

> [N]othing . . . would warrant a conclusion that a person is not "engaged in the business" merely because his securities activities are only a small part of his total business activities, or merely because his income from such activities is only a small portion of his total income. On the contrary, if the securities activities are engaged in for commissions or other compensation with sufficient recurrence to justify the inference that the activities are part of the person's business, he will be deemed to be "engaged in the business."[58]

---

Fin. Servs., Inc. v. Sec. Inv'r Prot. Corp., 411 F. Supp. 411, 415 (D. Mass.), *aff'd*, 545 F.2d 754 (1st Cir. 1976), *cert. denied*, 431 U.S. 904 (1977); Landegger v. Cohen, No. 11-cv-01760-WJM-CBS (D. Colo. Sept. 30, 2013); SEC v. Collyard, No. 11-cv-3656 (D. Minn. Dec. 9, 2015).

54.  SEC v. Margolin, 1992 U.S. Dist. LEXIS 14872 (S.D.N.Y. Sept. 30, 1992); Landegger v. Cohen, No. 11-cv-01760-WJM-CBS (D. Colo. Sept. 30, 2013) (declining to find that participating in seven transactions could not be sufficient regularity to constitute acting as a broker). Letter from Ezra Weiss, Chief Counsel, Division of Market Regulation, to Joseph McCulley (Aug. 2, 1972) (an individual seeking to purchase or sell securities may advertise on a single, isolated basis without being considered a "broker," however, one engaging in repeated advertising encompassing offers to buy as well as to sell must register as a broker-dealer).

55.  *Nat'l Exec. Planners*, 503 F. Supp. at 1073 (National Executive Planners solicited clients actively, and sold $4,300,000.00 worth of TVM instruments. NEP thus had a certain regularity of participation in securities transactions at key points in the chain of distribution); *Kenton Capital Ltd.*, 69 F. Supp. 2d at 13. (citing SEC v. Deyon, 977 F. Supp. 510, 518 (D. Me. 1997), and *Nat'l Exec. Planners*, 503 F. Supp. at 1066, 1073).

56.  *Kenton Capital, Ltd.*, 69 F. Supp. 2d at 13 (defendants' securities transactions were not a single, isolated transaction, but rather the first step in a larger enterprise. Kenton was established for the exclusive purpose of participating in trading programs).

57.  *See* UFITEC v. Carter, 20 Cal. 3d 238, 254 (1977); *see also Kenton Capital, Ltd.*, 69 F. Supp. 2d at 13 (a corporation could be a broker even though securities transactions are only a small part of its business activity).

58.  InTouch Global, LLC, SEC No-Action Letter (Nov. 14, 1995).

Besides "regularity of business," courts and the SEC have identified several other factors which indicate that a person is "engaged in the business." These factors include:

(i)   receiving transaction-related compensation;[59]

(ii)  holding oneself out as a broker, as executing trades, or as assisting others in settling securities transactions;[60] and

(iii) soliciting securities transactions.[61]

### § 2:2.5    *"For the Account of Others"*

In order to be considered a "broker," a person must be effecting transactions in securities for others, not itself. As a result, a firm effecting transactions solely on its own behalf is generally not considered to be acting as a "broker."[62] Nonetheless, the SEC has taken the position that a firm may be acting as a broker where it effects transactions in securities nominally on its own behalf, but where those transactions are at the direction of individual traders that hold membership interests in the firm, effectively acting as the firm's customers.[63]

---

59.  *See* SEC v. Martino, 255 F. Supp. 2d 268, 283 (S.D.N.Y. 2003); SEC v. Margolin, 1992 U.S. Dist. LEXIS 14872, at *16 (S.D.N.Y. Sept. 30, 1992); BondGlobe, Inc., SEC Denial of No-Action Request (Feb. 6, 2001); Progressive Technology Inc., SEC Denial of No-Action Request (Oct. 11, 2000); BD Advantage, Inc., SEC Denial of No-Action Request (Oct. 11, 2000); Transfer Online, SEC Denial of No-Action Request (May 3, 2000); Strengthening the Commission's Requirements Regarding Auditor Independence, SEC Release No. 34-47265, at n.82 (Jan. 28, 2003); Letter from Catherine McGuire, Chief Counsel, Division of Market Regulation to Myles C.S. Harrington, President, MuniAuction, Inc. (Mar. 13, 2000).

60.  *See* SEC v. Kenton Capital, Ltd., 69 F. Supp. 2d 1, 13 (D.D.C. 1998); BondGlobe, Inc., SEC Denial of No-Action Request (Feb. 6, 2001); Progressive Technology Inc., SEC Denial of No-Action Request (Oct. 11, 2000); BD Advantage, Inc., SEC Denial of No-Action Request (Oct. 11, 2000); Transfer Online, SEC Denial of No-Action Request (May 3, 2000); Strengthening the Commission's Requirements Regarding Auditor Independence, SEC Release No. 34-47265 (Jan. 28, 2003) at n.82; Letter from Catherine McGuire, Chief Counsel, Division of Market Regulation, to Myles C.S. Harrington, President, MuniAuction, Inc. (Mar. 13, 2000).

61.  *See, e.g.,* SEC v. Deyon, 977 F. Supp. 510 (D. Me. 1997), *aff'd,* 201 F.3d 428 (1st Cir. 1998) (both defendants solicited investors by phone and in person); SEC v. Century Inv. Transfer Corp., 1971 U.S. Dist. LEXIS 11364, at *13 (S.D.N.Y. Oct. 5, 1971) (defendant "engaged in the brokerage business" by soliciting customers through ads in the *Wall Street Journal*).

62.  Such activities may, however, constitute acting as a "dealer," depending on various factors. *See infra* section 2:3.

63.  In a number of recent SEC enforcement actions against trading firms for acting as unregistered broker-dealers, the firms opened master accounts through a registered broker-dealer and then provided day traders access

### § 2:2.6    Role of Compensation in Analysis

In the SEC's no-action guidance and enforcement actions, receiving commissions or other transaction-related compensation is one of the determinative factors in deciding whether a person is a "broker" subject to the registration requirements under the Exchange Act.[64] Transaction-related compensation refers to compensation based, directly or indirectly, on the size, value or completion of any securities transactions.[65] The receipt of transaction-based compensation often indicates that a person is engaged in the business of effecting transactions in securities.[66] As a policy consideration, transaction-related compensation can induce high pressure sales tactics and other

---

to the securities markets through sub-accounts established by the trading firms. The SEC characterized these day traders as customers of the trading firm—even though the day traders contributed funds to the trading firm and were required to sign an operating agreement, which deemed them to be members of the trading firm. *See, e.g.*, *In re* Brickman, SEC Release No. 34-75113 (June 5, 2015); SEC v. Tuco Trading, LLC, et al., No. CV-08-400-DMS, 2008 U.S. Dist. LEXIS 112727 (S.D. Cal. Mar. 17, 2008); *In re* Warrior Fund, LLC, SEC Release No. 34-61625 (Mar. 2, 2010); *In re* GLB Trading, Inc. and Robert A. Lechman, (SEC Release No. 34-60764 (Oct. 1, 2009); *see also* National Exam Risk Alert by the Office of Compliance Inspections and Examinations, vol. I, iss. 1 (Sept. 29, 2011) ("[t]he staff is concerned that broker-dealers offering master/sub-account arrangements may provide an avenue for unregistered broker-dealer activity . . .").

64.  *See* Wolff Juall Investments, LLC, SEC Denial of No-Action Request (May 17, 2005); Birchtree Financial Services, Inc., SEC Denial of No-Action Request (Sept. 22, 1998); Vanasco, Wayne & Genelly, SEC Interpretive Letter (Feb. 17, 1999); SEC v. FTC Capital Mkts., Inc., No. 09-cv-4755, 2010 U.S. Dist. LEXIS 65417 (S.D.N.Y. May 20, 2009); SEC v. UBS AG, No. 100:09-CV-00316, 2009 U.S. Dist. LEXIS 123034 (D.D.C. Feb. 18, 2009); SEC v. Milken, 98 Civ. 1398 (S.D.N.Y. Feb. 26, 1998); *see also* Study on Investment Advisers and Broker-Dealers, *supra* note 29, at 10–11 ("Generally, the compensation in a broker-dealer relationship is transaction-based and is earned through commissions, mark-ups, mark-downs, sales loads or similar fees on specific transactions. . . .").

65.  *See* GlobalTec Solutions, LLP, SEC No-Action Letter (Dec. 28, 2005). The SEC will look behind the terms of a compensation arrangement to determine its economic substance, that is, to determine whether it is transaction-related. Thus, a fee arrangement designed to compensate a person for what that person would have received if the person directly received transaction-related compensation (for example, a flat fee that is recalculated periodically to reflect an increase or decrease in the number of transactions) would be the equivalent of transaction-related compensation. In this regard, a flat fee representing a percentage of expected future commissions could be considered transaction-related. *See* Definition of Terms in and Specific Exemptions for Banks, Savings Associations, and Savings Banks Under Sections 3(a)(4) and 3(a)(5) of the Exchange Act, SEC Release No. 34-44291, n.46 (May 11, 2001).

66.  *See* SEC v. Margolin, 1992 U.S. Dist. LEXIS 14872 (S.D.N.Y. Sept. 30, 1992); BondGlobe, Inc., SEC Denial of No-Action Request (Feb. 6, 2001);

problems of investor protection often associated with unregulated and unsupervised brokerage activities.[67]

Absent an exemption, an entity that receives commissions or other transaction-related compensation in connection with securities-based activities generally would be viewed as a broker-dealer.[68] The rationale for this position is summarized by the SEC as follows:

> Persons who receive transaction-based compensation generally have to register as broker-dealers under the Exchange Act because, among other reasons, registration helps to ensure that persons with a "salesman's stake" in a securities transaction operate in a manner consistent with customer protection standards governing broker-dealers and their associated persons, such as sales practice rules. That not only mandates registration of the individual who directly takes a customer's order for a securities transaction, but also requires registration of any other person who acts as a broker with respect to that order, such as the employer of the registered representative or any other person in a position to direct or influence the registered representative's securities activities.[69]

---

Progressive Technology Inc., SEC Denial of No-Action Request (Oct. 11, 2000); BD Advantage, Inc., SEC Denial of No-Action Request (Oct. 11, 2000); Transfer Online, SEC Denial of No-Action Request (May 3, 2000); Letter from Catherine McGuire, Chief Counsel, Division of Market Regulation, to Myles C.S. Harrington, President, MuniAuction, Inc. (Mar. 13, 2000).

67. Persons Deemed Not to Be Brokers, SEC Release No. 34-20943 (May 9, 1984); *see also* Study on Investment Advisers and Broker-Dealers, *supra* note 29, at 50. The SEC may also find transaction-based compensation to be present in structures other than ordinary commission payments, such as profit-sharing arrangements. *See, e.g.*, In re Global Fixed Income, LLC, SEC Release No. 34-74586 (Mar. 26, 2015) (finding that participants in a scheme to increase a trading firm's allocation of new issue securities through purchases of additional new issue securities by the participants on behalf of the trading firm in return for a portion of any profits resulted in the participants receiving transaction-based compensation, causing them to be subject to broker-dealer registration).

68. *See* SEC v. FTC Capital Mkts., Inc., No. 09-cv-4755, 2010 U.S. Dist. LEXIS 65417 (S.D.N.Y. May 20, 2009); SEC v. UBS AG, 100:09-CV-00316, 2009 U.S. Dist. LEXIS 123034 (D.D.C. Feb. 18, 2009); Wolff Juall Investments, LLC, SEC Denial of No-Action Request (May 17, 2005); Birchtree Financial Services, Inc., SEC Denial of No-Action Request (Sept. 22, 1998); Vanasco, Wayne & Genelly, SEC Interpretive Letter (Feb. 17, 1999). *But see* SEC v. Kramer, 778 F. Supp. 2d 1320 (M.D. Fla. 2011) (finding that a person's receipt of transaction-based compensation, without engaging in certain other activities, did not constitute acting as a broker).

69. 1st Global, Inc., No-Action Letter (May 7, 2001); *see also* Order Exempting the Federal Reserve Bank of New York, Maiden Lane LLC and the

Whether a person receives transaction-related compensation is often an important factor in the SEC staff's decision in granting or denying no-action relief to, or bringing enforcement actions against, persons providing services to broker-dealers. For example, the SEC staff has denied no-action relief to personal services companies that are established by registered representatives of a broker-dealer and receive commissions earned by the registered representatives from the broker-dealer.[70] At the same time, the SEC has granted no-action relief to companies providing payroll processing services to broker-dealers for a flat, predetermined administrative fee not related to commissions earned by the employees of the broker-dealer.[71]

In the letter granting no-action relief to e-Media, a company providing communications services for its Registered Broker-Dealer clients, the SEC noted that, among other things, neither e-Media nor its personnel would "receive compensation from its client broker-dealers other than a flat transmission fee and that such fee w[ould] not be made contingent upon the outcome or completion of any securities transaction, upon the size of the offering, or upon the number of prospective investors accessing the [services]."[72] The SEC has granted no-action relief to investment advisers that did not receive transaction-based compensation for their activity of assisting securities transactions,[73] but denied no-action relief to investment advisers

---

Maiden Lane Commercial Mortgage Backed Securities Trust 2008-1 from Broker-Dealer Registration, SEC Release No. 34-61884 (Apr. 9, 2010) (granting exemptions in connection with restructuring of debt instruments acquired by the Federal Reserve Bank of New York when it facilitated the acquisition of the Bear Stearns Companies Inc. by JP Morgan Chase & Co., including permitting receipt of compensation that is calculated by reference to underwriting fees received by other parties to the restructuring); Brumberg, Mackey & Wall, P.L.C., SEC Denial of No-Action Request (May 17, 2010) (denying no-action request where a law firm would be compensated for providing introductions to investors upon the closing of a financing based upon a percentage of the amounts raised).

70.   *See, e.g.*, Wolff Juall Investments, LLC, SEC Denial of No-Action Request (May 17, 2005); Vanasco, Wayne & Genelly, SEC Interpretive Letter (Feb. 17, 1999); Birchtree Financial Services, Inc., SEC Denial of No-Action Request (Sept. 22, 1998).

71.   *See, e.g.*, ADP TotalSource, Inc., SEC No-Action Letter (Dec. 4, 2007); eEmployers Solutions, Inc., SEC No-Action Letter (Dec. 3, 2007); Investacorp Group, Inc., SEC No-Action Letter (Sept. 26, 2003).

72.   *See* e-Media, LLC, SEC No-Action Letter (Dec. 14, 2000); *see also* Roadshow Broadcast, LLC, SEC No-Action Letter (May 6, 2011).

73.   *See* McGovern Advisory Group, Inc., SEC No-Action Letter (Aug. 7, 1984) (company received compensation for assisting in securities transactions by transmitting orders for securities to registered broker-dealers, but the compensation was based solely on the value of assets under management and not on a transactional basis or otherwise based on the volume of transactions in securities).

that proposed to receive transaction-related compensation.[74] The SEC has identified the receipt of transaction-related compensation as a factor in its decision to deny no-action relief to some stock bulletin boards.[75] Although the SEC has previously granted no-action relief under limited circumstances in which a celebrity acting as finder "sold his rolodex,"[76] and would receive a success-based fee, it has since publicly distanced itself from that precedent.[77] The SEC has brought enforcement actions against persons for violation of section 15(a) registration requirements partly based on the fact that they had received transaction-based compensation.[78] Nonetheless, courts have found that receipt of transaction-based compensation in connection with securities transactions alone—without the presence of other factors—may not be sufficient to be considered engaging in the business of effecting transactions in securities.[79]

---

74.  *See* Boston Advisory Group, SEC Denial of No-Action Request (Sept. 2, 1980).

75.  *See* King & Spalding, SEC No-Action Letter (Nov. 17, 1992); National Royalty Exchange, SEC Denial of No-Action Request (Dec. 21, 1988).

76.  A "finder" is a person who places potential buyers and sellers of securities in contact with one another for a fee. For more information about "finders," see *infra* section 2:2.7[A].

77.  *See* Paul Anka, SEC No-Action Letter (July 24, 1991), in which the SEC staff granted no-action relief despite the fact that Anka received a transaction-based finder's fee for units sold either to Anka himself or to investors he identified without any involvement of Anka in the sales. Although the Paul Anka letter is still part of the SEC staff's guidance, in a number of public speeches, the SEC staff has indicated that it would not provide no-action relief under a comparable fact pattern regarding compensation arrangements today. *See* Comments by Kristina Fausti, Special Counsel, Office of Chief Counsel, SEC Division of Trading and Markets, at the Private Placement Broker and M&A Broker Panel at the SEC's Forum on Small Business Capital Formation (Nov. 20, 2008). Further, in the enforcement litigation context, the SEC has recently argued that "there is no 'finder' exception." Brief for Appellee Securities and Exchange Commission at 28, SEC v. Collyard et al. (8th Cir. June 3, 2016) (No. 16-1405). *See also* Brumberg, Mackey & Wall, P.L.C., SEC Denial of No-Action Request (May 17, 2010); John W. Loofbourrow Associates, Inc., SEC Denial of No-Action Request (June 29, 2006).

78.  *In re* Blackstreet Capital Managment, LLC, SEC Release No. 34-77959 (June 1, 2016) (adviser that received transaction-based compensation found to be acting as a broker); *In re* Havanich et al., Initial Decision Release No. 935 (Jan. 4, 2016); *In re* Visionary Trading LLC et al., SEC Release No. 34-71871 (Apr. 4, 2014); SEC v. Christopher A.T. Pedras et al., No. CV 13-07932 (Oct. 28, 2013); SEC v. FTC Capital Mkts., Inc., No. 09-CV-4755, 2010 U.S. Dist. LEXIS 65417 (S.D.N.Y. May 20, 2009); SEC v. UBS AG, No. 100:09-CV-00316, 2009 U.S. Dist. LEXIS 123034 (D.D.C. Feb. 18, 2009); SEC v. Clean Care Tech., Inc., 08 CIV 01719 (S.D.N.Y. Feb. 21, 2008); SEC v. Black, No. 8:00 CV383-T-26B (M.D. Fla. Feb. 25, 2000); SEC v. Milken, 98 Civ. 1398 (S.D.N.Y. Feb. 26, 1998).

79.  *See* SEC v. Kramer, 778 F. Supp. 2d 1320 (M.D. Fla. 2011); SEC v. M&A West, No. 01-3376 VRW, 2005 U.S. Dist. LEXIS 22358 (N.D. Cal. 2005)

Receiving transaction-related compensation, however, is not the only factor that the SEC has considered in its decision to grant or deny no-action relief or bring enforcement actions. For example, even in the absence of commissions or other specific transaction-related fees, the SEC has declined to grant no-action relief regarding broker-dealer registration to an investment adviser that proposed to locate issuers, solicit new clients, and act as a customers' agent in structuring or negotiating transactions.[80] In addition, the SEC has brought enforcement actions for violation of section 15(a) against persons who had induced and attempted to induce the purchase and sale of securities for the accounts of others.[81]

### § 2:2.7    *Specific Contexts*

#### [A]    Finders

As noted above, the SEC staff has historically recognized a very narrow exception to the broker-dealer registration requirements for certain "finders."[82] A "finder" is a person who places potential buyers and sellers of securities in contact with one another for a fee. There is no "finder exception" in the Exchange Act or SEC rules; instead, the finder analysis is based on SEC no-action letters.[83] The SEC's decision to grant no-action treatment in some cases to permit finders to

---

(denying SEC motion for summary judgment where unregistered person received transaction-based compensation for facilitating securities transactions among others where certain other factors were not present); Maiden Lane Partners, LLC v. Perseus Realty Partners, G.P., II, LLC, No. CIV.A. 09-2521-BLS1, 2011 Mass. Super. LEXIS 86 (Mass. May 31, 2011). Some courts and SEC administrative law judges have also distinguished between "active" and "passive" finders, finding active finders to be acting as brokers. *In re* Havanich et al., Initial Decision Release No. 935 (Jan. 4, 2016) (citing SEC v. Zubkis, No. 97-cv-8086, 200 U.S. Dist. LEXIS 1865 (S.D.N.Y. Feb. 23, 2000)).

80.    *See* PRA Securities Advisers, L.P., SEC Denial of No-Action Request (Mar. 3, 1993).

81.    *See* SEC v. Am. Energy Res. Corp., No. 08-CV-01847-REB-BNB (D. Colo. Aug. 28, 2008); SEC v. Harbour Bay Fin. Co., No. 90-3580 (E.D.P.A. May 25, 1990).

82.    *See, e.g.*, Paul Anka, SEC No-Action Letter (July 24, 1991). *But see supra* note 77 (noting more recent SEC and SEC staff statements regarding existence of a finder exception.)

83.    Courts too have acknowledged the potential availability of the finder exception based on SEC no-action letters in the context of private litigation under Exchange Act § 29, in which a party seeks rescission of a contract with a party they allege acted as an unregistered broker-dealer. *See, e.g.*, Cornhusker Energy Lexington, LLC v. Prospect St. Ventures, 2006 U.S.

engage in limited activities without registration as broker-dealers is presumably based on the idea that certain limited activities in relation to securities transactions do not create risks sufficient to warrant registration.[84]

### [B] Private Placement Agents

Private placements agents generally must register as broker-dealers under the Exchange Act. Effecting transactions in a security sold in a transaction that is exempt under the Securities Act does not necessarily benefit from an exemption from the broker-dealer registration requirement under the Exchange Act.[85] For example, a person who sells securities through private placements that are exempt from registration under the Securities Act is not exempted from registration as a broker-dealer under the Exchange Act, unless that person otherwise

---

Dist. LEXIS 68959 (D. Neb. Sept. 12, 2006) (citing SEC no-action letters); Apex Glob. Partners, Inc. v. Kaye/Bassman Int'l Corp., 2009 U.S. Dist. LEXIS 77679 (N.D. Tex. Aug. 31, 2009) ("Merely bringing together the parties to transactions, even those involving the purchase and sale of securities, is not enough [to require registration]"); DeHuff v. Dig. Ally, Inc., 2009 U.S. Dist. LEXIS 116328 (S.D. Miss. Dec. 11, 2009); Salamon v. Teleplus Enters., Inc., 2008 U.S. Dist. LEXIS 43112 (D.N.J. June 2, 2008). In addition, although FINRA rules generally prohibit the sharing of securities transaction-related compensation with a person not registered as a broker-dealer, an exception permits such a payment to a "foreign finder" that makes an initial introduction to a non-U.S. customer, if, among other things, the foreign finder is not required to register as a broker-dealer. *See* FINRA Rule 2040(c).

84. The SEC's Advisory Committee on Small and Emerging Companies has recently recommended that finders that solely provide names of or introductions to prospective investors should not be subject to broker-dealer registration, even if they receive transaction-based compensation. *See* SEC Advisory Committee on Small and Emerging Companies, Recommendations Regarding the Regulation of Finders and Other Intermediaries in Small Business Capital Formation Transactions (Sept. 23, 2015), http://www.sec.gov/info/smallbus/acsec/acsec-recommendations-regulation-of-finders.pdf.

85. *See* SEC Division of Trading and Markets, Guide to Broker-Dealer Registration (Apr. 2008) [hereinafter SEC Guide to Broker-Dealer Registration], http://www.sec.gov/divisions/marketreg/bdguide.htm. The SEC has recently brought several unregistered broker-dealer actions against immigration service providers that facilitated EB-5 visa applications by arranging private securities transactions between foreign nationals and U.S. issuers. *See, e.g.,* SEC v. Feng, No. 2:15-cv-09420 (C.D. Cal. Dec. 7, 2015); SEC v. Luca Int'l Grp., LLC, No. 3:15-cv-03101 (N.D. Cal. July 6, 2015); *In re* Ireeco, LLC, SEC Release No. 34-75268 (June 23, 2015); *In re* Yoo, SEC Release No. 34-77459 (Mar. 28, 2016).

[T]he staff has declined to take a no-action position with respect to broker-dealer registration for a registered investment adviser that proposed to assist a broker-dealer with solicitation and receive transaction-related compensation. Moreover, even in the absence of commissions or other transaction-related fees, the staff has declined to take a no-action position regarding the broker-dealer registration of an investment adviser that proposed to locate issuers, solicit new clients, and act as a customers' agent in structuring or negotiating transactions.[212]

## § 2:3    What Is a Dealer?

### § 2:3.1    Section 3(a)(5)(A)

#### [A]    Generally

The term "dealer" is defined in section 3(a)(5)(A) of the Exchange Act as "any person engaged in the business of buying and selling securities . . . for such person's own account through a broker or otherwise." Section 3(a)(5)(B) explicitly excludes from the "dealer" definition "a person that buys or sells securities . . . for such person's own account, either individually or in a fiduciary capacity, but not as a part of a regular business." Hence, whether a person is a "dealer" turns on two factual questions: (i) whether a person is "buying and selling securities for its own account," and (ii) whether a person is engaged in that activity "as part of a regular business."[213]

---

212. InTouch Global, LLC, SEC No-Action Letter (Nov. 14, 1995) (citing PRA Securities Advisers, L.P., SEC Denial of No-Action Request (Mar. 3, 1993) (notwithstanding the fact that PRA would be compensated by an annual fee based on the percentage of assets under management, the staff refused to take a no-action position with PRA based on three representations by PRA: (i) PRA would be actively engaged in locating prospective real estate investment trusts (REITs) issuers and negotiating the terms of the private placement transaction and the securities on behalf of clients; (ii) PRA would be approaching new clients to interest them in purchasing the REITs; and (iii) a registered broker-dealer would not be involved in effecting these transactions); Boston Advisory Group, SEC Denial of No-Action Request (Oct. 2, 1980)); *see also* Study on Investment Advisers and Broker-Dealers, *supra* note 29, at 12–13 (discussing instances where investment advisers are dually registered as broker-dealers in order to provide a "variety of services not available through entities that are solely registered as investment advisers or broker-dealers.").

213. *See* Definition of Terms in and Specific Exemptions for Banks, Savings Associations, and Savings Banks Under Sections 3(a)(4) and 3(a)(5) of the Securities Exchange Act of 1934, SEC Release No. 34-47364 (Feb. 13, 2003) [hereinafter Bank Exemptions Adopting Release]. For a detailed

As discussed above,[214] before the GLBA was enacted in 1999, banks were excluded from the definitions of both "broker" and "dealer." The GLBA amended sections 3(a)(4) and 3(a)(5) and replaced the blanket exclusion for banks with eleven exemptions from the statutory definition of "broker" and five exemptions from the statutory definition of "dealer."[215]

The Dodd-Frank Act amended the definition of "dealer" to provide that a dealer in security-based swaps with eligible contract participants is not required to register as a broker-dealer. In addition, it creates a new designation of, and requires registration and regulation of, "security-based swap dealers." These topics are discussed further below in section 2:4.4.

### [B]   Buying and Selling Securities for Own Account

To be a dealer, a person has to both buy and sell securities.[216] In contrast, a person is a broker as long as he participates in securities transactions, which can be either purchase or sale, at key points in the chain of distribution.[217]

A dealer purchases and sells securities in principal transactions where it either buys securities from customers and takes them into its own inventory or sells securities to customers from its inventory.[218] These transactions also include so-called "riskless principal" transactions,[219] in which, after receiving an order to buy (or sell) from a customer, the broker-dealer purchases (or sells) the security from (or

---

review of the SEC's precedents concerning dealers, see Ignacio A. Sandoval, Steven W. Stone et al., *Challenges in Requiring High-Frequency Traders to Register as Dealers*, NAT'L L.J. (June 10, 2014) [hereinafter Sandoval & Stone].

214.   *See supra* section 2:2.7[D][1].

215.   *See* Exchange Act §§ 3(a)(4)(B) and 3(a)(5)(C). For a detailed discussion of these exemptions, see *infra* section 2:7.4.

216.   Letter from Ezra Weiss, Chief Counsel, Division of Market Regulation, to Joseph McCulley (Aug. 2, 1972); Eastside Church of Christ v. Nat'l Plan, Inc., 391 F.2d 357, 361 (5th Cir.), *cert. denied*, 393 U.S. 913 (1968).

217.   *See* Exchange Act § 3(a)(4); Mass. Fin. Servs., Inc. v. Sec. Inv'r Prot. Corp., 411 F. Supp. 411, 415 (D. Mass.), *aff'd*, 545 F.2d 754 (1st Cir. 1976), *cert. denied*, 431 U.S. 904 (1977); *see also* SEC v. Nat'l Exec. Planners, Ltd., 503 F. Supp. 1066, 1073 (M.D.N.C. 1980); Transfer Online, SEC Denial of No-Action Request (May 3, 2000).

218.   *See* Proposing Release, Definition of Terms and Specific Exemptions for Banks, Savings Associations, and Savings Banks Under Sections 3(a)(4) and 3(a)(5) of the Securities Exchange Act of 1934, SEC Release No. 34-46745 (Oct. 30, 2002) [hereinafter Bank Exemptions Proposing Release].

219.   *Id.*

to) another person in a contemporaneous offsetting transaction.[220] Entities that engage in such transactions as a matter of course would be involved in the business of buying and selling securities for their own accounts, even if the risk associated with the transactions is minimal or nonexistent.[221]

The SEC has taken the position that a dealer must buy and sell, or be willing to buy and sell, contemporaneously.[222] This approach is necessary to distinguish dealers from investors who buy and sell a security for investment purposes, but sometimes hold the position for only a short amount of time. The distinction between active trader and dealer can be very fine.

The Dodd-Frank Act added "security-based swaps" to the definition of "security" in section 3(a)(10) of the Exchange Act. In addition, it introduced the concept of a non-dealer "major security-based swap participant" and imposes registration and regulatory requirements on these entities. Therefore, significant participation in security-based swaps may require an entity to register as a major security-based swap participant even if it does not qualify as a "dealer" or "security-based swap dealer." The Dodd-Frank Act is discussed further below in section 2:4.4.

### [C]    Engaged in the Business

Section 3(a)(5)(A) requires a "dealer" to be "engaged in the business" of buying and selling securities for its own account.[223] As discussed in section 2:2.4, courts have read into the term "engaged in the business" a certain regularity of participation in purchasing and selling activities.[224] To be "engaged in the business" of buying and selling securities, a person has to conduct securities transactions as a

---

220.    *See id.* at n.28; *see also* Rule 10b-10(a)(2)(ii)(A); Confirmation of Transactions, SEC Release No. 34-33743, n.11 (Mar. 9, 1994).

221.    *See* Bank Exemptions Proposing Release, *supra* note 218.

222.    *See, e.g.,* Letter from Susan J. Walters, Office of Chief Counsel, to Martin E. Lybecker, National Council of Savings Institutions (July 27, 1986) (discussing the distinction between a dealer and a trader).

223.    *See* Exchange Act § 3(a)(5)(A).

224.    *See* SEC v. Am. Inst. Counselors, Inc., Fed. Sec. L. Rep. (CCH) ¶ 95,388 (D.D.C. 1975) (citing Loss, Securities Regulation (2d ed. 1961)); *see also* SEC v. Kenton Capital, Ltd., 69 F. Supp. 2d 1 (D.D.C. 1998); SEC v. Margolin, 1992 U.S. Dist. LEXIS 14872 (S.D.N.Y. Sept. 30, 1992); SEC v. Hansen, 1984 U.S. Dist. LEXIS 17835 (S.D.N.Y. Apr. 6, 1984); SEC v. Nat'l Exec. Planners, Ltd., 503 F. Supp. 1066, 1073 (M.D.N.C. 1980); Mass. Fin. Servs., Inc. v. Sec. Inv'r Prot. Corp., 411 F. Supp. 411, 415 (D. Mass.), *aff'd,* 545 F.2d 754 (1st Cir. 1976), *cert. denied,* 431 U.S. 904 (1977).

part of a regular business,[225] and more often than on a single isolated basis.[226]

### § 2:3.2 "Traders" versus "Dealers"—Section 3(a)(5)(B)

#### [A] Generally

Section 3(a)(5)(B) explicitly excludes those who buy or sell securities for their own accounts, "but not as a part of a regular business." These persons are commonly known as "traders."[227] Individuals who buy and sell securities for their own investment accounts and do not carry on a public securities business generally are traders and not dealers.[228] The level of a dealer's activity in securities transactions is

---

225. *See* Eastside Church of Christ v. Nat'l Plan, Inc., 391 F.2d 357, 361 (5th Cir.), *cert. denied*, 393 U.S. 913 (1968) (National Plan, Inc. was found to be a dealer because it purchased many church bonds prior to the ones in question for its own account as a part of its regular business and sold some of them). Securities transactions between affiliated entities acting as principal with each other generally are not thought to trigger "dealer" status because such activities do not constitute the conduct of a "regular business" of securities dealing. *See* Fenchurch Paget Fund, Ltd., SEC No-Action Letter (Aug. 3, 1987). By way of analogy, in the context of security-based swaps, the SEC's definition of "security-based swap dealer" provides that security-based swap activity between majority-owned affiliates does not constitute "dealing" and therefore does not trigger a security-based swap dealer registration requirement. *See* Further Definition of "Swap Dealer," "Security-Based Swap Dealer," "Major Swap Participant," "Major Security-Based Swap Participant" and "Eligible Contract Participant," SEC Release No. 34-66868 (Apr. 27, 2012) [hereinafter Swap Entity Definition Release]; Exchange Act Rule 3a71-1(d). The full text of the final rules defining these terms may be found in their entirety in an online appendix located on the Davis Polk & Wardwell LLP website, http://net.davispolk.com/swaps/sbsappendix.pdf [hereinafter Online Appendix]. *But cf.* SEC Staff Compliance Guide to Banks on Dealer Statutory Exceptions and Rules, http://www.sec.gov/divisions/marketreg/bankdealerguide.htm, at Question 2 (implying a bank may need an exemption from broker-dealer registration when engaging in securities transactions with affiliates).

226. *See* Letter from Ezra Weiss, Chief Counsel, Division of Market Regulation, to Joseph McCulley (Aug. 2, 1972); *see also* SEC v. Am. Inst. Counselors, Inc., Fed. Sec. L. Rep. (CCH) ¶ 95,388 (D.D.C. 1975) (citing Loss, Securities Regulation (2d ed. 1961)); Stephen V. Hart, SEC No-Action Letter (Feb. 5, 1980) ("isolated transactions for one's own account will not subject a person to the requirement of registration as a 'dealer in securities,' particularly when a person's securities activities are relatively minor measured against his other activities . . . .").

227. *See* Bank Exemptions Proposing Release, *supra* note 218; Public Securities Locating Services, SEC No-Action Letter (Sept. 8, 1973); Swap Entity Definition Release, *supra* note 225; Online Appendix, *supra* note 225.

228. SEC Guide to Broker-Dealer Registration, *supra* note 85; *see also* Testimony of Richard R. Lindsey, Director, Division of Market Regulation, SEC,

usually more than that of an active trader.[229] However, regularity and level of participation in buying and selling securities or volume of transactions are often not enough to make a person a "dealer."[230] The SEC, through its no-action letters, has identified some activities that are typical for dealers, but are not usually engaged in by ordinary traders.

Factors that indicate a person is acting as a dealer include:

(i)    issuing or originating securities;[231]

(ii)    having a regular clientele;[232]

(iii)    advertising or otherwise holding itself out as buying or selling securities on a continuous basis or at a regular place of business;[233]

---

before the House Committee on Banking & Financial Services, Concerning Hedge Fund Activities in the U.S. Financial Markets, at n.2 (Oct. 1, 1998), http://www.sec.gov/news/testimony/testarchive/1998/tsty148.htm.

229.    See SEC v. Ridenour, 913 F.2d 515 (8th Cir. 1990). The SEC's Chair recently implied that the SEC might view some "high frequency trading" firms as dealers, and, in any event, has requested the SEC staff to prepare "a rule to clarify the status of unregistered active proprietary traders to subject them to our rules as dealers." See, e.g., Mary Jo White, Chair, Securities and Exchange Commission, Remarks at Sandler O'Neill & Partners, L.P. Global Exchange and Brokerage Conference: Enhancing Our Equity Market Structure (June 5, 2014) [hereinafter White Speech]. To this effect, the SEC's official regulatory agenda indicates that the SEC plans to "propose a new, metrics-based rule to establish that a person engaged in a large volume of intraday trading activity for its own account without holding a significant overnight position is a dealer." See Office of Management and Budget, Office of Information and Regulatory Affairs, Unified Agenda RIN No. 3235-AL64 (Spring 2015), http://www.reginfo.gov/public/do/eAgendaViewRule?pubId=201504&RIN=3235-AL64. Some practitioners have expressed a view that such a position is controversial. See Sandoval & Stone, supra note 213.

230.    See United Trust Co. (Morris, Larson, King), SEC Denial of No-Action Request (Sept. 6, 1978) ("While the volume of such municipal securities activity appears to have been low, the level of a firm's activity with respect to municipal securities is not the measure of whether it is 'engaged in the business' of buying and selling municipal securities for its own account. The Company's apparent willingness to continue to engage in such municipal securities activity when requested to do so by customers suggests that the Company is 'engaged in the business.'").

231.    See Louis Dreyfus Corp., SEC No-Action Letter (July 23, 1987).

232.    See Bank Exemptions Proposing Release, supra note 218; see also SEC v. Ridenour, 913 F.2d 515 (8th Cir. 1990).

233.    See Bank Exemptions Proposing Release, supra note 218; SEC v. Schmidt, Fed. Sec. L. Rep. (CCH) ¶ 93,202 (S.D.N.Y. 1971); Letter from Ezra Weiss, Chief Counsel, Division of Market Regulation to Joseph McCulley (Aug. 2, 1972); Continental Grain Company, SEC No-Action Letter (Nov. 6, 1987); Instant Funds, Inc., SEC No-Action Letter (Mar. 14,

*What Is a Broker-Dealer?* § 2:3.2

    (iv)   actively soliciting clients;[234]

    (v)   having a regular turnover of inventory (or participating in the sale or distribution of new issues, such as by acting as an underwriter);[235]

    (vi)   acting as a market maker or specialist on an organized exchange or trading system;[236]

    (vii)   generally transacting a substantial portion of its business with investors (or, in the case of a dealer who is a market maker, other professionals);[237]

    (viii)   generally providing liquidity services in transactions with investors (or, in the case of a dealer who is a market maker, for other professionals);[238]

    (ix)   buying and selling as principal directly from or to securities customers together with conducting any of an assortment of professional market activities such as providing investment advice, extending credit and lending securities in connection

---

    1971); *see also* United Trust Co. (Morris, Larson, King), SEC Denial of No-Action Request (Sept. 6, 1978) (the company's apparent willingness to continue to engage in such municipal securities when requested to do so by customers suggests that the company is "engaged in the business").

234.    *See* SEC v. Nat'l Exec. Planners, Ltd., 503 F. Supp. 1066 (M.D.N.C. 1980).

235.    *See* Bank Exemptions Adopting Release, *supra* note 213. The term "underwriter" is defined in section 2(a)(11) of the Securities Act of 1933. It should be noted that the fact that an offering is exempt from registration under the Securities Act does not necessarily affect the status of a participant in that offering as an "underwriter" as defined in Securities Act § 2(a)(11). The SEC recently instituted an administrative proceeding against Ironridge Global Partners, LLC and an affiliate. According to the SEC, Ironridge would purchase an outstanding claim owed by a microcap issuer to a creditor and then entered into a court-approved settlement agreement with the issuer under which Ironridge would receive unrestricted stock in the issuer in satisfaction of the claim, in a securities issuance exempt from registration under section 3(a)(10) of the Securities Act. Ironridge would then engage in open market sales of the securities received. The SEC alleged that this conduct constituted underwriting activity and that Ironridge had therefore acted as an unregistered dealer. *In re* Ironridge Global Partners, LLC, SEC Release No. 75272 (June 23, 2015).

236.    *See* Bank Exemptions Proposing Release, *supra* note 218.

237.    *Id.*

238.    *See* Bank Exemptions Adopting Release, *supra* note 213. In an enforcement context, the SEC has argued that seeking to profit from markups or spreads rather than from appreciation in the value of securities is also indicative of being a dealer. *See In re* Sodorff, SEC Release No. 34-31134 (Sept. 2, 1992); *In re* OX Trading, LLC, Order on Motion for Partial Summary Disposition, Admin. Proc. Release No. 722 (Sept. 5, 2012).

with transactions in securities, and carrying a securities account;[239]

(x) using an interdealer broker (other than a retail screen broker) to effect securities transactions;[240] and

(xi) running a matched book of repurchase and reverse repurchase agreements.[241]

In contrast, some of the factors that have been relevant to determining that a person is acting as a trader rather than a dealer have been:

(i) not buying and selling the same security simultaneously;[242]

(ii) engaging in securities activities that are relatively minor measured against its other activities;[243]

(iii) not handling others' money or securities;

(iv) engaging in securities transactions with registered brokers or dealers only;[244]

(v) not holding itself out as being willing to buy and sell securities for its own account on a continuous basis;

(vi) not making a market;

(vii) not having memberships in exchanges or associations of dealers;[245] and

(viii) not furnishing the services that are usually provided by dealers, such as quoting the market in one or more securities, rendering investment advice, extending or arranging for credit, or lending securities.[246]

---

239. *Id.*; *see also* Louis Dreyfus Corp., SEC No-Action Letter (July 23, 1987).

240. *See id.*

241. *See* Bank Exemptions Adopting Release, *supra* note 213; *see generally* Bank Exemptions Proposing Release, *supra* note 218; Fairfield Trading Corp., SEC No-Action Letter (Jan. 10, 1988); United Savings Ass'n of Texas, SEC No-Action Letter (Apr. 2, 1987); Continental Grain Co., SEC No-Action Letter (Nov. 6, 1987).

242. *See* Bank Exemptions Proposing Release, *supra* note 218; *see also* Letter from Susan J. Walters, Office of Chief Counsel, to Martin E. Lybecker, National Council of Savings Institutions (July 27, 1986).

243. *See* Stephen V. Hart, SEC No-Action Letter (Feb. 5, 1980).

244. *See* Bankers Guarantee Title & Trust Co., SEC No-Action Letter (Jan. 22, 1991); Citicorp Homeowners, Inc., SEC No-Action Letter (Oct. 7, 1987).

245. *See* Stephen V. Hart, SEC No-Action Letter (Feb. 5, 1980).

246. *See* Bank Exemptions Proposing Release, *supra* note 218; Letter from Susan J. Walters, Office of Chief Counsel, to Martin E. Lybecker, National Council of Savings Institutions (July 27, 1986).

A person does not have to exhibit all or any given number of these above-listed factors in order to be considered a dealer.[247] The practical distinction between a "trader" and a "dealer" is often difficult to make and depends substantially upon all of the relevant facts and circumstances of a given situation.[248]

While an underwriter would usually be a dealer, in limited circumstances being designated as "underwriter" under the Securities Act does not necessarily make an entity a dealer under the Exchange Act.[249]

There is no requirement that the purchase and sale of securities be a dealer's principal business or principal source of income.[250] A person can be "engaged in the business" if the person's securities activities are only a small part of its total business activities, or its income from such activities is only a small portion of its total income.[251] In addition, there is nothing in the concept of a "business" that precludes a person from being a broker or dealer because the person handles, with regularity, only a single issue of securities.[252]

A dealer can buy and sell securities for its own account through a broker or on its own.[253] The fact that a person buys or sells shares through a broker does not negate the possibility that the person is a dealer under section 3(a)(5).[254] Therefore, a dealer cannot avoid section 15 registration requirements merely by transacting securities through another Registered Broker-Dealer.[255]

---

247. Conroy v. Andeck Res., 484 N.E.2d 525 (Ill. App. Ct. 1985) (citing LOSS, SECURITIES REGULATIONS (2d ed. 1961)).

248. Letter from Susan J. Walters, Office of Chief Counsel, to Martin E. Lybecker, National Council of Savings Institutions (July 27, 1986); Stephen V. Hart, SEC No-Action Letter (Feb. 5, 1980); Burton Securities, SEC No-Action Letter (Dec. 5, 1977).

249. *See, e.g.*, Acqua Wellington North American Equities Fund, Ltd., SEC No-Action Letter (July 11, 2001) (granting no-action request because, although the offshore investment fund was named as a statutory underwriter in a registration statement for purposes of the Securities Act, it did not possess the other characteristics of a dealer under the circumstances).

250. *See* Stephen V. Hart, SEC No-Action Letter (Feb. 5, 1980); UFITEC v. Carter, 20 Cal. 3d 238, 571 P.2d 990 (1977).

251. *See* InTouch Global, LLC, SEC No-Action Letter (Nov. 14, 1995); SEC v. Kenton Capital, Ltd., 69 F. Supp. 2d 1 (D.D.C. 1998).

252. *See* SEC v. Am. Inst. Counselors, Inc., Fed. Sec. L. Rep. (CCH) ¶ 95,388 (D.D.C. 1975).

253. Exchange Act § 3(a)(5).

254. *See, e.g.*, Instant Funds, Inc., SEC No-Action Letter (Mar. 14, 1971); *In re* Rafferty Capital Markets, LLC, SEC Release No. 34-72171 (May 15, 2014).

255. *See, e.g.*, Boetel & Co., SEC No-Action Letter (Sept. 29, 1971). *See also In re* OX Trading, LLC, SEC Release No. 34-66831 (Apr. 19, 2012) (alleging firm conducted a business as an unregistered dealer by acting as a liquidity provider to other customers of affiliated broker-dealer).

Although the role of a securities dealer differs in some respects from the role of a swap dealer or security-based swap dealer, the dealer-versus-trader analysis has many similarities. In adopting joint rules further defining "swap dealer" and "security-based swap dealer," the Commodity Futures Trading Commission (CFTC) and the SEC stated that, given parallels between the way these terms and the term "dealer" are defined, analogous interpretative positions are warranted.[256] It can be anticipated that interpretive and enforcement positions taken in the context of swaps and security-based swaps will therefore become important for analyzing whether analogous activity would trigger securities dealer registration.

### [B]   Funds As Traders

The trader exception to the definition of dealer is often claimed by private equity funds, venture capital funds and hedge funds.[257] These funds are usually structured so that they will be exempt from regulation under the Investment Company Act, and rely on a private placement exemption from registration of securities issued by them under the Securities Act. In general, such funds seek to rely upon the "trader exception" to avoid federal broker-dealer registration requirements.

As a general matter, a fund does not have to register as a "dealer" under the Exchange Act if it does not:

(i)     act as an underwriter;

(ii)    carry a dealer inventory in securities;

(iii)   purchase or sell securities as principal from or to customers;

(iv)    handle other people's money or securities;

(v)     hold itself out as being willing to buy and sell securities for its own account on a continuous basis;

(vi)    quote the market in one or more securities;

(vii)   render incidental investment advice;

(viii)  extend or arrange for the extension of credit in connection with securities activities;

(ix)    run a book of repurchase and reverse repurchase agreements;

---

256.    *See* Swap Entity Definition Release, *supra* note 225.
257.    *See* Hedge Fund Activities in the U.S. Financial Markets: Hearing Before the H. Comm. on Banking & Financial Services, 105th Cong. (Oct. 1, 1998) (testimony of Richard R. Lindsey, Director, Division of Market Regulation, SEC), http://www.sec.gov/news/testimony/testarchive/1998/tsty1498.htm.