# EXHIBIT B

54 FR 30013-01, 1989 WL 279892(F.R.)

RULES and REGULATIONS

SECURITIES AND EXCHANGE COMMISSION

17 CFR Part 240

[Release No. 34-27017, International Series Release No. 105; File No. S7-11-88]

RIN 3235-AD27

Registration Requirements for Foreign Broker-Dealers

Tuesday, July 18, 1989

AGENCY: Securities and Exchange Commission.

ACTION: Final rule.

SUMMARY: The Commission is adopting proposed Rule 15a-6, which provides exemptions from broker-dealer registration for foreign entities engaged in certain activities involving U.S. investors and securities markets. The final rule incorporates the proposed interpretive statement that the Commission issued for comment when proposing the rule. In another release also issued today, the Commission is soliciting further comment on the concept of recognition of foreign securities regulation as a substitute for U.S. registration of foreign broker-dealers.

EFFECTIVE DATE: August 15, 1989.

FOR FURTHER INFORMATION CONTACT:Robert L.D. Colby, Chief Counsel, (202) 272-2844, or John Polanin, Jr., Special Counsel, (202) 272-2848, Division of Market Regulation, or Thomas S. Harman, Chief Counsel, (202) 272-2030, Division of Investment Management (regarding investment adviser registration requirements discussed in Part IV), Securities and Exchange Commission, 450 Fifth Street NW., Washington, DC 20549.

SUPPLEMENTARY INFORMATION:

**I. Executive Summary**

The Commission is adopting proposed Rule 15a-6 to provide conditional exemptions from broker-dealer registration for foreign broker-dealers that engage in certain activities involving U.S. investors and securities markets. These activities include (i) "nondirect" contacts by foreign broker-dealers with U.S. investors and markets, through execution of unsolicited securities transactions, and provision of research to certain U.S. institutional investors; and (ii) "direct" contacts, involving the execution of transactions through a registered broker-dealer intermediary with or for certain U.S. institutional investors, and without this intermediary with or for registered broker-dealers, banks acting in a broker or dealer capacity, certain international organizations, foreign persons temporarily present in the United States, U.S. citizens resident abroad, and foreign branches and agencies of U.S. persons. The Commission's goals in adopting Rule 15a-6 at this time are (i) to facilitate access to foreign markets by U.S. institutional investors through foreign broker-dealers and the research that they provide, consistent with maintaining the safeguards afforded by broker-dealer registration; and (ii) to provide clear guidance to foreign broker-dealers seeking to operate in compliance with U.S. broker-dealer registration requirements.

In addition, the Commission is withdrawing the interpretive statement that it proposed together with Rule 15a-6. The final rule ("Rule") includes exemptions incorporating many of the positions originally set forth in the proposed interpretive statement. The Commission has included in this release a discussion of the purposes and scope of broker-dealer regulation and the general principles of U.S. registration for international broker-dealers, in order to emphasize the importance that the Commission attaches to broker-dealer registration and regulation in the international context.

Finally, the Commission has issued a separate release discussing the concept of an exemption from broker-dealer registration based on recognition of foreign regulation. Many commenters addressing the proposed rule favored this approach, but the Commission believes that the numerous complex issues raised by this approach require further exploration before any action is taken on the concept. To clarify the application of U.S. broker-dealer registration requirements to the cross-border activities of foreign broker-dealers, the Commission is adopting the Rule now, while soliciting more detailed comments on the parameters of the concept of an exemption from broker-dealer registration based on recognition of foreign securities regulation.

## II. Introduction

Rule 15a-6 is based on the Commission's recognition of the fact that the pace of internationalization in securities markets around the world continues to accelerate.[FN1] As the Commission noted when it published Rule 15a-6 for comment, [FN2] multinational offerings of securities have become frequent,[FN3] and linkages are developing between secondary markets[FN4] and **\*30014** clearing systems.[FN5] The desire of investors to trade in financial markets around the world is increasing steadily, and many major institutional investors, particularly investment companies, insurance companies, pension funds, and large commercial banks, are active on an international basis.[FN6]

1    In its recent Policy Statement on Regulation of International Securities Markets, the Commission outlined its views on the appropriate regulatory response to this development, which it broadly described as facilitating efficient and honest markets where investors and issuers can seek the greatest return on investment and the lowest cost of capital, without regard for national boundaries. Securities Act Release No. 6807 (Nov. 14, 1988), 53 FR 46963.

FN2 Securities Exchange Act Release No. 25801 (June 14, 1988), 53 FR 23645, 23648 ("Release 34-25801").

FN3 See Internationalization of the Securities Markets, Report of the Staff of the U.S. Securities and Exchange Commission to the Senate Committee on Banking, Housing, and Urban Affairs and the House Committee on Energy and Commerce (July 27, 1987) ("Report on Internationalization") at III-43 to III-53.

FN4 Since 1985, the Commission has approved several linkages between U.S. and foreign exchanges, including the link between the Montreal Stock Exchange and the Boston Stock Exchange, and the links between the Toronto Stock Exchange and the American and Midwest Stock Exchanges, respectively. See Report on Internationalization at V-49 to V-57. Presently, only the Montreal Stock Exchange/Boston Stock Exchange linkage is in operation. In addition, the Commission has approved a pilot program developed by the National Association of Securities Dealers, Inc. ("NASD") and the International Stock Exchange of the United Kingdom and the Republic of Ireland, Ltd. ("ISE"), linking the NASD's automated quotations system ("NASDAQ") and the ISE's electronic quotation system ("SEAQ"). Securities Exchange Act Release No. 23158 (Apr. 21, 1986), 51 FR 15989. The pilot program has been extended to October 2, 1989. Securities Exchange Act Release No. 24979 (Oct. 2, 1987), 51 FR 37684. The Commission also has approved a pilot program providing for an exchange of quotations between NASDAQ and the Stock Exchange of Singapore. Securities Exchange Act Release No. 25457 (Mar. 14, 1988), 53 FR 9156.

FN5 E.g., Letter from Jonathan Kallman, Assistant Director, Division of Market Regulation, SEC, to Karen L. Saperstein, Esq., Associate General Counsel, International Securities Clearing Corporation ("ISCC") (Sept. 20, 1988) (ISCC linkage with Japan Securities Clearing Corporation).

FN6 Greenwich Associates, Institutional Investors 1989, 9-12, 72-87.

As interest in foreign securities has grown, the geographical reach of intermediaries based in national markets has expanded greatly. Many U.S. and foreign broker-dealers are developing an international securities business, establishing offices throughout the world.[FN7] According to statistics compiled by the Commission's Office of Economic Analysis, 179 registered U.S. broker-dealers were affiliated with foreign broker-dealers or foreign banks as of 1987. In contrast, in 1973 there were approximately twenty-eight non-Canadian U.S. broker-dealers with foreign parents.[FN8] As of 1988, there were approximately fifty members of the New York Stock Exchange in which foreign entities had an ownership interest. In 1973, there were four.[FN9]

7  One commentator recently estimated that approximately thirty broker-dealers will possess the integrated back-office trading and management information systems necessary to execute and clear securities transactions on a global basis by the year 2000. Kraus, Growth Predicted in Global Traders, American Banker, Mar. 20, 1989, at 14.

  FN8 New York Stock Exchange Advisory Committee on International Capital Markets, Recommendations Regarding Foreign Access to the U.S. Securities Markets (July 1973), Appendix B.

  FN9 Id. at 12.

The Commission responded to this international expansion in broker-dealer activities by publishing Release 34-25801. This release had two purposes. First, as discussed at greater length below, the Commission sought to make known the existing U.S. requirements for registration of foreign broker-dealers. Second, the Commission sought to facilitate investment by U.S. institutional investors in foreign securities markets by proposing a rule that would increase access to foreign broker-dealers, consistent with the investor safeguards afforded by broker-dealer regulation. The Commission recognized that foreign broker-dealers can provide valuable market experience, trade execution, and research services to U.S. institutions interested in entering overseas markets.

Release 34-25801 comprised an interpretive statement and a proposed rule. The interpretive statement was a summary of the staff's current positions regarding broker-dealer registration by foreign entities. Proposed Rule 15a-6, developed from past interpretive, no-action, and exemptive positions, would have exempted from the broker-dealer registration requirements of section 15(a) of the Securities Exchange Act of 1934 ("Exchange Act") [FN10] foreign broker-dealers that engaged in securities transactions with certain non-U.S. persons or with specified U.S. institutional investors under limited conditions.

10  15 U.S.C. 78*o* (a).

Subsequently, members of the Committee on Federal Regulation of Securities of the Section of Business Law of the American Bar Association ("ABA") submitted a comment letter suggesting an expanded version of proposed Rule 15a-6, which generally reflected the substance of the interpretive statement. The ABA suggested that an expanded rule, among other things, would "spell out clearly in one place the ground rules to which foreign broker-dealers are subject" and be "more consistent with orderly development of the law in this area." [FN11] Believing that expansion of proposed Rule 15a-6 to include additional portions of the interpretive statement deserved "serious consideration," the Commission solicited comment on an expanded rule.[FN12]

11  Letter from John M. Liftin, Esq., Committee on Federal Regulation of Securities, Section of Business Law, ABA, to Jonathan G. Katz, Secretary, SEC (Sept. 14, 1988).

  FN12 Securities Exchange Act Release No. 26136 (Sept. 30, 1988), 53 FR 38967 ("Release 34-26136").

The Commission received thirty-two comment letters in response to proposed Rule 15a-6 and the interpretive statement. [FN13] The commenters generally supported the Commission's goal of facilitating access to foreign markets by U.S. institutional investors, consistent with the purposes underlying broker-dealer registration. Commenters also generally supported expansion of the proposed rule to include the substance of the interpretive statement.

13  A detailed comment summary has been prepared and placed in the Commission's public files, together with all comment letters received. See File No. S7-11-88.

## III. Broker-Dealer Regulation

### A. Purposes and Scope of Broker-Dealer Regulation

In the context of adopting exemptions from the U.S. broker-dealer regulatory scheme, the Commission believes that it is important to reiterate the fundamental significance of broker-dealer registration within the structure of U.S. securities market regulation. Because of the broker-dealer's role as an intermediary between customers and the securities markets, broker-dealers have been required to register with the Commission since 1935,[FN14] and they were registered with numerous states before enactment of the Exchange Act in 1934.[FN15] The definitions in the Exchange Act of the **\*30015** terms "broker" [FN16] and "dealer" [FN17] and the registration requirements of section 15(a) of the Exchange Act [FN18] were drawn broadly by Congress to encompass a wide range of activities involving investors and securities markets.[FN19] Section 15(a) of the Exchange Act generally requires that any broker or dealer using the mails or any means or instrumentality of interstate commerce (referred to as the jurisdictional means) [FN20] to induce or effect transactions in securities [FN21] must register as a broker-dealer with the Commission.

14   As originally enacted, the Exchange Act dealt primarily with exchange regulation, and section 15 of the Exchange Act authorized the Commission to provide, by rule, for registration of brokers or dealers that were not already exchange members. After the Commission initially adopted rules requiring registration of over-the-counter broker-dealers, Congress in 1936 amended section 15 to codify the Commission's rules on broker-dealer registration. See L. Loss, Fundamentals of Securities Regulation 409-10 (1988) and the concept release also issued today, infra note 34.

FN15 See generally L. Loss & E. Cowett, Blue Sky Law 26-30 (1958).

FN16 Section 3(a)(4) of the Exchange Act defines "broker" as "any person engaged in the business of effecting transactions in securities for the account of others, but does not include a bank." 15 U.S.C. 78c (a)(4). The term "bank," however, is limited by section 3(a)(6) of the Exchange Act, 15 U.S.C. 78c(a)(6), to banks directly regulated by U.S. state or federal bank regulators, and thus foreign banks that act as brokers or dealers within the jurisdiction of the United States are subject to U.S. broker-dealer registration requirements. See Release 34-25801, 53 FR at 23645 n.1. To the extent, however, that a foreign bank establishes a branch or agency in the United States that is supervised and examined by a federal or state banking authority and otherwise meets the requirements of section 3(a)(6), the Commission would consider this branch or agency to be a "bank" for purposes of sections 3(a)(4) and 3(a)(5) of the Exchange Act.

The Commission believes that the determination whether any particular financial institution meets the requirements of section 3(a)(6) is the responsibility of the financial institution and its counsel. Cf. Securities Act Release No. 6661 (Sept. 23, 1986), 51 FR 34460 ("Release 33-6661") (determination as to whether branch or agency of foreign bank falls within the definition of "bank" under section 3(a)(2) of Securities Act of 1933 ("Securities Act"), 15 U.S.C. 77c(a)(2), is responsibility of issuers and their counsel). The Commission notes, however, that section 4(d) of the International Banking Act, 12 U.S.C. 3102(d), expressly prohibits agencies of foreign banks established under federal law from receiving deposits or exercising fiduciary powers, criteria necessary for qualification as a bank under section 3(a)(6)(C). See Conference of State Bank Supervisors v. Conover, 715 F.2d 604 (D.C. Cir. 1983), cert. denied, 466 U.S. 927 (1984) (federally-chartered agencies of foreign banks prohibited from receiving deposits from foreign, as well as domestic, sources). It also should be noted that the definition of bank under section 3(a)(6) of the Exchange Act differs somewhat from the definition of bank under section 3(a)(2) of the Securities Act, particularly with respect to exercising fiduciary powers and receiving deposits. As discussed infra note 168, the Securities Act definition is applicable in determining whether U.S. branches and agencies of foreign banks qualify as U.S. institutional investors under the Rule.

FN17 Section 3(a)(5) of the Exchange Act, 15 U.S.C. 78c(a)(5), defines "dealer" as "any person engaged in the business of buying and selling securities for his own account, through a broker or otherwise, but does not include a bank, or any person insofar as he buys and sells securities for his own account, either individually or in some fiduciary capacity, but not as a part of a regular business." Although by its terms this definition is broad, it has been interpreted to exclude various activities not within the intent of the definition, such as buying and selling for investment. See, e.g., Letter from Robert L.D. Colby, Chief Counsel, Division of Market Regulation, SEC, to Elizabeth J. Tolmach, Esq., Caplin & Drysdale (Apr. 2, 1987) (United Savings Association of Texas) (no-action position on government securities dealer registration). In addition, the registration requirements of section 15(a) of the Exchange Act exclude from registration additional categories of persons, such as intrastate broker-dealers. Cf. Douglas & Bates, Some Effects of the Securities Act Upon Investment Banking, 1 U. Chi. L. Rev. 283, 302 n.68 (1934); Douglas & Bates, The Federal Securities Act of 1933, 43 Yale L.J. 171, 206 n.189 (1933) ("rule of reason" should apply to similarly broad "dealer" definition in section 2(12) of Securities Act, 15 U.S.C. 77b(12)).

FN18 See supra note 10.

FN19 For instance, if a U.S. issuer sells its securities in the United States through its own employees, the activities of these employees may require broker-dealer registration. This is also true for foreign issuers using their employees to sell securities within the United States. However, the Commission has adopted Rule 3a4-1, 17 CFR 240.3a4-1, which provides a safe-harbor exemption from broker-dealer registration for an issuer's personnel selling the issuer's securities under certain circumstances. See Securities Exchange Act Release No. 22172 (June 27, 1985), 50 FR 27940.

FN20 Specifically, section 15(a)(1), 15 U.S.C. 78o(a)(1), refers to "use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) * * * ." Given the broad definition of "interstate commerce" in section 3(a)(17) of the Exchange Act, 15 U.S.C. 78c(a)(17), which includes "trade, commerce, transportation, or communication * * * between any foreign country and any State," virtually any transaction-oriented contact between a foreign broker-dealer and the U.S. securities markets or a U.S. investor in the United States involves interstate commerce and could provide the jurisdictional basis for broker-dealer registration.

FN21 Section 15(a) does not require registration for transactions in exempted securities, which are defined in section 3(a)(12) of the Exchange Act, 15 U.S.C. 78c(a)(12), commercial paper, bankers' acceptances, and commercial bills. 15 U.S.C. 78o(a)(1). The Canadian Bankers' Association asked the Commission to clarify that the U.S. broker-dealer registration requirements do not apply to transactions in U.S. commercial paper by Canadian banks in the U.S. market. Commercial paper, bankers' acceptances, and commercial bills are not defined in the Exchange Act. Nonetheless, the Commission notes that the definition of "security" in section 3(a)(10) of the Exchange Act, 15 U.S.C. 78c(a)(10), generally is understood to exclude instruments exempt from registration under section 3(a)(3) of the Securities Act, 15 U.S.C. 77c(a)(3), by virtue of their classification as commercial paper. See Securities Exchange Act Release No. 4412 (Sept. 20, 1961) [1957-61 Transfer Binder], Fed. Sec. L. Rep. (CCH) 2045 (factors identifying exempted commercial paper under section 3(a)(3) of Securities Act); Sanders v. John Nuveen & Co., 463 F.2d 1075 (7th Cir.), cert. denied, 409 U.S. 1009 (1972) (applying same factors under section 3(a)(10) of Exchange Act).

Registered broker-dealers are subject to a panoply of U.S. regulations and supervisory structures intended to protect investors and the securities markets.[FN22] Registered broker-dealers must be members of a self-regulatory organization ("SRO") [FN23] and the Securities Investor Protection Corporation ("SIPC").[FN24] They are subject to statutory disqualification and the Commission's disciplinary authority,[FN25] which are designed to prevent persons with an adverse disciplinary history from becoming, or becoming associated with, registered broker-dealers. They also are required by the Commission's net capital regulations [FN26] to maintain sufficient capital to operate safely. In addition, they are required to maintain adequate competency levels, by satisfying SRO qualification requirements.[FN27]

22    Many of the statutory and regulatory provisions cited below as applicable to registered broker-dealers actually are applicable by their terms to other unregistered broker-dealers. E.g., sections 15(b)(4) and 15(b)(6) of the Exchange Act, 15 U.S.C. 78o(b)(4) and 78o(b)(6); Rules 15c3-1, 15c3-3, 17a-3, 17a-4, and 17a-5, 17 CFR 240.15c3-1, 15c3-3, 17a-3, 17a-4, and 17a-5. Nevertheless, the staff would not recommend that the Commission take enforcement action against foreign broker-dealers for want of compliance with those provisions, with the exception of sections 15(b)(4) and 15(b)(6), if the foreign broker-dealers were exempt from broker-dealer registration under the Rule.

FN23 Section 15(b)(8) of the Exchange Act, 15 U.S.C. 78o(b)(8).

FN24 Section 3(a)(2) of the Securities Investor Protection Act of 1970, 15 U.S.C. 78ccc(a)(2).

FN25 See sections 3(a)(39), 15(b)(4), and 15(b)(6) of the Exchange Act, 15 U.S.C. 78c(a)(39), 78o(b)(4), and 78o(b)(6).

FN26 See Rule 15c3-1, 17 CFR 240.15c3-1.

FN27 E.g., NASD Schedules to By-Laws, Schedule C, NASD Manual (CCH) 1782-91. See section 15(b)(7) of the Exchange Act, 15 U.S.C. 78o(b)(7).

Further, registered broker-dealers are under extensive recordkeeping and reporting obligations,[FN28] fiduciary duties [FN29] and special antifraud rules,[FN30] and the Commission's broad enforcement authority over broker-dealers. [FN31] That authority, in turn, helps assure that broker-dealers are complying with the statutory and regulatory provisions governing the U.S. securities industry.[FN32] Moreover, the **\*30016** Commission's financial supervision of entities participating in the interdependent network of securities professionals contributes to the financial soundness of this nation's securities markets.

28  E.g., Rules 17a-3 (recordkeeping), 17a-4 (record preservation), and 17a-5 (reporting), 17 CFR 240.17a-3, 17a-4, and 17a-5. In addition, for nonresident registered broker-dealers the Commission has adopted Rule 17a-7, which establishes requirements for U.S. maintenance of records by these broker-dealers. 17 CFR 240.17a-7. See also NASD Schedules to By-Laws, Schedule C (VIII), NASD Manual (CCH) 1790.

  FN29 See Hanly V. SEC, 415 F.2d 589, 596 (2d Cir. 1969) ("A securities dealer occupies a special relationship to a buyer of securities in that by his position he implicitly represents he has an adequate basis for the opinions he renders").

  FN30 E.g., section 15(c) of the Exchange Act, 15 U.S.C. 78*o*(c), and the rules thereunder, e.g., Rule 15c1-2, 17 CFR 240.15c1-2.

  FN31 See sections 15(c) and 21 of the Exchange Act, 15 U.S.C. 78*o*(c) and 78u.

  FN32 E.g., Rule 14b-1, 17 CFR 240.14b-1 (prompt forwarding of proxy information to beneficial owners of securities); Rule 17a-8, 17 CFR 240.17a-8 (financial recordkeeping and reporting of currency and foreign transactions); Rule 17a-13, 17 CFR 240.17a-13 (quarterly security counts); Rule 17f-1, 17 CFR 240.17f-1 (reports and inquiries concerning missing, lost, counterfeit, or stolen securities); Rule 17f-2, 17CFR 240.17f-2 (fingerprinting of securities industry personnel).

These considerations remain important regardless of whether a broker-dealer's activities involve contacts with individual or institutional investors. When Congress authorized and subsequently required the Commission to register broker-dealers, Congress did not condition the requirement for registration on the type of investor involved. In 1975, Congress amended section 15(a) to extend the broker-dealer registration requirements to all broker-dealers trading exclusively on a national securities exchange or in municipal securities.[FN33] Moreover, as noted in the concept release issued today, [FN34] Congress recently reaffirmed the importance of regulating securities professionals who operated in a largely institutional market by enacting the Government Securities Act of 1986.[FN35] Congress enacted this legislation to remedy serious problems, including a depositors' run on savings and loan associations and savings banks that resulted in the temporary closing of seventy-one of those financial institutions, that had developed in a primarily institutional market due in part to inadequate regulation of the professional intermediaries in that market.[FN36]

33  Securities Act Amendments of 1975, Pub. L. No. 94-29, § 11, 89 Stat. 97, 121 (1975).

  FN34 Securities Exchange Act Release No. 27018 (July 11, 1989) ("Concept Release").

  FN35 Pub. L. No. 99-571, 100 Stat. 3208 (1986).

  FN36 See S. Rep. No. 99-426, 99th Cong., 2d Sess. 6-10 (1986).

Accordingly, after reviewing the comments, the Commission is proceeding cautiously by adopting the limited exemptions incorporated in the Rule. As discussed previously, however, the Commission is seeking comment in the Concept Release on a conceptual approach that might increase the ability of U.S. institutional investors to deal with foreign broker-dealers in a manner that is consistent with the protection of those investors and with the Exchange Act.

### B. General Principles of U.S. Registration for International Broker-Dealers

Before discussing the exemptions in the Rule, it is useful to review the general principles governing U.S. registration of brokers and dealers engaging in international activities.[FN37] The definitions of "broker" [FN38] and "dealer" [FN39] do not refer to nationality, and the scope of these definitions includes both domestic and foreign persons [FN40] performing the activities described therein. Consequently, any use of the U.S. jurisdictional means to engage in these activities could trigger the broker-dealer registration requirements of section 15(a).[FN41]

37  These principles similarly would apply to registration of government securities brokers or government securities dealers under section 15C of the Exchange Act, 15 U.S.C. 78*o*-5, and to registration of municipal securities dealers under section 15B of the Exchange Act, 15 U.S.C. 78*o*-4. Neither these principles nor the Rule, however, necessarily reflect the requirements of any state securities laws, which may apply to the activities of foreign broker-dealers within the jurisdiction of those states. Foreign broker-dealers exempt from registration by virtue of compliance with the Rule still could be subject to the registration requirements established by state securities laws, since the Commission has no authority to grant exemptions from those requirements.

FN38 See note 16 supra.

FN39 See note 17 supra.

FN40 Section 3(a)(9) of the Exchange Act, 15 U.S.C. 78c(a)(9), defines "person" as a "natural person, company, government, or political subdivision, agency, or instrumentality of a government," again without reference to nationality.

FN41 See supra note 20 and accompanying text. Apart from concerns about broker-dealer registration, foreign broker-dealers should be careful that any offers or sales of securities comply with the registration provisions of the Securities Act, when applicable. See Securities Act Releases No. 4708 (July 9, 1964), 29 FR 9828 ("Release 33-4708"), and No. 6779 (June 10, 1988), 53 FR 22661 ("Release 33-6779").

A potential limitation on the broad application of section 15(a) may be found in section 30(b) of the Exchange Act, which excludes from the application of the Exchange Act or the rules thereunder any person "transact[ing] a business in securities without the jurisdiction of the United States," in the absence of Commission rules explicitly applying those provisions to these persons. 15 U.S.C. 78dd(b). While no rules have been adopted, the exemption provided by section 30(b) has been held unavailable if transactions occur in a U.S. securities market, Roth v. Fund of Funds, Ltd., 405 F.2d 421 (2d Cir. 1968), cert. denied, 394 U.S. 975, reh. denied, 395 U.S. 941 (1969); Schoenbaum v. Firstbrook, 405 F.2d 200, 208 (2d Cir.), rev'd in part on other grounds, 405 F.2d 215 (2d Cir. 1968) (en banc), cert. denied sub nom. Manley v. Schoenbaum, 395 U.S. 906 (1969); Selzer v. The Bank of Bermuda, Ltd., 385 F. Supp. 415 (S.D.N.Y. 1974); In the Matter of I.O.S., Ltd. (S.A.), [1971-72 Transfer Binder] Fed. Sec. L. Rep. (CCH) 78,637 (Mar. 14, 1972); if offers and sales are made abroad to U.S. persons or in the United States to facilitate sales of securities abroad, SEC v. United Financial Group, Inc., 474 F.2d 354 (9th Cir. 1973); Traves v. Anthes Imperial Ltd., 473 F.2d 515 (8th Cir. 1973); Leasco Data Processing Equipment Corp. v. Maxwell, 468 F.2d 1326, 1336 n.6 (2d Cir. 1972); Bersch v. Drexel Firestone, Inc., 389 F. Supp. 446, 453-59 (S.D.N.Y. 1974), aff'd in part and rev'd in part, 519 F.2d 974 (2d Cir. 1975), cert. denied sub nom. Bersch v. Arthur Andersen & Co., 423 U.S. 1018 (1975); or if the United States is used as a base for securities fraud perpetrated on foreigners, Arthur Lipper Corp. v. SEC, 547 F.2d 171 (2d Cir. 1976), reh. denied, 551 F.2d 915 (2d Cir. 1977), cert. denied, 434 U.S. 1009 (1978).

In their comment letters, the College Retirement Equities Fund ("CREF"), Westpac Banking Corporation, and Debevoise & Plimpton argued that section 30(b) should exempt from Commission regulation foreign broker-dealers operating exclusively outside this country and contacting U.S. institutional investors in the United States from outside this country. They asserted that reading section 30(b) to protect only foreign broker-dealers not using the U.S. jurisdictional means to effect, induce, or attempt to induce any transactions in securities with or for U.S. persons would render the section meaningless, on the grounds that foreign broker-dealers avoiding this use of the U.S. jurisdictional means would not be subject to the requirements of section 15(a) in the first place.

The Commission's position on the application of section 30(b) historically has been, and continues to be, that the phrase "without the jurisdiction of the United States" in that section does not refer to the territorial limits of this country. See, e.g., Securities and Exchange Commission, Brief Amicus Curiae on Rehearing by the Full Court, Schoenbaum v. Firstbrook (2d Cir. 1968) at 23. Moreover, even if section 30(b) were read to incorporate a territorial approach, the Commission does not believe that section 30(b) would exempt from broker-dealer registration the activities suggested by the commenters. In particular, directed selling efforts to U.S. investors in the United States hardly could be considered activities not traversing the U.S. territorial limits. A broker-dealer operating outside the physical boundaries of the United States, but using the U.S. mails, wires, or telephone lines to trade securities with U.S. persons located in this country, would not be, in the words of section 30(b), "transact[ing] a business in securities without the jurisdiction of the United States."

## 1. Broker-Dealer Operations

As a policy matter, the Commission now uses a territorial approach in applying the broker-dealer registration requirements to the international operations of broker-dealers.[FN42] Under this approach, all broker-dealers physically operating within the United States that effect, induce, or attempt to induce any securities transactions would be required to register as broker-dealers with the Commission, even if these activities were directed only to foreign investors outside the United States. Conversely, as explained in the interpretive statement in Release 34-25801, U.S. entities would not be required to register if they conducted their sales activities entirely outside the United States.[FN43]

42    Proposed Regulation S also follows a territorial approach, see Release 33-6779, 53 FR at 22665-66. This territorial approach is different from the limited nationality approach taken in Release 33-4708, which stated that, to avoid being subject to the registration requirements of the Securities Act, an offering must be "made under circumstances reasonably designed to

preclude distribution or redistribution of the securities within, or to nationals of, the United States." 29 FR at 9829 (emphasis added).

FN43 See Release 34-25801, 53 FR at 23646 n.9 and accompanying text. After the effective date of the Rule, the staff will withdraw two prior inconsistent no-action positions regarding arrangements under which sales or related activities involving exclusively foreign persons emanated from within this country. Letter from Amy Natterson Kroll, Attorney, Division of Market Regulation, SEC, to Kevin McMahon, Esq., Jones, Grey & Bayley, P.S. (Aug. 1, 1986) (Barons Mortgage Association); Letter from Lynne G. Masters, Attorney, Office of Chief Counsel, Division of Market Regulation, SEC, to Chester J. Jachimiec, Esq., Winstead, McGuire, Sechrest & Minick (Aug. 3, 1987) (States Petroleum, Inc.). The withdrawal of these no-action positions was discussed when the interpretive statement was proposed, but no comments were received. See Release 34-25801, 53 FR at 23650 n.48.

**\*30017** Also, the Commission uses an entity approach with respect to registered broker-dealers. Under this approach, if a foreign broker-dealer physically operates a branch in the United States, and thus becomes subject to U.S. registration requirements, the registration requirements and the regulatory system governing U.S. broker-dealers would apply to the entire foreign broker-dealer entity. If the foreign broker-dealer establishes an affiliate in the United States, however, only the affiliate must be registered as a broker-dealer; the foreign broker-dealer parent would not be required to register. [FN44] Under this arrangement, absent exemptions, only the registered U.S. affiliate would be authorized to trade with any person in the United States or perform securities functions on behalf of those customers, such as effecting trades, extending credit, maintaining records and issuing confirmations, and receiving, delivering, and safeguarding funds and securities.[FN45]

44   Similarly, only the affiliate's personnel must be licensed appropriately by the NASD or another SRO. See sections 3(a)(18) and 15(c)(8) of the Exchange Act, 15 U.S.C. 78c(a)(18) and 78o(c)(8).
FN45 See note 189 infra regarding whether a registered broker-dealer would be permitted to function as an introducing broker to an unregistered foreign broker-dealer.

Some commenters questioned whether, under these principles, a registered broker-dealer's personnel who are stationed outside the United States with a foreign broker-dealer may contact U.S. and foreign persons located in the United States on behalf of the registered broker-dealer, provided that these personnel are U.S.-registered and subject to U.S. regulatory supervision.[FN46] Assuming these persons were subject to the registered broker-dealer's supervision and control [FN47] and satisfied all U.S. SRO qualification standards,[FN48] the Commission believes that it is consistent with these principles for a registered broker-dealer's registered representative stationed outside the United States with a foreign broker-dealer to contact persons in the United States from within or without this country on behalf of the registered broker-dealer.

46   The Securities Industry Association ("SIA") and Merrill Lynch & Co., Inc. The SIA inquired concerning contacts originating from outside the United States, while Merrill Lynch addressed contacts originating inside this country also.
FN47 Section 15(b)(4)(E) of the Exchange Act, 15 U.S.C. 78o(b)(4)(E), imposes a reasonable supervision standard, and section 20(a) of the Exchange Act, 15 U.S.C. 78t(a), establishes both controlling person liability and a good faith defense.
FN48 See text accompanying note 27 supra.

## 2. U.S. Investors

In addition to requiring broker-dealer operations physically located within the United States to register, the Commission's territorial approach generally would require broker-dealer registration by foreign broker-dealers that, from outside the United States, induce or attempt to induce trades by any person in the United States.[FN49] The Commission would not require registration, however, of foreign broker-dealers dealing from abroad with foreign persons domiciled abroad but temporarily present in this country.[FN50]

49   See proposed interpretive statement, Release 34-25801, 53 FR at 23649-51.

FN50 The Rule incorporates an exemption for foreign broker-dealers engaging in securities activities with these persons. See Part IV.B. infra.

If foreign broker-dealers are effecting trades outside the United States with or for individual U.S. citizens resident abroad, but have no other contacts within the jurisdiction of the United States, the Commission generally would not expect these foreign broker-dealers to register. Most U.S. citizens residing abroad typically would not expect, in choosing to deal with foreign broker-dealers, that these foreign broker-dealers would be subject to U.S. registration requirements. Nor would foreign broker-dealers soliciting U.S. citizens resident abroad normally expect that they would be covered by U.S. broker-dealer requirements, since they generally would not be directing their sales efforts toward groups of U.S. nationals. To make clear that registration is not required of foreign broker-dealers dealing with U.S. persons resident abroad, including branches and agencies of U.S. persons located abroad, the Commission has included in the Rule a specific exemption for these foreign broker-dealers, as discussed in greater detail below. The Commission historically has taken the view, however, that foreign broker-dealers specifically targeting identifiable groups of U.S. persons resident abroad, e.g., U.S. military and embassy personnel, could be subject to U.S. broker-dealer registration requirements. [FN51] This position is reflected in the exemption.

51    See Release 34-4708 (a public offering of securities specifically directed toward U.S. citizens abroad, such as military personnel, would be regarded as subject to Securities Act registration); SEC v. Siamerican Securities, Ltd., Litigation Release No. 6937 (June 17, 1975) (charging, among other things, violation of section 15(a) regarding solicitation of securities transactions from American citizens stationed in Southeast Asia, for execution primarily on U.S. exchanges and over-the-counter markets). See also Release 33-6779, 53 FR at 22670 n.106 ("offerings specifically targeted at identifiable groups of U.S. citizens resident abroad" would not be eligible for safe-harbor exemption from Securities Act registration under Rule 903 of proposed Regulation S). By "targeting," the Commission means selling efforts intentionally directed toward identifiable groups of U.S. citizens resident abroad.

### 3. Solicitation

The proposed interpretive statement explained that if a transaction with a person in the United States is solicited, the broker-dealer effecting the transaction must be registered.[FN52] Although the requirements of section 15(a) do not distinguish between solicited and unsolicited transactions, the Commission does not believe, as a policy matter, that registration is necessary if U.S. investors have sought out foreign broker-dealers outside the United States and initiated transactions in foreign securities markets entirely of their own accord. In that event, U.S. investors would have taken the initiative to trade outside the United States with foreign broker-dealers that are not conducting activities within this country. Consequently, the U.S. investors would have little reason to expect these foreign broker-dealers to be subject to U.S. broker-dealer requirements. Moreover, requiring a foreign broker-dealer to register as a broker-dealer with the Commission because of unsolicited trades with U.S. persons could cause that foreign broker-dealer to refuse to deal with U.S. persons under any circumstances.

52    See Release 34-25801, 53 FR at 23646; see also Report on Internationalization at V-42.

As noted in the proposed interpretive statement,[FN53] however, the Commission generally views "solicitation," in the context of broker-dealer regulation,[FN54] as including any affirmative effort by a broker or dealer intended to induce transactional business for the broker-dealer or its affiliates.[FN55] Solicitation  **30018** includes efforts to induce a single transaction or to develop an ongoing securities business relationship. Conduct deemed to be solicitation includes telephone calls from a broker-dealer to a customer encouraging use of the broker-dealer to effect transactions, as well as advertising one's function as a broker or a market maker in newspapers or periodicals of general circulation in the United States or on any radio or television station whose broadcasting is directed into the United States. Similarly, conducting investment seminars for U.S. investors, whether or not the seminars are hosted by a registered U.S. broker-dealer, would constitute solicitation.[FN56] A broker-dealer also would solicit customers by, among other things, recommending the

purchase or sale of particular securities, with the anticipation that the customer will execute the recommended trade through the broker-dealer.

53     Release 34-25801, 53 FR at 23650.

FN54 Section 15(a)(1) of the Exchange Act requires registration of brokers and dealers that effect securities transactions or "induce or attempt to induce the purchase or sale of, any security." 15 U.S.C. 78*o*(a)(1) (emphasis added). If a foreign broker-dealer's securities activities brought it within the definitions of "broker" or "dealer" in section 3(a) (4) or (5), using the U.S. jurisdictional means to solicit trades from U.S. customers would be sufficient to trigger the registration requirements of section 15(a).

FN55 The Report on Internationalization said that "[k]ey to the issue of solicitation is whether the foreign broker-dealer's contacts with U.S. markets reasonably may be viewed as attempting to induce an investor's purchase or sale of a security." Report on Internationalization at V-42. See also Letter from David Romanski, Attorney, Division of Market Regulation, SEC, to Hugh Seymour, Hoare & Govett, Ltd. (Sept. 28, 1973), discussed in Release 34-25801, 53 FR at 23646 n.12 and accompanying text.

FN56 See Hoare & Govett letter, supra note 55.

Thirteen commenters argued that this definition of solicitation should be narrowed.[FN57] In particular, Fidelity Investments did not think that visits to this country by an unregistered foreign broker-dealer "to introduce itself as being available to execute trades" or "to explain regulatory changes occurring in its own jurisdiction" should be deemed solicitation, based on Fidelity's assumption that these activities would not constitute inducements to effect trades through the foreign broker-dealer.[FN58] The other comments supported broader latitude with respect to the distribution of research by foreign broker-dealers to U.S. institutional investors and with respect to the distribution in this country by foreign exchanges of foreign market makers' quotations, both of which the proposed interpretive statement treated as solicitation.[FN59]

57     Fidelity Investments, Madrid Stock Exchange, Dechert Price & Rhoads, Ross & Hardies, CREF, Stikeman, Elliott, Continental Bank, Association of German Banks, Toronto Stock Exchange, the SIA, the ABA, the Committee on International Banking, Securities, and Financial Transactions of the International Law and Practice Section of the New York State Bar Association ("NYSBA"), and Sullivan & Cromwell.

FN58 Letter from John I. Fitzgerald, Vice President and General Counsel, Fideltiy Investments, to Jonathan G. Katz, Secretary, SEC (Sept. 13, 1988), at 3. Several other commenters agreed. See Part IV.B. infra.

FN59 See Release 34-25801, 53 FR at 23650-51.

The Commission generally believes that a narrow construction of solicitation would be inconsistent with the express language of section 15(a)(1), which refers to both inducing or attempting to induce the purchase or sale of securities, [FN60] and would be unwarranted in the context of the domestic application of U.S. broker-dealer registration requirements. As a matter of policy, however, the Commission has created a conditional exemption in the Rule to permit expanded U.S. distribution of foreign broker-dealers' research reports to major U.S. institutions, which is discussed below.

60     See supra note 54.

In addition, the Commission believes that expanded third-party distribution of foreign broker-dealers' quotations in this country without registration should be allowed on an interpretive basis.[FN61] As the proposed interpretive statement explained,[FN62] the dissemination in the United States of a broker-dealer's quotes for a security typically would be a form of solicitation. The staff nonetheless has given assurances that enforcement action would not be recommended for lack of broker-dealer registration with respect to the collective distribution by organized foreign exchanges of foreign market makers' quotes, in the absence of other inducements to trade on the part of these market makers.[FN63] Several commenters discussed an exemption in the Rule for the collective distribution of foreign broker-dealers' quotations. The ABA suggested exempting from registration foreign broker-dealers that acted as market makers and provided

their names, addresses, telephone numbers, and quotes as part of the collective distribution by a "recognized foreign securities market" of foreign market makers' quotes.[FN64] Members of the Securities Law Committee of the Chicago Bar Association ("CBA") concurred. Sullivan & Cromwell maintained that the fact-specific nature of these arrangements rendered them more suitable for resolution by the staff through no-action or interpretive procedures. The Public Securities Association ("PSA") suggested that, if a foreign broker-dealer participated in a third-party quotation system "principally directed at foreign persons," dissemination of its quotations to U.S. institutional investors should not be considered solicitation of those investors, provided that the foreign broker-dealer did not engage in other activities in the United States requiring broker-dealer registration.[FN65]

61  See Part IV.B. infra. The Commission also has created an exemption in the direct contact provisions of the Rule to permit associated persons of foreign broker-dealers to make visits to U.S. institutional investors under limited conditions. The Rule does not permit foreign associated persons to conduct any other activities within this country, unless those activities would not require broker-dealer registration.

FN62 Release 34-25801, 53 FR at 23651.

FN63 See Release 34-25801, 53 FR at 23647 nn.21-27 and accompanying text. The staff's no-action assurances also extended to the execution of trades resulting from these quotes.

FN64 Letter from Liftin to Katz, supra note 11, at 4. The ABA did not offer any specific criteria for defining a "recognized foreign securities market," which it defined as a foreign securities market determined by the Commission (or the staff, pursuant to delegated authority) to be entitled to this treatment.

FN65 Letter from Frances R. Bermanzohn, Senior Vice President and General Counsel, PSA, to Jonathan G. Katz, Secretary, SEC (Oct. 28, 1988), at 9.

At the present time, the Commission generally would permit the U.S. distribution of foreign broker-dealers' quotations by third-party systems, e.g., systems operated by foreign marketplaces or by private vendors, that distributed these quotations primarily in foreign countries. The Commission recognizes that access to foreign market makers' quotations is of considerable interest to registered broker-dealers and institutional investors, who seek timely information on foreign market conditions.[FN66] The Commission's position, however, would apply only to third-party systems that did not allow securities transactions to be executed between the foreign broker-dealer and persons in the United States through the systems. In addition, foreign broker-dealers whose quotes were distributed through the systems would not be allowed to initiate contacts with U.S. persons, beyond those exempted under the Rule, without registration or further exemptive rulemaking. The Commission believes that questions regarding the future development of third-party quotation systems with internal execution capabilities designed, for example, to facilitate cross-border trading in securities while the domestic markets for those securities are closed, should be addressed under present **\*30019** circumstances by the staff on a case-by-case basis or by the Commission in further rulemaking proceedings. The Commission also believes that the direct dissemination of a foreign market maker's quotations to U.S. investors, such as through a private quote system controlled by a foreign broker-dealer, would not be appropriate without registration, because the dissemination of these quotations would be a direct, exclusive inducement to trade with that foreign broker-dealer.

66  The Commission would have reservations, however, about certain specialized quotation systems, which might constitute a more powerful inducement to effect trades because of the nature of the proposed transactions. For example, a foreign broker-dealer whose quotations were displayed in a system that disseminated quotes only for large block trades might well be deemed to have engaged in solicitation requiring broker-dealer registration, as opposed to a foreign broker-dealer whose quotes were displayed in a system that disseminated the quotes of numerous foreign dealers or market makers in the same security.

**4. Registered Broker-Dealers**

Some commenters asked the Commission to confirm that foreign broker-dealers would not become subject to the registration requirements of section 15(a) by using the U.S. jurisdictional means to deal only with registered broker-dealers.[FN67] The staff already has taken no-action positions on broker-dealer registration with respect to foreign broker-dealers engaging in securities transactions with registered broker-dealers and with banks acting in a broker or

dealer capacity (including acting as municipal or governmental securites dealers).[FN68] The Commission has codified this position as an exemption in the Rule,[FN69] so that transactions by foreign broker-dealers with registered broker-dealers acting as principal or agent, or with banks acting in a broker or dealer capacity, need not take place within the framework established by the proposed rule.[FN70]

67      The Institute of International Bankers, the ABA, the PSA, the SIA, Securitiy Pacific Corporation, and Sullivan & Cromwell. FN68 Letter from John Polanin, Jr., Attorney, Office of Chief Counsel, Division of Market Regulation, SEC, to Robert L. Tortoriello, Esq., Cleary, Gottlieb, Steen & Hamilton (July 7, 1988) (National Westminster Bank PLC); Letter from Robert L.D. Colby, Chief Counsel, Division of Market Regulation, SEC, to Robert L. Tortoriello, Esq., Cleary, Gottlieb, Steen & Hamilton (Apr. 1, 1988) (Security Pacific Corporation).
FN69 See Part IV.B infra.
FN70 See Release 34-25801, 53 FR at 23653-54.

## IV. Rule 15a-6 and Concept Release

### A. Overview

The Commission's response to the issues raised by the comments on the interpretive statement and proposed Rule 15a-6 is threefold. First, the Commission is adopting exemptions allowing nondirect contacts between foreign broker-dealers and U.S. investors. Second, the Commission is adopting exemptions allowing direct contacts between foreign broker-dealers and certain U.S. investors through intermediaries, and between foreign broker-dealers and certain other persons directly. Third, the Commission is seeking comment in the Concept Release on a conceptual approach based on recognition of foreign regulation as a substitute in part for U.S. broker-dealer registration.

### 1. Rule 15a-6

The first two prongs of this approach are incorporated in the Rule, which the Commission has decided to adopt in an expanded format substantially as published in Release 34-26136. The Rule thus incorporates much of the proposed interpretive statement to realize the benefits of codification identified by many commenters.[FN71] As adopted, the Rule contains exemptions from broker-dealer registration for nondirect contacts through unsolicited transactions and the distribution of research reports, and it allows for direct contacts with certain U.S. institutional investors through intermediaries and with certain other defined classes of persons without intermediaries.

71      See supra notes 11-13 and accompanying text.

### 2. Recognition of Foreign Securities Regulation

The third prong of the Commission's approach is represented by the Concept Release on recognition of foreign securities regulation also issued today. In the proposed interpretive statement, the Commission noted that the development of comprehensive broker-dealer regulation in foreign nations suggested that agreements with foreign securities authorities as to some form of recognition of foreign broker-dealer regulation might be possible in the future. Under this conceptual approach, a country could recognize regulation of a foreign broker-dealer by the latter's home country as a substitute, to some extent, for its own domestic regulation. The Commission pointed out, however, that this approach "could raise the possibility of reduced U.S. investor protection, unless the foreign jurisdiction had a broker-dealer regulatory system that was comparable and compatible with that of the United States, this system was comprehensively enforced, and ready cooperation in surveillance and enforcement matters between the United States and the foreign jurisdiction was the norm." [FN72] In light of these factors, the Commission stated that it was weighing whether some degree of mutual recognition of international broker-dealers might be possible in the future.

72      Release 34-25801, 53 FR at 23652.

Seventeen commenters favored some form of mutual recognition.[FN73] Several of these commenters advocated permitting a foreign broker-dealer to deal directly with U.S. institutional investors after the Commission made a formal determination that its home country's broker-dealer regulatory regime was adequate,[FN74] particularly if there were a satisfactory information-sharing and mutual cooperation agreement between U.S. and foreign regulators.[FN75]

73      Andras Research Capital Inc., Bank of America, Brown Brothers Harriman, Fidelity Investments, National Companies and Securities Commission (Australia) ("NCSC"), Ross & Hardies, CREF, Stikeman, Elliott, Westpac Banking Corporation, The Toronto Stock Exchange, the Institute of International Bankers, the SIA, James Capel & Co., Debevoise & Plimpton, the Vancouver Stock Exchange, the NYSBA, and The Montreal Exchange.

FN74 Westpac Banking Corporation, the Institute of International Bankers, James Capel, and Debevoise & Plimpton.

FN75 The SIA advocated that the Commission require participating foreign regulators to accord U.S. broker-dealers "national treatment," i.e., treatment similar to that accorded to domestic broker-dealers in the foreign country.

The comments indicate great interest by U.S. institutional investors and foreign market professionals and securities authorities in an exemption from broker-dealer registration based on recognition of foreign regulation. The many complex issues inherent in this approach require careful deliberation by the Commission and foreign securities authorities before the parameters of this exemption could be defined sufficiently to realize the desired goals of increased access to foreign markets by U.S. institutional investors, and more efficient regulation of the cross-border activities of foreign broker-dealers, without resulting in reduced protection for U.S. investors and securities markets. Therefore, the Commission has decided to adopt the Rule at the present time, in light of the increasing cross-border activities of foreign broker-dealers and the need for clarification of the application of the U.S. broker-dealer registration requirements to these activities, while also soliciting specific comment on a conceptual approach based on recognition of foreign securities regulation.

### 3. Withdrawal of Proposed Interpretive Statement

In view of its other actions, the Commission considers it unnecessary to publish separately a final interpretive statement. The Rule as adopted includes exemptions incorporating many of the positions originally set forth in the proposed interpretive statement, and this release specifically discusses **\*30020** others, especially in connection with the general principles stated above. To avoid confusion, the Commission is withdrawing the proposed interpretive statement, but the staff's interpretive and no-action letters and the Commission exemptions cited therein will remain valid until expressly modified or withdrawn. In addition, the Commission wishes to confirm that the staff's guidance will continue to remain available regarding both the application of the Rule and the general application of the U.S. broker-dealer registration requirements to the activities of foreign broker-dealers.[FN76]

76      Questions on this subject should be addressed to the Office of Chief Counsel, Division of Market Regulation, Securities and Exchange Commission, 450 Fifth St. NW., Mail Stop 5-1, Washington, DC 20549, (202) 272-2848.

### B. Rule 15a-6

The Commission is adopting proposed Rule 15a-6 under section 15(a)(2) of the Exchange Act [FN77] to provide conditional exemptions from broker-dealer registration for foreign broker-dealers that do not initiate direct contacts with U.S. persons, that solicit or effect transactions by certain U.S. institutional investors through registered broker-dealers, or that solicit or effect securities transactions by certain other persons.

77      15 U.S.C. 70*o*(a)(2).

## 1. Structure of the Rule

As previously noted, the Commission is adopting Rule 15a-6 in an expanded format similar to that published in Release 34-26136. A majority of commenters that addressed the issue supported expansion of the proposed exemptive rule to include the substance of the interpretive statement,[FN78] and the Commission concurs with those comments suggesting that an expanded rule would be understood more easily, especially by foreigners unfamiliar with the Commission interpretive practices. Therefore, Rule 15a-6 as adopted incorporates many of the positions articulated in the interpretive statement, although it differs in some respects from the expanded rule published in Release 34-26136. For ease of reference, the Rule has been organized into nondirect contacts, direct contacts, and trading with or for specified persons.

78 Of the thirteen commenters who addressed the question of whether the substance of the interpretive statement should be included in the proposed rule, eleven supported expansion of the rule: Continental Illinois National Bank and Trust Company of Chicago, the PSA, The Toronto Stock Exchange, the Institute of International Bankers, Chase Manhattan Government Securities, the SIA, Security Pacific Corporation, Salomon Brothers Inc., Sullivan & Cromwell, Merrill Lynch, and the CBA. The NYSBA, while not commenting explicitly on expansion of the proposed rule, suggested that in terpretive statement be "converted into an interpretive rule" to provide foreign broker-dealers "a clearer basis" on which to evaluate the application of U.S. law to their activities. Letter from Lauren D. Rachlin, Chairman, NYSBA, to Jonathan G. Katz, Secretary, SEC (Nov. 7, 1988), at 5. The Institute of International Bankers suggested that the Commission retain the proposed interpretive statement for discussion of matters not specifically addressed by the ABA's formulation of the proposed rule. The SIA, Security Pacific, Salomon Brothers, and Merrill Lynch believed that the Commission should make clear that future requests for interpretive guidance still would be considered after the adoption of the Rule. Only the PSA (which preferred the ABA's approach if the Commission adopted the Rule) and The Montreal Exchange argued against an expanded rule, believing that codification of interpretive positions on foreign broker-dealer registration would impair the staff's ability to exercise its judgment on this subject in a flexible manner.

Rule 15a-6(a) exempts only foreign brokers or dealers, which are defined in paragraph (b)(3) to mean persons not resident in the United States that are not offices or branches of, or natural persons associated with, registered broker-dealers, and whose securities activities would fall within the definitions of "broker" or "dealer" in sections 3(a)(4) or 3(a)(5) of the Exchange Act, respectively.[FN79] The definition in paragraph (b)(3) expressly includes any U.S. person engaged in business as a broker or dealer entirely outside the United States. This definition also includes foreign banks to the extent that they operate from outside the United States, but not their U.S. branches or agencies.[FN80]

79 Supra notes 16-17. See also note 19 supra regarding Rule 3a4-1, 17 CFR 240.3a4-1.
 FN80 The Institute of International Bankers contended that U.S.-regulated branches or agencies of foreign banks should be excluded from broker-dealer registration in the same way as domestic banks, by virtue of section 3(a)(6) of the Exchange Act, 15 U.S.C. 78c(a)(6). As explained in note 16 supra, the Commission has taken the position that the status of these branches and agencies under section 3(a)(6) is fact-specific, and U.S. branches or agencies of foreign banks that fall within the definition of bank under section 3(a)(2) of the Securities Act will be treated as U.S. institutional investors under the Rule. See also note 168 infra.

The proposed rule would have exempted foreign broker-dealers only from section 15(a). The expanded rule also would have exempted foreign broker-dealers required to register as municipal securities dealers by section 15B(a)(1) of the Exchange Act,[FN81] and several commenters believed that foreign broker-dealers required to register as government securities brokers or dealers by section 15C(a)(1) of the Exchange Act[FN82] should be included as well.[FN83] Pursuant to section 15B(a)(4) of the Exchange Act,[FN84] the Commission has made the exemptions in the Rule applicable to foreign broker-dealers engaging in municipal securities activities involving U.S. investors, although the Commission believes that these activities are not likely to be extensive. In addition, the Commission will recommend to the Department of the Treasury that the latter exercise its authority under section 15C(a)(4) of the Exchange Act [FN85] to provide similar exemptions to foreign broker-dealers engaging in government securities activities involving U.S. investors.

81    15 U.S.C. 78*o*-4(a)(1).

    FN82 15 U.S.C. 78*o*-5(a)(1).

    FN83 The ABA, the PSA, and the CBA.

    FN84 15 U.S.C. 78*o*-4(a)(4).

    FN85 15 U.S.C. 78*o*-5(a)(4).

As proposed, Rule 15a-6(a) was phrased as a conditional exemption from the broker-dealer registration requirements of section 15(a).[FN86] The expanded rule stated instead that a qualifying broker-dealer "is not subject to" these registration requirements.[FN87] Several commenters objected that an exemption implied that the exempted activities required registration absent the exemption.[FN88] The Commission has determined to adopt Rule 15a-6 as an exemption, rather than as an exclusion from registration. In the Commission's view, many of the activities covered by provisions of the Rule plainly would require registration, absent an exemption. To keep the rule as simple as possible, the Commission is adopting all the provisions of the Rule as exemptions from registration, pursuant to sections 15(a)(2) and 15B(a)(4) of the Exchange Act.[FN89]

86    See supra note 10.

    FN87 Release 34-26136, 53 FR at 38968.

    FN88 The ABA, Sullivan & Cromwell, the PSA, and Continental Bank.

    FN89 See notes 77 and 84 supra. Section (a) of the proposed rule also stated that the rule applied to any foreign broker-dealer "subject to the registration requirements of paragraph (1) of section 15(a) of the Act, because it induces or attempts to induce the purchase or sale of any security by a U.S. person." Release 34-25801, 53 FR at 23655. This language has been deleted from the Rule, because it merely restated the language of section 15(a)(1), 15 U.S.C. 78*o*(a)(1). The exemption under Rule 15a-6 is necessary only if the registration requirements of section 15(a) are triggered. As stated in Part IV.A. above, the staff's guidance will continue to be available on this issue.

Several commenters argued that failure to comply with the proposed rule in one instance should not affect the availability of the exemptions under the proposed rule in other cases.[FN90] The justifications proffered by these commenters were the desire to avoid attaching "unduly severe consequences" to "isolated, inadvertent violations" [FN91] **\*30021** and the belief that enforcement considerations did not prohibit a transactional approach, since remedies are available to both the Commission and private investors on a transactional basis.[FN92]

90    The PSA, Security Pacific Corporation, and Sullivan & Cromwell.

    FN91 Letter from Dan C. Aardal, Assistant General Counsel, Security Pacific Corporation, to Jonathan G. Katz, Secretary, SEC (Oct. 31, 1988).

    FN92 The commenters did not elaborate or mention explicitly section 29(b) of the Exchange Act, 15 U.S.C. 78cc(b). See note 94 infra.

In the Commission's view, failure to comply with the conditions of one exemption in the Rule regarding certain activities would not prevent reliance on the same or other exemptions in the Rule with respect to other activities. Also the Commission is modifying the position expressed in the proposed interpretive statement that a foreign broker-dealer's obligation to register, once incurred, "continues until the foreign broker-dealer completely ceases to do business with or for [U.S.] investors" whom it has solicited and with or for whom it has effected securities transactions.[FN93] With respect to the Commission's exercise of its enforcement authority under section 15(a), the Commission would view a violation of U.S. registration requirements by a foreign broker-dealer as an ongoing violation until the foreign broker-dealer completely ceased to conduct U.S. securities activities that were not exempt under the Rule, or that required registration under the general principles discussed earlier in this release. Of course, the foreign broker-dealer would remain liable for its violative conduct, even after it ceased all nonexempt U.S. securities activities. Further, if a foreign broker-dealer repeatedly engaged in nonexempt U.S. securities activities intermittently with exempt U.S. activities, this

course of conduct could support the conclusion that the foreign broker-dealer was in violation of section 15(a) during the entire course of its U.S. activities.[FN94]

93    Release 34-25801, 53 FR at 23651.

FN94 If a foreign broker-dealer deals with U.S. investors in violation of the broker-dealer registration requirements, it would be subject to Commission enforcement action under section 15(a) of the Exchange Act, supra note 10. Indeed, one commenter, even while recommending changes to proposed Rule 15a-16, exhorted the Commission, "after spending extensive efforts in developing a concise codification of interpretative and exemptive positions which will inure to the benefit of all broker-dealers, domestic and foreign, [to] be prepared to demand appropriate compliance with the registration requirements of the 1934 Act with respect to entities engaging in activity which requires registration and which is outside of the exemptions provided by proposed Rule 15a-16." Letter from Donald N. Gershuny, Merrill Lynch & Co., Inc., to Jonathan G. Katz, Secretary, SEC (Oct. 31, 1988).

The foreign broker-dealer also still would be subject to the Commission's broker-dealer rules, because the definition of "registered broker or dealer" in section 3(a)(48) of the Exchange Act, 15 U.S.C. 78c(a)(48), includes a broker-dealer "required to register" pursuant to section 15(a). Also included are brokers and dealers registered or required to register pursuant to section 15B, 15 U.S.C. 78*o*-4, and, with respect to the definition of "member" in section 3(a)(3), 15 U.S.C. 78c(a)(3), and sections 6 and 15A regarding national securities exchanges and registered securities associations, respectively, 15 U.S.C. 78f and 78*o*-3, those entities and government securities brokers and government securities dealers registered or required to register pursuant to section 15C(a)(1)(A), 15 U.S.C. 78*o*-5(a)(1)(A).

It should be noted also that a foreign broker-dealer dealing with U.S. investors in violation of the broker-dealer registration requirements potentially would be exposed to customers' rescission actions brought under section 29(b) of the Exchange Act, 15 U.S.C. 78cc(b). See, e.g., Regional Properties, Inc. v. Financial & Real Estate Consulting Co., 678 F.2d 552, 558 (5th Cir. 1982), aff'd on other grounds, 752 F.2d 178 (5th Cir. 1985) (later appeal); Eastside Church of Christ v. National Plan, Inc., 391 F.2d 357 (5th Cir.), cert. denied, 393 U.S. 913 (1968) (allowing investors to rescind transactions with unregistered broker-dealer). See also Gruenbaum & Steinberg, Section 29(b) of the Securities Exchange Act of 1934: A Viable Remedy Awakened, 48 Geo. Wash. L. Rev. 1 (1979). The right of rescission under section 29(b), 15 U.S.C. 78cc(b), ordinarily would be invoked by private parties, and the Commission believes that it would not be appropriate to make a general statement on the availability of that right in the context of adopting the Rule.

Of course, the broker-dealer's securities activities would continue to be subject to the antifraud provisions of the federal securities laws, e.g., section 17(a) of the Securities Act, 15 U.S.C. 77q(a), and sections 10(b) and 15(c) of the Exchange Act, 15 U.S.C. 78j(b) and 78*o*(c), and the rules thereunder, e.g., Rules 10b-5 and 15c1-2, 17 CFR 240.10b-5 and 240.15c1-2, irrespective of the firm's lack of registration. The extraterritorial application of the antifraud provisions of the federal securities laws was discussed in the proposed interpretive statement. Release 34-25801, 53 FR at 23649 n.39. See also note 41 supra. The Commission continues to believe that the antifraud provisions should be interpreted broadly to restrain securities fraud affecting the United States. See Consolidated Gold Fields PLC v. Minorco, S.A., 871 F.2d 252 (2d Cir. 1989).

## 2. Nondirect Contacts

a. Unsolicited Transactions. As discussed previously, the Commission believes that registration should not be required when a foreign broker-dealer effects an unsolicited trade for a U.S. investor. Accordingly, paragraph (a)(1) of the Rule exempts from registration a foreign broker-dealer to the extent that it "effects transactions in securities with or for persons that have not been solicited by the foreign broker or dealer." This paragraph codifies part of the proposed interpretive statement [FN95] and generally has been taken from paragraph (a)(2) of the expanded rule published in Release 34-26136.[FN96]

95    See Release 34-25801, 53 FR at 23650-51.

FN96 The adopted language differs from the expanded rule in two ways. The expanded rule referred to "execution" of transactions, but "effects" is consistent with the express language of section 15(a)(1) of the Exchange Act. 15 U.S.C. 78*o*(a) (1). Also, the expanded rule referred to solicitation of "customers" without defining them, but "persons" is preferable because of its definition in section 3(a)(9) of the Exchange Act. See note 40 supra.

The expanded rule did not define the concept of solicitation, and neither does the Rule as adopted. The Commission's general views on meaning of the term "solicitation" have been discussed previously. Taking into account the expansive, fact-specific, and variable nature of this concept, the Commission believes that the question of solicitation is best addressed by the staff on a case-by-case basis, consistent with the principles elucidated in this release.

b. Provision of Research to U.S. Persons. As noted in the interpretive statement,[FN97] the provision of research to investors also may constitute solicitation by a broker or dealer. Broker-dealers often provide research to customers on a nonfee basis, with the expectation that the customer eventually will trade through the broker-dealer. They may provide research to acquaint potential customers with their existence, to maintain customer goodwill, or to inform customers of their knowledge of specific companies or markets, so that these customers will be encouraged to use their execution services for that company or those markets. In each instance, the basic purpose of providing the nonfee research is to generate transactional business for the broker-dealer. In the Commission's view, the deliberate transmission of information, opinions, or recommendations to investors in the United States, whether directed at individuals or groups, could result in the conclusion that the foreign broker-dealer has solicited those investors.

97      Release No. 25810, 53 FR at 23650-51.

Consistent with earlier staff no-action positions,[FN98] however, the proposed interpretive statement took the position that the provision to U.S. persons of research reports prepared by a foreign broker-dealer would not require broker-dealer registration by that foreign broker-dealer, if the research reports were distributed to U.S. persons by an affiliated U.S. broker-dealer, if that affiliated broker-dealer prominently stated on the research report that it had accepted responsibility for its content, if the research report prominently indicated that any U.S. persons receiving the research and wishing to effect transactions in any security discussed therein should do so with the U.S. affiliate, not the foreign broker-dealer, and if transactions with U.S. persons in any securities identified in the research actually were effected only with or through the U.S. affiliate, not the  **\*30022**  foreign broker-dealer.[FN99] This position was incorporated into paragraph (a)(3) of the expanded rule in Release 34-26136, although the requirement for affiliation between the registered broker-dealer and the foreign broker-dealer was deleted.

98      See Release 34-25801, 53 FR at 23646-48.

FN99 Article III, section 35(d)(2) of the NASD Rules of Fair Practice requires that all "[a]dvertisements and sales literature shall contain the name of the [NASD] member, [and of] the person or firm preparing the material, if other than the member" and that "[s]tatistical tables, charts, graphs or other illustrations used by members * * * should disclose the source of the information if not prepared by the member." NASD Manual (CCH) 2195 at 2177-78. Under section 35(a)(1), "advertisement" means any "material published, or designed for use in" various public print and electronic media. Id. at 2174. Under section 35(a)(2), "sales literature" specifically includes "research reports, market letters, performance reports or summaries, [and] seminar texts. * * * *" Id. Rule 472.40(7) of the New York Stock Exchange ("NYSE") requires that communications with the public that are "not prepared under the direct supervision of the [NYSE] member organization or its correspondent [NYSE] member organization should show the person (by name and appropriate title) or outside organization which prepared the material." NYSE Guide (CCH) 2472.40(7) at 4027. Under Rule 472.10(1), a "communication" includes "market letters [and] research reports * * *." Id. at 2472.10(1). The Commission would not view an activity that merely complied with these requirements, in itself, as solicitation by a foreign broker-dealer.

Some commenters criticized this position on research as too restrictive.[FN100] For example, Fidelity Investments claimed that, while the research that it receives from foreign broker-dealers is "voluminous," it plays "only a very small part" in the final investment decisions made by its fund managers.[FN101] The Madrid Stock Exchange argued that research distributed free of charge in the United States by foreign broker-dealers to U.S. institutional investors "on a routine basis, for information purposes" should not be deemed solicitation of brokerage business.[FN102] CREF agreed that any other position would impede the flow of foreign research to U.S. institutional investors.

100    See note 13 supra.
       FN101 Letter from Fitzgerald to Katz, supra note 58, at 3.
       FN102 Letter from Enrique Benito Rodriquez, Chairman, Madrid Stock Exchange, to Jonathan G. Katz, Secretary, SEC (Oct. 21, 1988), at 2.

Dechert Price & Rhoads, on behalf of five Spanish broker-dealers, argued that provision of research to existing U.S. institutional clients should not be deemed solicitation, even if trades were effected for those clients as a result.[FN103] These foreign broker-dealers believed that it would be difficult for them to screen out transactions from U.S. institutional investors that have received their research. They maintained that it would be too costly for smaller foreign broker-dealers to establish U.S. affiliates to be responsible for and distribute their research and effect any resulting trades, and that larger foreign broker-dealers thus would have a competitive advantage. The Association of German Banks also objected to the requirement that the U.S. affiliate prominently state that it had accepted responsibility for a research report prepared by a foreign broker-dealer. The SIA, while not objecting to the proposed interpretive position on research itself, suggested that foreign broker-dealers should be allowed to send research directly to U.S. institutional investors, as long as U.S. affiliates accepted responsibility for the research and effected any resulting trades.[FN104]

103    CREF also said that communications between a foreign broker-dealer and a U.S. investor after the investor had opened its account with the foreign broker-dealer on the investor's own initiative should not be deemed solicitation. The Toronto and Vancouver Stock Exchanges agreed. The Commission believes, however, that the existence of these communications could support the conclusion that the foreign broker-dealer was engaged in the securities business within the jurisdiction of the United States, by virtue of having regular customers, and thus was subject to U.S. broker-dealer registration requirements.
       FN104 While expressing general agreement with the discussion of research in the proposed interpretive statement, Sullivan & Cromwell concurred with the SIA on this point, as did the NYSBA and the ABA, although the ABA did not suggest imposition of the execution condition explicitly.

In publishing the proposed rule and interpretive statement, the Commission was motivated, in part, by the desire of U.S. institutional investors for access to foreign markets through foreign broker-dealers and the research that they provide. [FN105] Accordingly, the Rule takes into account the comments on the important role of research in facilitating access to these markets. The Commission does not wish to restrict major U.S. investors' ability to obtain research reports of foreign origin if adequate regulatory safeguards are present.

105    Release 34-25801, 53 FR at 23648.

Paragraph (a)(2) of the Rule therefore provides an exemption from registration for foreign broker-dealers that furnish research reports [FN106] directly or indirectly [FN107] to major U.S. institutional investors [FN108] under certain conditions. The research report must not recommend the use of the foreign broker-dealer to effect trades in any security, [FN109] and the foreign broker-dealer must not initiate follow-up contact with the major U.S. institutional investors receiving the research, or otherwise induce or attempt to induce the purchase or sale of any security by those major U.S. institutional investors.[FN110] If these conditions are met, the foreign broker-dealer may effect trades in the securities discussed in the research or other securities at the request of major U.S. institutional investors receiving the report. Under these conditions, the Commission believes that direct distribution would be consistent with the free flow of information across national boundaries without raising substantial investor protection concerns.

106    Paragraph (a)(2) of the Rule would not distinguish between research reports provided in written or electronic form.
       FN107 As adopted, paragraph (a)(2) is broader than the proposed interpretive statement in that, like the expanded rule, it permits the distribution of foreign research in this country directly by a foreign broker-dealer.
       FN108 Paragraph (b)(4) of the Rule defines "major U.S. institutional investor" as a U.S. institutional investor with assets, or assets under management, in excess of $l00 million, or a registered investment adviser with assets under management in

excess of $100 million. Paragraph (b)(7) of the Rule defines "U.S. institutional investor" as a registered investment company, bank, savings and loan association, insurance company, business development company, small business investment company, or employee benefit plan defined in Rule 501(a)(1) of Regulation D under the Securities Act, 17 CFR 230.501(a)(1), a private business development company defined in Rule 501(a)(2), 17 CFR 230.501(a)(2), an organization described in section 501(c)(3) of the Internal Revenue Code, as defined in Rule 501(a)(3), 17 CFR 230.501(a)(3), or a trust defined in Rule 501(a)(7), 17 CFR 230.501(a)(7). To determine the total assets of an investment company under the Rule, a registered investment company may include the assets of any family of investment companies of which it is a part, and the term "family of investment companies" is defined in paragraph (b)(1) of the Rule.

FN109 The Commission would not consider disclosure in the research report that the foreign broker-dealer is a market maker in a security discussed in the report to violate this requirement.

FN110 If a foreign broker-dealer wished to initiate direct contact with U.S. persons, it could do so using the direct contact exemption in paragraph (a)(3) of the Rule, and the conditions imposed by that exemption, including the participation of a registered broker-dealer intermediary, would address the investor protection concerns raised by those contacts.

If, however, the foreign broker-dealer already had a relationship with a registered broker-dealer that facilitated compliance with the direct contact exemption in the Rule, the Rule would require all trades resulting from the provision of research to be effected through that registered broker-dealer pursuant to the provisions of that exemption. If the foreign broker-dealer had entered into this prior relationship, the procedures for identifying trades from major U.S. institutional investors and routing them through the registered broker-dealer largely would have been established. Thus, the benefits of a registered broker-dealer's intermediation in effecting trades would  **\*30023**  be provided without imposing substantial additional costs.

Although this exemption is limited to major U.S. institutional investors, the Rule's research exemption is broader than either the proposed interpretive statement or the expanded rule in that a registered broker-dealer would not be required to take responsibility for the content of the report.[FN111] In addressing the responsibilities of the U.S. affiliate under paragraph (a) of the proposed rule, some commenters maintained that the registered broker-dealer's performance of supervisory responsibilities would result in little additional protection, at least with respect to substantial institutional investors.[FN112]

111     Of course, if a foreign broker-dealer, for its own business reasons, chose to distribute its research in the United States through a registered broker-dealer, affiliated or not, the SRO rules discussed in note 99 supra would require disclosure of the identity of the preparer of the research.

        FN112 E.g., Association of German Banks.

By its terms, the exemption in paragraph (a)(2) of the Rule is available only with respect to research provided to major U.S. institutional investors. Therefore, the Commission has decided to retain the narrower position regarding the distribution of research expressed in Release 34-25801 with respect to other investors.[FN113] Under this position, the Commission would not require broker-dealer registration by a foreign broker-dealer whose research reports were distributed [FN114] to U.S. persons by a registered broker-dealer,[FN115] if that broker-dealer prominently stated on the research report that it had accepted responsibility for its content,[FN116] if the research report prominently indicated that any U.S. persons receiving the research and wishing to effect any transactions in any security discussed in the report should do so with the registered broker-dealer, not the foreign broker-dealer, and if transactions with U.S. recipients of the report in any securities identified in the research actually were effected only with or through the registered broker-dealer, not the foreign broker-dealer. This position is consistent with the Commission's goal of facilitating the flow of information and capital across national boundaries.[FN117]

113     See supra notes 98-99 and accompanying text.

        FN114 The Commission would not require registration by a foreign broker-dealer whose research reports were included in a broadly-distributed electronic database to which U.S. persons who were not major U.S. institutional investors had access, provided that (i) a registered broker-dealer accepted responsibility for the research and for its inclusion in the database, (ii)

the registered broker-dealer prominently stated on the research report (as displayed in the database) that it had accepted responsibility for its content, and (iii) the research report prominently indicated that any U.S. persons accessing the report and wishing to effect any transactions in the securities discussed in the report should do so with the registered broker-dealer, not the foreign broker-dealer. This position would not limit the research exemption in paragraph (a)(2) of the Rule for research distributed directly to major U.S. institutional investors, whether in written or electronic form.

FN115 The requirement for affiliation between the foreign broker-dealer and the registered broker-dealer through ownership or control has been deleted here as in the Rule.

FN116 As noted above, commenters expressed concern over the ability of the registered broker-dealer to accept responsibility for research prepared by the foreign broker-dealer. The Commission believes that a registered broker-dealer would meet its responsibility under the Rule if it took reasonable steps to satisfy itself regarding the key statements in the research. In cases where there are no indications that the content of the research is suspect, this responsibility can be fulfilled by reviewing the research in question and comparing it with other public information readily available regarding the issuer, to make certain that neither the facts nor the analysis appear inconsistent with outstanding information regarding the issuer.

FN117 See supra note 1.

The Commission wishes to emphasize, however, that neither the exemption nor this position regarding research is applicable with respect to "soft-dollar" arrangements between foreign broker-dealers and U.S. persons.[FN118] As discussed in the proposed interpretive statement,[FN119] in many cases research is provided to customers with the express or implied understanding that the customers will pay for it by directing trades to the broker-dealer that result in an agreed-upon level of commission dollars.[FN120] These "soft-dollar" research arrangements are used widely by broker-dealers both in the United States and abroad.[FN121] If a foreign broker-dealer provided research to a U.S. investor pursuant to an express or implied understanding that the investor would direct a given amount of commission income to the foreign broker-dealer, the Commission would consider the foreign broker-dealer to have induced purchases and sales of securities, irrespective of whether the trades received from the investor related to the particular research that had been provided. Accordingly, both the exemption for research in paragraph (a)(2) and the position retained from Release 34-25801 set forth above would be inapplicable.[FN122]

118 Paragraph (a)(2)(iv) of the exemption so provides.

FN119 Release 34-25801, 53 FR at 23651.

FN120 See Release 34-25801, 53 FR at 23646 n.16 and accompanying text.

FN121 For example, the Securities and Investments Board ("SIB") notes in a recent discussion paper that soft-dollar arrangements in the United Kingdom have increased significantly at a time when the level of brokerage commissions generally has decreased. SIB, Soft Commission Arrangements in the Securities Markets (February 1989).

FN122 CREF explicitly stated that its position against deeming research to be solicitation did not apply to "soft-dollar" arrangements.

c. Investment Adviser Registration. Finally, it is important to emphasize that foreign broker-dealers must consider separately other registration requirements contained in the U.S. securities laws. Specifically, in the proposed interpretive statement, the Commission noted that if a branch or affiliate of a foreign entity in the United States disseminated research information, registration as an investment adviser might be required under section 203 of the Investment Advisers Act of 1940 ("Advisers Act").[FN123] Several commenters requested clarification on this point, one expressing concern that a previous no-action position taken by the Division of Investment Management [FN124] might not apply in light of the direct communications between foreign broker-dealers and certain U.S. institutional investors that could take place under the proposed rule if adopted. A foreign broker-dealer providing research to U.S. persons generally would be an investment adviser within the meaning of the Advisers Act. The staff takes the position that the broker-dealer exclusion in section 202(a)(11)(C) of the Advisers Acts [FN125] —for broker-dealers who provide investment advice that is solely incidental to their brokerage business and who receive no special compensation for such advice—is available only to registered broker-dealers.

123 15 U.S.C. 80b-3. See Release 34-25801, 53 FR at 23651 n.56.

FN124 Citicorp (pub. avail. Sept. 14, 1986).
FN125 15 U.S.C. 80b-2(a)(11)(C).

The Division of Investment Management, however, generally would expect to respond favorably to no-action requests regarding registration under the Advisers Act by foreign brokers and dealers who meet the conditions of paragraph (a) (2), (a)(3), or (a)(4) of the Rule if their activities are limited to those described in section 202(a)(11)(C) [FN126] —that is, if they provide investment advice solely incidental to their brokerage business and receive no special compensation for it. In the future, the Commission may consider whether to propose and adopt an exemptive rule under the Advisers Act for foreign broker-dealers providing the types of services covered by the Rule.

126     Id.

**\*30024   3. Direct Contacts**
a. Transactions with U.S. Institutional Investors and Major U.S. Institutional Investors. Paragraph (a)(3) of the Rule provides an exemption from broker-dealer registration for a foreign broker-dealer that induces or attempts to induce the purchase or sale of any security by a U.S. institutional investor or a major U.S. institutional investor,[FN127] provided that any resulting transactions are effected through a registered broker-dealer and certain conditions are met by the foreign broker-dealer, foreign associated persons, and the registered broker-dealer. As described in the proposed interpretive statement,[FN128] many foreign broker dealers have established registered broker-dealer affiliates in the United States that are fully qualified to deal with U.S. investors and trade in U.S. securities. Nonetheless, these foreign broker-dealers may prefer to deal with institutional investors in the United States from their overseas trading desks, where their dealer operations are based. In addition, because overseas trading desks often are principal sources of current information on foreign market conditions and foreign securities, many U.S. institutions want direct contact with overseas traders. Foreign broker-dealers themselves often are not willing to register as broker-dealers directly with the Commission, however, because registration would require the entire firm to comply with U.S. broker-dealer requirements.[FN129]

127     See infra notes 156-69 and accompanying text; see also note 108 supra.
        FN128 Release 34-25801, 53 FR at 23651.
        FN129 See supra notes 44-45 and accompanying text.

The no-action request granted to Chase Capital Markets US [FN130] allowed foreign trading operations to receive calls from U.S. institutional investors without the foreign broker-dealers registering with the Commission. Under the terms of that letter, foreign broker-dealers could be put in touch with U.S. institutional investors by a registered broker-dealer affiliate, with a U.S.-qualified representative participating in telephone conversations, effecting any resulting transactions, and taking full responsibility for the trades. Like an earlier Commission exemption letter,[FN131] the letter to Chase Capital Markets US provided that the foreign broker-dealer would assist the Commission in the conduct of investigations by furnishing information concerning its contacts with U.S. investors and trading records relating to the execution of U.S. investors' orders by the firm. Both letters also indicated that the foreign broker-dealers would endeavor, directly or indirectly, to obtain the consent of foreign customers to the release of any information sought by the Commission.

130     Letter from Amy Natterson Kroll, Attorney, Office of Chief Counsel, Division of Market Regulation, SEC, to Frank C. Puleo, Esq., Milbank, Tweed, Hadley & McCloy (July 28, 1987).
        FN131 See Letter from Jonathan Katz, Secretary, SEC, to Marcia MacHarg, Esq., Debevoise & Plimpton (Aug. 13, 1986) (Vickers da Costa Securities Inc./ Citicorp), infra note 205 and accompanying text.

In the Commission's view, it is desirable to broaden U.S. investors' access to foreign sources of information through structures that maintain fundamental investor protections. Accordingly, the Commission supports allowing direct

contact between foreign broker-dealers and U.S. institutional investors, subject to requirements concerning these contacts and the execution of orders.[FN132] The Rule as adopted allows a foreign broker-dealer to contact U.S. institutional investors if an associated person of a registered broker-dealer participates in each of these contacts. The Rule also allows a foreign broker-dealer to contact major U.S. institutional investors without the participation of an associated person of a registered broker-dealer in any of these contacts. In each case, any resulting transactions must be effected through an intermediary registered broker-dealer,[FN133] which need not be affiliated with the foreign broker-dealer through ownership or control. The Commission believes that these versions of the intermediary concept used in the Chase Capital Markets US letter and set forth in the proposed rule and the expanded rule greatly increase the utility of the exemption in paragraph (a)(3) of the Rule, the operation of which is described more fully below.[FN134]

132    See Release 34-25801, 53 FR at 23652.

FN133 It would be permissible for more than one registered broker-dealer to serve as intermediary between U.S. institutional investors, major U.S. institutional investors, and a foreign broker-dealer seeking to comply with the Rule.

FN134 The Division of Investment Management generally would expect to respond favorably to no-action requests regarding registration as an investment adviser from foreign broker-dealers complying with the provisions of paragraph (a)(3) of the Rule. See supra notes 123-26 and accompanying text.

(1) Comments on U.S. broker-dealer requirement. As proposed, Rule 15a-6 would have provided an exemption from broker-dealer registration for foreign broker-dealers that effected trades with certain U.S. institutional investors through a registered broker-dealer.[FN135] The foreign broker-dealer's personnel involved in contacts with U.S. institutional investors would have been subject to certain requirements, and the registered broker-dealer would have been responsible for supervising the contact and any resulting trades. If a trade was agreed upon, the rule would have required the registered broker-dealer to effect the trade on behalf of the investor, taking full responsibility for all aspects of the trade. In proposing Rule 15a-6, the Commission stated that requiring the intermediation of a registered broker-dealer would maintain important regulatory safeguards. The registered broker-dealer's responsibility for effecting all trades, combined with its recordkeeping and reporting duties pursuant to section 17 of the Exchange Act [FN136] and the rules thereunder, [FN137] "would facilitate Commission review of this trading and also subject this trading to the U.S. broker-dealer's supervisory responsibility." [FN138]

135    Release 34-25801 did not make clear, however, whether the registered broker-dealer was required to be affiliated with the foreign broker-dealer. See note 142 infra.

FN136 15 U.S.C. 78q.

FN137 See note 28 supra.

FN138 Release 34-25801, 53 FR at 23654.

Fifteen commenters argued that the Commission should not require the participation of a registered broker-dealer affiliate in transactions with major institutional investors.[FN139] In particular, commenters asserted that U.S. institutions meeting the $100 million asset test in the proposed rule should be able to be solicited by foreign broker-dealers and then transact business directly with those broker-dealers, because requiring the intermediation of a registered broker-dealer would increase costs, impede the flow of foreign research to U.S. institutions, and reduce the ability of these institutions to invest in foreign markets in which local broker-dealers had not established registered U.S. affiliates.[FN140] Other commenters maintained that the Commission should grant an exemption from the registration requirements of section 15(a) to foreign broker-dealers  *30025  that deal only with institutional investors, on the grounds that these investors can fend for themselves in the international securities markets.[FN141] As discussed below in Part IV.B., however, the Commission believes that not all the regulatory concerns raised by such an exemption would be alleviated by the institutional nature or size of these investors.

139    Andras Research Capital, Brown Brothers Harriman, Fidelity Investments, Madrid Stock Exchange, Ross & Hardies, CREF, Dechert Price & Rhoads, Association of German Banks, Westpac Banking Corporation, Toronto Stock Exchange, Institute of International Bankers, Chase Manhattan Government Securities, the ABA, The Canadian Bankers' Association, and The Montreal Exchange.

FN140 For example, the Toronto Stock Exchange believed that the costs of establishing a registered U.S. broker-dealer affiliate would be significant. In addition, the PSA and Chase Manhattan Government Securities argued that requiring the participation of a U.S. affiliate would be excessively burdensome where the only contact with U.S. investors related to transactions in U.S. government securities.

FN141 E.g., the SIA.

The Commission had requested comment on whether the nature of the relationship between the foreign broker-dealer and the registered broker-dealer "should involve a specified degree of ownership or control." [FN142] Three commenters replied that no affiliate relationship should be required between the foreign broker-dealer and the intermediary registered broker-dealer.[FN143] These commenters generally argued that the use of any registered broker-dealer to perform the duties set forth in the proposed rule would provide sufficient investor protection and would lower the costs of compliance with the rule by smaller foreign broker-dealers. Finally, one commenter suggested that nonresident registered broker-dealers be permitted to perform the duties assigned to the registered broker-dealer by the proposed rule, regardless of their location or affiliation with the foreign broker-dealer.[FN144]

142    Release 34-25801, 53 FR at 23653 n.68.

FN143 Institute of International Bankers, Sullivan & Cromwell, and Dwight D. Quayle, Esq., of Ropes & Gray.

FN144 Quayle.

Nine commenters argued that the responsibilities imposed on the registered broker-dealer affiliate by the proposed rule should be reduced in some fashion.[FN145] The comments stated that the registered broker-dealer's supervisory responsibilities regarding the activities of the foreign broker-dealer should be relaxed, because the registered broker-dealer's lack of information and control regarding the foreign broker-dealer's activities and relative lack of expertise in foreign securities and markets would hinder the performance of its supervisory duties. In particular, one commenter said that the foreign broker-dealer alone should be responsible for all requirements concerning confirmation and extension of credit in connection with securities transactions, "and correspondingly liable in case of failure." [FN146] Another commenter emphasized the protection afforded by other provisions in the proposed rule and the registered broker-dealer's difficulty in supervising foreign personnel operating independently in different time zones.[FN147]

145    Fidelity Investments, the NCSC, the PSA, Westpac Banking Corporation, the SIA, Debevoise & Plimpton, Security Pacific, Sullivan & Cromwell, and Merrill Lynch.

FN146 Letter from Dennis H. Greenwald, Chairman, Federal Regulation Committee, SIA, to Jonathan G. Katz, Secretary, SEC (Oct. 31, 1988), at 11.

FN147 Security Pacific.

Other commenters took a slightly different approach, suggesting that the registered broker-dealer be allowed to delegate certain functions, but not liability for performing them, to the foreign broker-dealer. Thus, these commenters would allow the registered broker-dealer to assume liability for the acts and omissions of the foreign broker-dealer, rather than actually performing the functions assigned to the registered broker-dealer by the proposed rule. They also opposed requiring the registered broker-dealer to maintain all books and records for U.S. institutional investors' accounts, claiming that the requirement in the rule for the foreign broker-dealer to provide the Commission, upon request, with information or documents within its possession, custody, or control would be an adequate substitute.

The Commission has determined to continue to require the intermediation of a registered broker-dealer,[FN148] to address concerns regarding financial responsibility and the effective enforcement of U.S. securities laws. The Rule

does not require, however, any affiliation between the foreign broker-dealer and the registered broker-dealer through ownership or control. This position, together with the conditional eligibility of nonresident registered broker-dealers to serve as intermediary under the Rule,[FN149] should reduce greatly the costs incurred by a foreign broker-dealer in establishing a relationship with a registered broker-dealer to comply with the conditions of the direct contact exemption. Accordingly, the Commission does not believe that it is appropriate to allow the registered broker-dealer to delegate the performance of its duties under the Rule to the foreign broker-dealer, with the exception of physically executing foreign securities trades in foreign markets or on foreign exchanges,[FN150] and merely retain responsibility for errors or omissions in their performance. With respect to the recordkeeping requirements in the Rule, however, the Commission notes that it might be more efficient and less costly for the registered broker-dealer to handle data processing in a centralized fashion. As long as the registered broker-dealer has physical possession of all records required by the Rule, employing a third party, such as the foreign broker-dealer, to process these records mechanically would be permissible.

148     The Rule draws on the definition of "U.S. broker or dealer" in the expanded rule. Paragraph (b)(5) of the Rule defines the term "registered broker or dealer" to include persons registered with the Commission under sections 15(b), 15B(a)(2), or 15C(a)(2) of the Exchange Act, 15 U.S.C. 78*o*(b), 78*o*-4(a)(2), or 78*o*-5(a)(2), respectively.

     FN149 The Rule permits a nonresident registered broker-dealer to serve as intermediary under the Rule, provided that the nonresident broker-dealer complies with Rule 17a-7(a), 17 CFR 240.17a-7(a). See Part IV.B. infra.

     FN150 See infra note 185 and accompanying text.

The Commission believes that the concerns expressed by commenters over the proposed rule's imposition on the registered broker-dealer of supervisory responsibility concerning transactions under paragraph (a)(3) between the foreign broker-dealer and U.S. institutional investors or major U.S. institutional investors are, to some extent, valid. Accordingly, the Commission would no longer take the position that the Rule requires the registered broker-dealer to implement procedures to obtain positive assurance that the foreign broker-dealer is operating in accordance with U.S. requirements.[FN151] The Commission believes, however, that the registered broker-dealer, in effecting trades arranged by the foreign broker-dealer, has a responsibility to review these trades for indications of possible violations of the federal securities laws. The registered broker-dealer's intermediation in these trades is intended to help protect U.S. investors and securities markets. The registered broker-dealer would have an obligation, as it has for all customer accounts, to review any Rule 15a-6 account for indications of potential problems.[FN152] **\*30026** Moreover, if the registered broker-dealer ignores indications of irregularity that should alert the registered broker-dealer to the likelihood that the foreign broker-dealer is taking advantage of U.S. customers or otherwise violating U.S. securities laws, and the registered broker-dealer nevertheless continues to effect questionable transactions on behalf of the foreign broker-dealer or its customers, the registered broker-dealer's role in the trades may give rise to possible violations of the federal securities laws.[FN153]

151     Release 34-25801, 53 FR at 23654.

     FN152 In particular, SRO rules impose specific supervisory duties on SRO members regarding customers' accounts. E.g., Article III, Section 27, NASD Rules of Fair Practice, NASD Manual (CCH) 2177 at 2109 ("Each member shall review the activities of each office, which shall include the periodic examination of customer accounts to detect and prevent irregularities or abuses. * * *"); NYSE Rule 342.16, NYSE Guide (CCH) 2342 at 3587 ("Duties of supervisors of registered representatives should ordinarily include at least review of correspondence of registered representatives, transactions, and customer accounts."); NYSE Rule 405, NYSE Guide (CCH) 2405 at 3696 ("Every member organization is required * * * to * * * (1) Use due diligence to learn the essential facts relative to every customer, every order, [and] every cash or margin account * * * accepted or carried by such organization. (2) Supervise diligently all accounts handled by registered representatives of the organization.")

     FN153 Cf. Merrill Lynch, Pierce, Fenner & Smith, Inc., Securities Exchange Act Release No. 19070 (Sept. 21, 1982), 26 SEC Docket 254 (continued execution of orders placed by investment adviser with discretion over account may subject broker-dealer to aiding and abetting liability, if broker-dealer has knowledge of improprieties in adviser's handling of account and adviser commits primary violation of securities laws).

Finally, Rule 15a-6 as adopted does not allow banks to serve as the intermediary in transactions between U.S. institutional investors or major U.S. institutional investors and foreign broker-dealers. Despite the views expressed by several banks,[FN154] the Commission does not believe that it would be appropriate to permit any unregistered entity to perform this function, since this entity would not be subject to the Commission's extensive statutory authority to regulate, examine, and discipline registered broker-dealers.[FN155]

154    The Canadian Bankers' Association, the Institute of International Bankers, and the Bank of America expressed the view that domestic banks should be permitted to serve as the U.S. intermediary for affiliated foreign broker-dealers. They claimed that, although U.S. banks are not registered with the Commission and thus, as pointed out by the ABA, are not subject to the Commission's regulatory, supervisory, or disciplinary authority, supervision by banking regulatory authorities would be an adequate substitute for Commission regulation.

FN155 As explained below, however, the Commission has decided to include banks acting in a broker or dealer capacity (including acting as a municipal or government securities broker or dealer) in the category of persons with or for whom a foreign broker-dealer could effect, induce, or attempt to induce transactions and still qualify for an exemption from registration under the Rule.

(2) Comments on U.S. institutional investor classifications. Proposed Rule 15a-6 would have allowed unregistered foreign broker-dealers to contact certain classes of U.S. institutional investors, which were limited to U.S. persons described in Rule 501(a) (1), (2), or (3) of Regulation D under the Securities Act[FN156] that, with the exception of registered broker-dealers, had total assets in excess of $100 million. These investors included domestic banks, savings and loan associations, brokers or dealers registered under section 15(b) of the Exchange Act,[FN157] insurance companies, registered investment companies, small business investment companies, employee benefit plans, private business development companies, and certain section 501(c)(3) organizations under the Internal Revenue Code.[FN158] Registered investment advisers were included as U.S. institutional investors within the rule if they had in excess of $100 million in assets under management. Further, if a registered investment company itself did not have total assets in excess of $100 million, it qualified as a U.S. institutional investor if it was part of a family of investment companies (as defined in the rule) that had total assets in excess of $100 million.

156    17 CFR 230.501(a) (1), (2), or (3).
FN157 15 U.S.C. 78*o*(b).
FN158 26 U.S.C 501(c)(3).

The expanded rule allowed direct contact with specified institutional investors, using the structure set out in the Chase Capital Markets U.S. letter.[FN159] Under the expanded rule, a foreign broker-dealer either could contact these institutional investors with the participation of an associated person supervised by a U.S. registered broker-dealer, or could contact major institutional investors directly. Similar conditions applied to both alternatives.

159    Supra note 130.

Six commenters opined that the definition of U.S. institutional investor should be expanded to include all accredited investors under Regulation D, regardless of assets.[FN160] In particular, the claim was made that persons qualifying as accredited investors under Regulation D, but with less than $100 million in assets, possessed adequate sophistication and judgment in financial matters to deal directly with foreign broker-dealers, consistent with their ability to make investment decisions without the disclosure afforded by the registration requirements of the Securities Act. It was averred that an asset test did not necessarily correlate with the degree of sophistication required to deal with unregistered foreign broker-dealers. Other commenters expressed a somewhat narrower view, asserting that the definition of U.S. institutional investor should be limited to institutional accredited investors.[FN161]

160    CREF, Continental Bank, the PSA, Westpac Banking Corporation, Chase Manhattan Government Securities, and Debevoise & Plimpton.

FN161 The ABA, Sullivan & Cromwell, and Merrill Lynch. Continental Bank urged the Commission to adopt this approach if the Rule was not made applicable to all accredited investors.

Alternatively, some commenters proposed other asset tests for major institutional investors, ranging from $1 million to 25 million in assets.[FN162] Another commenter suggested that, after a one-year trial period, the Commission consider broadening the definition of major U.S. institutional investor to include more institutions.[FN163] Finally, two commenters specifically said that the definition of U.S. institutional investor should include U.S. branches or agencies of foreign banks.[FN164]

162    Security Pacific, the Institute of International Bankers, and the Toronto Stock Exchange.

FN163 The NYSBA.

FN164 The Institute of International Bankers and the NYSBA. In proposing Rule 15a-6, the Commission noted that accredited institutional investors under Regulation D included only domestic banks. Release 34-25801, 53 FR at 23654. But see note 168 infra.

As discussed in the Concept Release, the Commission recognizes that substantial institutional investors often have greater financial sophistication than individual investors. At the same time, the Commission does not believe that sophistication is in all circumstances an effective substitute for broker-dealer regulation. For example, systemic safeguards flowing from broker-dealer registration, such as financial responsibility requirements, are benefits that can be assured more effectively through governmental regulation.[FN165]

165    Similarly, in proposing Rule 144A, which would provide a safe-harbor exemption from the registration requirements of the Securities Act for resales of securities to institutional investors, the Commission sought to define a limited class of institutional investors that it could be "confident * * * have extensive experience" in the market. Securities Act Release No. 6806 (Oct. 25, 1988), 53 FR 44016, 44028 ("Release 33-6806"). The Commission proposed to permit only a subset of institutions, those with over $100 million in assets, to resell securities free of resale restrictions. Release 33-6806, 53 FR at 44027-29. All comments received on proposed Rule 144A, together with a comment summary, are publicly available in File No. S7-23-88.

After considering the comments, the Commission has decided to retain the proposed rule's $100 million asset test for foreign broker-dealers contacting major U.S. institutional investors without an associated person of a registered broker-dealer participating in the contact.[FN166] As the Commission **\*30027** stated in proposing the rule, the asset test was based on the view that "direct U.S. oversight of the competence and conduct of foreign sales personnel may be of less significance where they are soliciting only U.S. institutional investors with high levels of assets," and the $100 million asset level was intended "to increase the likelihood that the institution or its investment advisers have prior experience in foreign markets that provides insight into the reliability and reputation" of foreign broker-dealers.[FN167]

166    Some commenters on proposed Rule 144A, supra note 165, suggested that the rule, if adopted, permit only those institutions with over $100 million in investment securities to resell securities free of resale restrictions. The staff is giving this suggestion serious consideration, in addition to considering other changes to the definition in Rule 144A of institutional investor including the scope of the term "family of investment companies that also appears in the Rule. If the Commission incorporates these changes into Rule 144A, then the Commission also will consider whether to incorporate similar standards into Rule 15a-6.

FN167 Release 34-25801, 53 FR at 23654.

Currently, the Commission continues to believe that institutions with this level of assets are more likely to have the skills and experience to assess independently the integrity and competence of the foreign broker-dealers providing this access. Moreover, these larger institutions have greater ability to demand information demonstrating the financial position of the foreign broker-dealer.

Accordingly, the Rule allows foreign broker-dealers to contact U.S. institutional investors with the participation of a U.S. associated person, and to contact independently U.S. institutional investors with over $100 million in assets or assets under management. The Rule thus adds the $100 million asset test to the U.S. institutional investor definition for certain purposes.[FN168]

168    See supra note 108 and accompanying text regarding U.S. distribution of foreign research; see infra notes 178-80 and accompanying text regarding U.S. visits by institutional persons. The Rule also includes certain trusts recognized under Rule 501(a)(7), 17 CFR 230.501(a)(7), within the definition of U.S. institutional investor. In addition, when proposing Rule 15a-6, the Commission said that U.S. branches or agencies of foreign banks could not qualify as U.S. institutional investors, because Regulation D treated only domestic banks as accredited investors. See supra note 164. Rule 501(a)(1), 17 CFR 230.501(a)(1), refers to banks defined in section 3(a)(2) of the Securities Act, which generally means "any national bank, or any banking institution organized under the laws of any State, Territory, or the District of Columbia, the business of which is substantially confined to banking and is supervised by the State or territorial banking commission or similar official." 15 U.S.C. 77c(a)(2). In Release 33-6661, supra note 16, the Commission decided that U.S. branches or agencies of foreign banks subject to an appropriate level of U.S. banking regulation would be deemed "banks" for purposes of section 3(a)(2). A recent staff letter confirmed that U.S. branches and agencies of foreign banks satisfying the standards of Release No. 6661, so that their securities would be exempt from Securities Act registration by virtue of section 3(a)(2), are treated as accredited investors under Rule 501(a)(1). Letter from Richard K. Wulff, Chief, Office of Small Business Policy, Division of Corporation Finance, SEC, to Lawrence R. Uhlick, Esq., Institute of International Bankers (Jan. 4, 1989). Therefore, these U.S. branches and agencies of foreign banks are included in the definition of U.S. institutional investor in the Rule.

The Commission notes that the expanded rule deleted the language in the proposed rule that included the following in the definition of U.S. institutional investor: institutions organized or incorporated under the laws of the United States, its territories or possessions, or any state or the District of Columbia; institutions organized or incorporated under the laws of any foreign jurisdiction but conducting business principally in the United States; and branches of foreign entities located in the United States or its territories or possessions. The Commission has deleted these references from the Rule as unnecessary, because these entities already are included in the definition without regard to nationality. Accordingly, the use of the procedures specified in the exemptions under the Rule, in lieu of broker-dealer registration, would be required of foreign broker-dealers that solicited the permanent U.S. branches or agencies of any foreign entities.[FN169] This position is consistent with the general principles discussed above regarding foreign persons present in this country on other than a temporary basis.

169    See supra note 168 regarding U.S. branches and agencies of foreign banks.

(3) Operation. Paragraph (a)(3)(i) of the Rule sets forth the conditions to be met by a foreign broker-dealer wishing to engage in direct contacts with U.S. institutional investors or major U.S. institutional investors without registration. Paragraph (a)(3)(i)(A) requires the foreign broker-dealer to effect these transactions through a registered broker-dealer, as discussed below. Under paragraph (a)(3)(i)(B), the foreign broker-dealer must provide the Commission, upon request or pursuant to agreements reached between any "foreign securities authority" [FN170] and the Commission or the U.S. government, with any information or documents within the possession, custody, or control of the foreign broker-dealer, any testimony of foreign associated persons, and any assistance in taking the evidence of other persons, wherever located, that the Commission requests and that relates to transactions under the direct contact exemption under paragraph (a) (3) of the Rule. Unlike the proposed rule, however, these requirements are subject to an exception for information, documents, testimony, or assistance withheld in compliance with foreign blocking statutes or secrecy laws.

170    New section 3(a)(50) of the Exchange Act, 15 U.S.C. 78c(a)(50), defines this term to mean "any foreign government, or any governmental body or regulatory organization empowered by a foreign government to administer or enforce its laws as they

relate to securities matters." See Insider Trading and Securities Fraud Enforcement Act of 1988, Pub. L. No. 101-704, section 6(a), 102 Stat. 4677, 4681.

If, after the foreign broker-dealer has exercised its best efforts to provide this information, documents, testimony, or assistance, which specifically includes requesting the appropriate foreign governmental body and, if legally necessary, its customers (with respect to customer information) to permit the foreign broker or dealer to provide the requested information, documents, testimony, or assistance to the Commission, the foreign broker-dealer is prohibited by applicable foreign law or regulations from satisfying the Commission's request, then it would continue to qualify for the exemption under paragraph (a)(3). Under paragraph (c), however, the Commission, after notice and opportunity for hearing, may withdraw the direct contact exemption under paragraph (a)(3) of the Rule with respect to the subsequent activities of the foreign broker-dealer, or class thereof, whose home country's law or regulations have prohibited the foreign broker-dealer from responding to the Commission's requests for information, documents, testimony, or assistance under paragraph (a)(3)(i)(B).

Several commenters suggested that the Commission not require foreign broker-dealers to comply with the requirements in paragraph (a)(3)(i)(B) to the extent that doing so actually would result in a violation of foreign blocking statutes, secrecy laws, or legal requirements to obtain the consent of foreign customers.[FN171] The Commission agrees with the commenters that automatic removal of a foreign broker-dealer from the Rule's protections would be inappropriate. Nevertheless, given the importance of the Commission's access to information, documents, testimony, and assistance concerning foreign broker-dealers' exempted activities for the Commission's enforcement of the U.S. securities laws, the Commission believes that foreign broker-dealers should be given strong incentives to use their best efforts to provide requested information, documents, testimony, and assistance to the Commission, including consulting with the foreign securities authority or other appropriate governmental body administering any relevant foreign law or regulations restricting compliance.

171     Quayle, Union Bank of Switzerland, the Institute of International Bankers, the PSA, the SIA, James Capel, the ABA, Security Pacific, the NYSBA, and Sullivan & Cromwell.

**\*30028**   Therefore, the Commission has retained these requirements in paragraph (a)(3), subject to an exception for information, documents, testimony, or assistance that the foreign broker-dealer has used its best efforts to provide, but has been prohibited from making available by foreign laws or regulations.[FN172] Moreover, the Commission would have the ability under paragraph (c) to remove the exemption for a foreign broker-dealer or class of foreign broker-dealers in circumstances where the Commission believes that its inability to obtain information, documents, testimony, or assistance because of foreign blocking statutes or secrecy laws raises serious investor protection or enforcement concerns. Under paragraph (c), the exemption under paragraph (a)(3) can be withdrawn only prospectively, and only by Commission order after notice and hearing, to which the usual procedural rights would attach.[FN173] In addition, Commission withdrawal of the exemption is discretionary, not mandatory, and it would be subject to the same review as other Commission orders.[FN174]

172     If the Commission requested testimony of a foreign associated person who no longer was associated with the foreign broker-dealer, or who terminated association with the foreign broker-dealer after the Commission made its request, the Commission would consider the foreign broker-dealer to have complied with the Rule if it then used its best efforts to assist the Commission in taking the evidence of those persons.

FN173 See 5 U.S.C. 554.

FN174 See 5 U.S.C 701-706.

The requirements in paragraph (a)(3)(i)(B) of the Rule apply only to transactions effected under the provisions of paragraph (a)(3). As proposed by the Commission, these requirements would have applied to any transactions of a foreign broker-dealer with a U.S. institutional investor or the registered broker-dealer through which they were effected. The limitation in the Rule was suggested by several commenters.[FN175] The Commission does not wish to impose

unnecessary burdens on foreign broker-dealers seeking to claim this exemption, and the Commission believes that it will be able to obtain the information necessary to carry out its enforcement responsibilities, with respect to a foreign broker-dealer's activities outside the Rule, through cooperation with foreign securities authorities.[FN176]

175    The Bank of America, Quayle, the PSA, the SIA, the ABA, Security Pacific, and Sullivan & Cromwell.
       FN176 See note 170 supra.

Paragraph (a)(3)(ii) of the Rule imposes requirements on foreign associated persons of the foreign broker-dealer. Paragraph (b)(2) of the Rule defines "foreign associated person" to mean any natural person resident outside the United States who is an associated person, as defined in section 3(a)(18) of the Exchange Act,[FN177] of a foreign broker-dealer, and who participates in the solicitation of a U.S. institutional investor or a major U.S. institutional investor under paragraph (a)(3) of the Rule. The Commission has adopted this definition from paragraph (b)(3) of the proposed rule, with the addition of the phrase "under paragraph (a)(3) of this rule" for clarification.

177    15 U.S.C. 78c(a)(18).

Paragraph (a)(3)(ii)(A) of the Rule requires foreign associated persons of the foreign broker-dealer effecting transactions with U.S. institutional investors or major U.S. institutional investors to conduct all their securities activities from outside the United States,[FN178] with one exception. This exception allows a foreign associated person to conduct visits to U.S. institutional investors and major U.S. institutional investors within the United States, provided that the foreign associated person is accompanied on these visits by an associated person of a registered broker-dealer that accepts responsibility [FN179] for the foreign associated person's communications with these investors, and that transactions in any securities discussed by the foreign associated person are effected only through that registered broker-dealer pursuant to the provisions of paragraph (a)(3), not by the foreign broker-dealer. This exception has been added to the proposed rule in response to several comments that foreign associated persons should be allowed to visit U.S. institutions in this country, to create and sustain business relationships with these investors.[FN180] The proposed rule prohibited any U.S. activities by foreign associated persons, but the Commission believes that, where a registered broker-dealer is present and acts as an intermediary in the execution of orders, visits to these investors should be permitted.

178    Paragraph (b)(6) of the Rule defines the term "United States" to mean the United States of America, including the states and any territories and other areas subject to its jurisdiction. This definition has been adopted from paragraph (c)(6) of the expanded rule, and the term is not defined in the Exchange Act or the rules thereunder. Section 3(a)(16) of the Exchange Act, however, already defines "State" to mean "any State of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, or any other possession of the United States." 15 U.S.C. 78c(a)(16).
       FN179 The Commission would expect the associated person to be familiar with the foreign broker-dealer's research reports discussed during these visits, to conduct a prior review of any written materials to be distributed during the visits, along with summaries or outlines of the foreign associated person's oral presentation, and to know whether the foreign associated person's statements were consistent with the foreign broker-dealer's current recommendations. In general, the Commission's expectations regarding the responsibility imposed on the registered broker-dealer and discharged through its associated person during these visits would be the same as those regarding the responsibility of a registered broker-dealer in connection with the distribution of research to U.S. institutional investors. See supra note 116.
       FN180 Quayle, the PSA, Chase Manhattan Government Securities, the ABA, the SIA, Security Pacific, the NYSBA, Sullivan & Cromwell, and Merrill Lynch.

Paragraph (a)(3)(ii)(B) of the Rule requires that foreign associated persons not be subject to a statutory disqualification specified in section 3(a)(39) of the Exchange Act,[FN181] or any substantially equivalent foreign (i) expulsion or suspension from membership, (ii) bar or suspension from association, (iii) denial of trading privileges, (iv) order denying, suspending, or revoking registration or barring or suspending association, or (v) finding with respect to causing any such effective foreign suspension, expulsion, or order; not have been convicted of any foreign offense, enjoined from

any foreign act, conduct, or practice, or found to have committed any foreign act substantially equivalent to any of those listed in section 15(b)(4) (B), (C), (D), or (E) of the Exchange Act;[FN182] and not have been found to have made or caused to be made any false foreign statement or omission substantially equivalent to any of those listed in section 3(a)(39)(E) of the Exchange Act.[FN183] This language is a more complete description of the applicable disciplinary disqualifications cited in paragraph (a)(1)(ii) of the proposed rule and paragraph (b)(2)(ii) of the expanded rule, both of which referred to violations of substantially equivalent foreign statutes or regulations.[FN184]

181     15 U.S.C. 78c(a)(39).

FN182 15 U.S.C. 78*o*(b)(4) (B), (C), (D), or (E).

FN183 15 U.S.C. 78c(a)(39)(E).

FN184 See proposed International Securities Enforcement Cooperation Act of 1989, H.R. 1396, 101st Cong., 1st Sess., 135 Cong. Rec. 790 (1989), sections 3 and 4.

Finally, paragraph (a)(3)(iii) of the Rule requires the use of a registered broker-dealer as an intermediary in effecting trades between U.S. institutional investors or major U.S. institutional investors and the foreign broker-dealer as a condition for this exemption. Paragraph (a)(3)(iii)(A) first requires that transactions with these investors be effected through the **\*30029** registered broker-dealer. This means that the registered broker-dealer must handle all aspects of these transactions except the negotiation of their terms,[FN185] which may occur between the investors and the foreign broker-dealer (through its foreign associated persons).

185     Of course, the rules of foreign securities exchanges and over-the-counter markets may require the foreign broker-dealer, as a member or market maker, to perform the actual physical execution of transactions in foreign securities listed on those exchanges or traded in those markets. The Rule would permit the foreign broker-dealer to perform this function.

Paragraph (a)(3)(iii)(A) requires the registered broker-dealer through which transactions with these investors are effected to be responsible for carrying out specified functions, so as to make the performance of these functions subject to direct Commission oversight. The registered broker-dealer must issue all required confirmations [FN186] and account statements to the investors. These documents are significant points of contact between the investor and the broker-dealer, and they provide important information. Also, as between the foreign broker-dealer and the registered broker-dealer, the latter is required to extend or arrange for the extension of any credit to these investors in connection with the purchase of securities.[FN187] In addition, the registered broker-dealer is responsible for maintaining required books and records relating to the transactions conducted under paragraph (a)(3) of the Rule, including those required by Rules 17a-3 and 17a-4,[FN188] which facilitates Commission supervision and investigation of these transactions.[FN189] As adopted, the functions required of the registered broker-dealer in paragraph (a)(3)(iii)(A) are taken from the proposed rule, with some exceptions.[FN190]

186     See Rule 10b-10, 17 CFR 240.10b-10. The confirmation requirements imposed by Rule 10b-10 are a significant antifraud measure.

FN187 The extensive U.S. regulation of these functions is intended to protect both U.S. investors and securities markets. See, e.g., sections 7(c) and 11(d) of the Exchange Act, 17 U.S.C. 78g(c) and 78k(d), and the rules and regulations thereunder, e.g., Regulation T, 17 CFR 220.1-220.18, and Rule 11d1-2, 17 CFR 240.11d1-2.

FN188 17 CFR 240.17a-3 and 17a-4. But see note 150 supra and accompanying text concerning delegation of data processing functions to the foreign broker-dealer.

FN189 Of course, because the registered broker-dealer would "book" Rule 15a-6 trades as its own, it would be required to comply with the provisions of Rule 15c3-1, 17 CFR 240.15c3-1, the Commission's net capital rule, with respect to these transactions, and it would be responsible for receiving, delivering, and safeguarding funds and securities on behalf of the investors pursuant to Rule 15c3-3, 17 CFR 240.15c3-3. Merrill Lynch believed that it should be permissible for foreign custodian banks to handle the clearance and settlement of foreign securities transactions by the investors under the Rule. The Commission notes that Rule 15c3-3(c)(4), 17 CFR 240.15c3-3(c)(4), already permits the use of designated foreign control

locations deemed satisfactory by the Commission for purposes of compliance with that rule. Sullivan & Cromwell spoke without elaboration of a registered broker-dealer that "introduced" its U.S. customers to a foreign broker-dealer. If this term signified the presence of an introducing-clearing relationship, where the foreign broker-dealer held U.S. customers' funds and securities, registration of the foreign broker-dealer would be required. See Part III.B. supra.

FN190 Like paragraph (b)(3) of the expanded rule, the Rule deletes as unnecessary the express requirement that the registered broker-dealer effect transactions "with or for" the U.S. institutional investor or the major U.S. institutional investor. As explained above, paragraph (a)(4)(i)(A) of the Rule already requires the foreign broker-dealer to effect, transactions "through" the registered broker-dealer. The phrase "as between the foreign broker or dealer and the registered broker or dealer" in paragraph (a)(3)(iii)(A)(3) concerning extension of credit, found in paragraph (b)(3)(i)(B) of the expanded rule, has been added for clarification.

Paragraph (a)(4)(iii)(B) of the Rule requires the registered broker-dealer to participate through an associated person in all oral communications between foreign associated persons and U.S. institutional investors. By virtue of this participation, the registered broker-dealer would become responsible for the content of these communications, and the Commission's statements regarding the nature and discharge of similar responsibilities regarding the distribution of research and U.S. visits by foreign associated persons would apply.[FN191]

191    See supra notes 116 and 179. This requirement for "participation" under the Rule would be satisfied if the associated person of the registered broker-dealer was present, either physically or telephonically, during these oral communications, and was able to take part in them as they occurred.

The requirement in paragraph (a)(4)(iii)(C) of the Rule for the registered broker-dealer to obtain from the foreign broker-dealer, for each foreign associated person, the information specified in Rule 17a-3(a)(12),[FN192] including sanctions imposed by foreign securities authorities, exchanges, or associations (including without limitation those described in paragraph (a)(3)(ii)(B) of the Rule), also has been drawn from the proposed rule. In addition, paragraph (a)(3)(iii)(D) of the Rule requires the registered broker-dealer to obtain from the foreign broker-dealer and each foreign associated person written consent to service of process for any civil action brought by or proceeding before the Commission or any SRO, as defined in section 3(a)(26) of the Exchange Act,[FN193] stating that process may be served on the registered broker-dealer as provided on that broker-dealer's current Form BD. This language follows the text of the proposed rule. Some commenters argued that both the information provision and consent requirements as proposed were overbroad and would restrict use of the Rule,[FN194] but the Commission does not believe that it is desirable to draw the requirement to consent to service of process more narrowly to relate only to transactions effected in reliance on the Rule's intermediary exemption.

192    17 CFR 240.17a-3(a)(12). Rule 17a-3(a) also requires that this information be kept current. 17 CFR 240.17a-3(a).

FN193 15 U.S.C. 78c(a)(26).

FN194 The SIA, the ABA, Security Pacific, and Sullivan & Cromwell.

Further, paragraph (a)(3)(iii)(E) of the Rule requires the registered broker-dealer to maintain a written record of the information and consents required by paragraphs (a)(3)(iii) (C) and (D),[FN195] and all records in connection with trading activities of U.S. institutional investors or major U.S. institutional investors involving the foreign broker-dealer conducted under paragraph (a)(3) of the Rule, in an office of the registered broker-dealer located in the United States (thus, with respect to nonresident U.S. broker-dealers, pursuant to Rule 17a-7(a)) [FN196] and make these records available to the Commission upon request. This language follows the proposed rule, with the exception of the reference to nonresident registered broker-dealers. One commenter suggested that these broker-dealers should be allowed to serve as intermediary registered broker-dealers under the Rule,[FN197] and the Commission agrees, as stated above. The Commission attaches considerable importance, however, to preserving its access to records relating to activities conducted under paragraph (a)(3). These records will enable the Commission to carry out its enforcement responsibilities and exercise its supervision over the registered broker-dealer intermediary. This intermediary, therefore, whether resident

or nonresident, must maintain all the records called for by the Rule in an office within the territorial limits of the United States.[FN198]

195    The Commission notes that SROs exercising their authority to inspect their members performing the intermediary function under the Rule should examine the records of the information and the consents required by the Rule. The Commission would encourage these SROs to consider whether it would be more efficient for them to adopt specific rules requiring those members to file these records with the SROs soon after obtaining the required information and consents.

FN196 17 CFR 240.17a-7(a).

FN197 Quayle.

FN198 Nonresident registered broker-dealers still could maintain other records outside the United States, provided that the conditions of Rule 17a-7(b) were met. See 17 CFR 240.17a-7(b).

**\*30030**  b. Transactions with Certain Persons. Paragraph (a)(4) of the Rule provides an exemption for a second type of direct contact by broker-dealers. It exempts foreign broker-dealers that effect any transactions in securities with or for, or induce or attempt to induce the purchase or sale of any securities by, the following defined classes of persons.[FN199]

199    The Division of Investment Management generally would expect to respond favorably to no-action requests regarding registration as an investment adviser from foreign broker-dealers complying with the provisions of paragraph (a)(4) of the Rule. See supra notes 123-26 and accompanying text.

(1) Registered broker-dealers and banks. Paragraph (a)(4)(i) includes registered brokers or dealers, whether acting as principal for their own account or as agent for others. This exemption was in paragraph (a)(1)(iii) of the expanded rule. Commenters argued that, while the proposed interpretive statement said that a foreign broker-dealer could purchase U.S. securities from a registered broker-dealer for resale to foreign investors without registering with the Commission,[FN200] it created a misimpression by not also stating that foreign broker-dealers could sell securities to registered broker-dealers without registration[FN201] In response, the Commission expressly has exempted trades of foreign broker-dealers with registered broker-dealers and with banks acting in a broker or dealer capacity.[FN202] The Commission notes that the staff has taken no-action positions regarding foreign broker-dealers effecting transactions with or for both registered broker-dealers and banks acting in a broker or dealer capacity as permitted by U.S statutory and regulatory provisions, [FN203] and it has reflected this position in the Rule.

200    Release 34-25801, 53 FR at 23646.

FN201 The Institute of International Bankers, the ABA, the SIA, Security Pacific, and Sullivan & Cromwell.

FN202 The exemption allows foreign broker-dealers to effect transactions with or for certain banks or registered broker-dealers; direct contact by the foreign broker-dealers with the U.S. customers of the registered broker-dealers or banks, however, would not be covered by this exemption.

FN203 Security Pacific Corporation and National Westminster Bank letters, supra note 68.

The Commission does not intend this exemption to permit the foreign broker-dealer to act as a dealer in the United States through an affiliated registered broker-dealer.[FN204] The Commission recognizes that dealers in foreign markets may transmit securities positions to U.S. broker-dealer affiliates after the foreign markets close, so that the U.S. affiliates can continue trading those securities. If, however, the foreign broker-dealer controlled the registered broker-dealer's day-to-day market making activities by explicit restrictions on the U.S. broker-dealer's ability to execute orders against the foreign broker-dealer's positions or to take independent positions, the foreign broker-dealer could be considered a dealer subject to U.S. broker-dealer registration requirements.[FN205]

204    See note 205 infra.

FN205 See, e.g., the Vickers da Costa/Citicorp order, supra note 131, which exempted several related foreign broker-dealers from U.S. broker-dealer registration requirements. Because of Glass-Steagall Act restrictions applicable to the U.S. affiliate,

see 12 U.S.C. 24 and 378, the foreign broker-dealers agreed to provide the U.S. affiliate with standing orders to buy and sell the securities in which the U.S. affiliate previously had acted as a market maker. Thus, the U.S. affiliate's quote in NASDAQ always would reflect a previously entered firm order from the foreign broker-dealers. The U.S. affiliate's activities would be limited to executing, on a riskless principal basis, any orders received from U.S. customers against these orders. This arrangement was approved by the Comptroller of the Currency. Letter from Judith A. Walter, Senior Deputy Comptroller, to Ellis E. Bradford, Vice President, Citibank, N.A. (June 13, 1986).

In its exemptive order, the Commission allowed the foreign broker-dealers to buy and sell simultaneously on a continuing basis through the U.S. affiliate without registering in the United States as broker-dealers. However, the Commission imposed a number of limitations to provide additional regulatory safeguards. The foreign broker-dealers' control over the price and size of their standing orders was limited in order to give the U.S. affiliate some discretion in its trading activities. The U.S. affiliate also agreed to satisfy additional net capital requirements intended to increase its ability to meet its settlement obligations upon failure of the foreign broker-dealers. In addition, the parent of the broker-dealers represented that information regarding the trading activities of the foreign broker-dealers would be made available to the Commission in connection with any investigation, and that it would attempt to obtain customer consent to release of information concerning their trading, if requested. Finally, the parent agreed that it would be designated as the foreign broker-dealers' agent for service of process in any proceeding or other action involving the foreign broker-dealers. The foreign broker-dealers also limited their securities activities in the United States to those enumerated in the letter, and the parent represented that the foreign broker-dealers would not engage in any securities business with U.S. citizens.

(2) International organizations. Paragraph (a)(4)(ii) of the Rule exempts foreign broker-dealers that deal with certain international organizations, regardless of their location or whether the U.S. jurisdictional means are implicated. They include the African Development Bank, the Asian Development Bank, the Inter-American Development Bank, the International Bank for Reconstruction and Development, the International Monetary Fund, the United Nations, and their agencies, affiliates, and pension funds. These are the same international organizations specified in proposed Regulation S,[FN206] together with their pension funds, as suggested by several commenters.[FN207]

206     Release 33-6779, 53 FR at 22677.

        FN207 The SIA, the ABA, and Sullivan & Cromwell.

(3) Foreign persons temporarily present in the United States. Paragraph (a)(4)(iii) of the Rule includes any foreign person temporarily present in the United States, with whom the foreign broker-dealer had a bona fide, pre-existing relationship before the foreign person entered the United States. This paragraph codifies part of the proposed interpretive statement, [FN208] and is taken from paragraph (a)(1)(v) of the expanded rule, with one exception. The phrase "before the foreign person entered the United States" has been added to clarify the nature of the relationship. The Commission is of the view that a foreign broker-dealer that solicits or engages in securities transactions with or for these persons while they are temporarily present in this country need not register with the Commission.[FN209]

208     Release 34-25801, 53 FR at 23649. See also Security Pacific and National Westminster Bank letters, supra note 68.

        FN209 This position is consistent with the proposal of the American Law Institute that a nonresident broker-dealer that "does business with * * * a non-national of the United States who is present as a nonresident within the United States and was previously a customer or client" should not be subject to U.S. broker-dealer jurisdiction. ALI Federal Securities Code § 1905(b) (2)(B) (1980). Professor Loss, the reporter for the Code, uses the example of a "Canadian broker who uses the telephone to service a customer who is vacationing in Florida."Id. at Comment 9.

One commenter asked the Commission to define U.S. residency for purposes of compliance with this and other exemptions in the Rule.[FN210] The Commission does not believe that it would be appropriate to establish a separate standard of residency for the purpose of claiming this exemption different from those generally established under state or federal law.[FN211] As stated in Release 34-25801, questions regarding the temporary nature of a person's presence in this country would be fact-specific.[FN212] The Commission would take the position, however, that a foreign person not otherwise deemed a resident of the United States under applicable law would be presumed to be temporarily present

in this country for the purpose of paragraph (a)(3) of the Rule. This presumption, of course, would be subject to rebuttal in light all of the facts and circumstances surrounding that **\*30031** foreign person's presence in the United States.

210     The NYSBA.
      FN211 See generally, e.g., section 911 of the Internal Revenue Code, 26 U.S.C. 911, which provides certain exclusions from the gross income of U.S. citizens resident abroad.
      FN212 53 FR at 23649.

(4) Foreign agencies or branches of U.S. persons. The proposed rule and the expanded rule both provided an exemption for foreign broker-dealers effecting or soliciting transactions by agencies or branches of U.S. persons, which were located outside the United States and were operated for valid business reasons. The Commission has retained this exemption in the Rule to clarify that foreign broker-dealers that deal outside the United States with branches and agencies having an established location outside the United States do not need to register with the Commission, provided that the transactions occur outside the United States.

Commenters suggested that the presence of a valid business purpose was unnecessary in the broker-dealer context. [FN213] The Commission agrees. The Rule's exemption for unsolicited trades reflects the view that U.S. persons seeking out unregistered foreign broker-dealers outside the U.S. cannot expect the protection of U.S. broker-dealer standards. The Commission believes that this rationale applies equally to U.S. branches and agencies established overseas that choose to deal with unregistered foreign broker-dealers.[FN214]

213     The SIA, the ABA, and Sullivan & Cromwell.
      FN214 The Commission has deleted the exemption in the proposed rule that referred to affiliates or subsidiaries of U.S. persons that were located outside this country and organized or incorporated under the laws of any foreign jurisdiction. The Commission has decided that this exemption is unnecessary, since these entities should not properly be regarded as U.S. persons.

(5) Nonresident U.S. citizens. Finally, paragraph (a)(4)(v) of the Rule includes U.S. citizens resident outside the United States, provided that the foreign broker-dealer does not direct its selling efforts toward identifiable groups of U.S. citizens resident abroad.[FN215] Like the exemption regarding foreign branches and agencies of U.S. persons, all transactions must occur outside the United States. As discussed above in Part III.B., neither U.S. citizens resident abroad nor foreign broker-dealers normally would expect that the U.S. broker-dealer registration requirements would be triggered by non-U.S. securities transactions between them.

215     See supra note 51 and accompanying text.

## V. Conclusion

The Commission believes that the conditional exemptions in Rule 15a-6 for foreign broker-dealers engaging in certain activities involving U.S. investors and securities markets will reduce the costs and increase the efficiency of international securities transactions as well as facilitate the international flow of information. The differing procedures in the Rule for nondirect and direct contacts by foreign broker-dealers with U.S. investors also will facilitate the access of U.S. investors to foreign securities markets through those foreign broker-dealers and the research that they provide, consistent with the regulatory safeguards afforded by broker-dealer registration. In light of the importance that the Commission attaches to broker-dealer registration and regulation in the international context, the Commission believes that the exemptions in Rule 15a-6 are in the public interest and consistent with the protection of U.S. investors.

## VI. Effects on Competition and Regulatory Flexibility Act Certification

Section 23(a)(2) of the Exchange Act [FN216] requires that the Commission, when adopting rules under the Exchange Act, consider the anticompetitive effects of those rules, if any, and balance any anticompetitive impact against the regulatory benefits gained in terms of furthering the purposes of the Exchange Act. The Commission believes that adoption of the Rule will not impose any burden on competition not necessary or appropriate in furtherance of the purposes of the Exchange Act, especially since the Rule provides exemptions for eligible foreign broker-dealers from the broker-dealer registration requirements under the Exchange Act.

216      15 U.S.C. 78w(a)(2).

Pursuant to section 3(b) of the Regulatory Flexibility Act,[FN217] when the Commission proposed Rule 15a-6 Chairman Ruder certified that the proposed rule, if adopted, would not have a significant economic impact on a substantial number of small entities.[FN218] The Commission did not receive any comments on the Chairman's certification.

217      5 U.S.C. 603(b).
         FN218 Release 34-25801, 53 FR at 23655.

**List of Subjects in 17 CFR Part 240**
Reporting and recordkeeping requirements, Securities.

**VII. Statutory Basis and Text of Amendments**
The Commission hereby amends Part 240 of Chapter II of Title 17 of the Code of Federal Regulations as follows:

**PART 240—GENERAL RULES AND REGULATIONS, SECURITIES EXCHANGE ACT OF 1934**
1. The authority citation for Part 240 is amended by adding the following citation:

Authority: Sec. 23, 48 Stat. 901, as amended (15 U.S.C. 78w) * * * § 240.15a-6, also issued under secs. 3, 10, 15, and 17, 15 U.S.C. 78c, 78j, 78*o*, and 78q;
 * * * * *17 CFR § 240.15a-6
2. By adding § 240.15a-6 after the undesignated heading as follows:

**Registration of Brokers and Dealers**
17 CFR § 240.15a-6

**§ 240.15a-6 Exemption of certain foreign brokers or dealers.**
(a) A foreign broker or dealer shall be exempt from the registration requirements of sections 15(a)(1) or 15B(a)(1) of the Act to the extent that the foreign broker or dealer:

(1) Effects transactions in securities with or for persons that have not been solicited by the foreign broker or dealer; or

(2) Furnishes research reports to major U.S. institutional investors, and effects transactions in the securities discussed in the research reports with or for those major U.S. institutional investors, provided that:

(i) The research reports do not recommend the use of the foreign broker or dealer to effect trades in any security;

(ii) The foreign broker or dealer does not initiate contact with those major U.S. institutional investors to follow up on the research reports, and does not otherwise induce or attempt to induce the purchase or sale of any security by those major U.S. institutional investors;

(iii) If the foreign broker or dealer has a relationship with a registered broker or dealer that satisfies the requirements of paragraph (a)(3) of this section, any transactions with the foreign broker or dealer in securities discussed in the research reports are effected only through that registered broker or dealer, pursuant to the provisions of paragraph (a)(3) of this section; and

(iv) The foreign broker or dealer does not provide research to U.S. persons pursuant to any express or implied understanding that those U.S. persons will direct commission income to the foreign broker or dealer; or

(3) Induces or attempts to induce the purchase or sale of any security by a U.S. institutional investor or a major U.S. institutional investor, provided that:

(i) The foreign broker or dealer:

(A) Effects any resulting transactions with or for the U.S. institutional investor or the major U.S. institutional investor through a registered broker or dealer in **\*30032** the manner described by paragraph (a)(3)(iii) of this section; and

(B) Provides the Commission (upon request or pursuant to agreements reached between any foreign securities authority, including any foreign government, as specified in section 3(a)(50) of the Act, and the Commission or the U.S. Government) with any information or documents within the possession, custody, or control of the foreign broker or dealer, any testimony of foreign associated persons, and any assistance in taking the evidence of other persons, wherever located, that the Commission requests and that relates to transactions under paragraph (a)(3) of this section, except that if, after the foreign broker or dealer has exercised its best efforts to provide the information, documents, testimony, or assistance, including requesting the appropriate governmental body and, if legally necessary, its customers (with respect to customer information) to permit the foreign broker or dealer to provide the information, documents, testimony, or assistance to the Commission, the foreign broker or dealer is prohibited from providing this information, documents, testimony, or assistance by applicable foreign law or regulations, then this paragraph (a)(3)(i)(B) shall not apply and the foreign broker or dealer will be subject to paragraph (c) of this section;

(ii) The foreign associated person of the foreign broker or dealer effecting transactions with the U.S. institutional investor or the major U.S. institutional investor:

(A) Conducts all securities activities from outside the U.S., except that the foreign associated persons may conduct visits to U.S. institutional investors and major U.S. institutional investors within the United States, provided that:

(1) The foreign associated person is accompanied on these visits by an associated person of a registered broker or dealer that accepts responsibility for the foreign associated person's communications with the U.S. institutional investor or the major U.S institutional investor; and

(2) Transactions in any securities discussed during the visit by the foreign associated person are effected only through the registered broker or dealer, pursuant to paragraph (a)(3) of this section; and

(B) Is determined by the registered broker or dealer to:

(1) Not be subject to a statutory disqualification specified in section 3(a)(39) of the Act, or any substantially equivalent foreign

(i) Expulsion or suspension from membership,

(ii) Bar or suspension from association,

(iii) Denial of trading privileges,

(iv) Order denying, suspending, or revoking registration or barring or suspending association, or

(v) Finding with respect to causing any such effective foreign suspension, expulsion, or order;

(2) Not to have been convicted of any foreign offense, enjoined from any foreign act, conduct, or practice, or found to have committed any foreign act substantially equivalent to any of those listed in sections 15(b)(4) (B), (C), (D), or (E) of the Act; and

(3) Not to have been found to have made or caused to be made any false foreign statement or omission substantially equivalent to any of those listed in section 3(a)(39)(E) of the Act; and

(iii) The registered broker or dealer through which the transaction with the U.S. institutional investor or the major U.S. institutional investor is effected:

(A) Is responsible for:

(1) Effecting the transactions conducted under paragraph (a)(3) of this section, other than negotiating their terms;

(2) Issuing all required confirmations and statements to the U.S. institutional investor or the major U.S. institutional investor;

(3) As between the foreign broker or dealer and the registered broker or dealer, extending or arranging for the extension of any credit to the U.S. institutional investor or the major U.S. institutional investor in connection with the transactions;

(4) Maintaining required books and records relating to the transactions, including those required by Rules 17a-3 and 17a-4 under the Act (17 CFR 2410.17a-3 and l7a-4);

(5) Complying with Rule 15c3-1 under the Act (17 CFR 240.15c3-1) with respect to the transactions; and

(6) Receiving, delivering, and safeguarding funds and securities in connection with the transactions on behalf of the U.S. institutional investor or the major U.S. institutional investor in compliance with Rule 15c3-3 under the Act (17 CFR 240.15c3-3);

(B) Participates through an associated person in all oral communications between the foreign associated person and the U.S. institutional investor, other than a major U.S. institutional investor;

(C) Has obtained from the foreign broker or dealer, with respect to each foreign associated person, the types of information specified in Rule l7a-3(a)(12) under the Act (17 CFR 240.17a-3(a)(12)), provided that the information required by paragraph (a)(12)(d) of that Rule shall include sanctions imposed by foreign securities authorities, exchanges, or associations, including without limitation those described in paragraph (a)(3)(ii)(B) of this section;

(D) Has obtained from the foreign broker or dealer and each foreign associated person written consent to service of process for any civil action brought by or proceeding before the Commission or a self-regulatory organization (as defined in section 3(a)(26) of the Act), providing that process may be served on them by service on the registered broker or dealer in the manner set forth on the registered broker's or dealer's current Form BD; and

(E) Maintains a written record of the information and consents required by paragraphs (a)(3)(iii) (C) and (D) of this section, and all records in connection with trading activities of the U.S. institutional investor or the major U.S. institutional investor involving the foreign broker or dealer conducted under paragraph (a)(3) of this section, in an office of the registered broker or dealer located in the United States (with respect to nonresident registered brokers or dealers, pursuant to Rule 17a-7(a) under the Act (17 CFR 240.17a-7(a))), and makes these records available to the Commission upon request; or

(4) Effects transactions in securities with or for, or induces or attempts to induce the purchase or sale of any security by:

(i) A registered broker or dealer, whether the registered broker or dealer is acting as principal for its own account or as agent for others, or a bank acting in a broker or dealer capacity as permitted by U.S. law;

(ii) The African Development Bank, the Asian Development Bank, the Inter-American Development Bank, the International Bank for Reconstruction and Development, the International Monetary Fund, the United Nations, and their agencies, affiliates, and pension funds;

(iii) A foreign person temporarily present in the United States, with whom the foreign broker or dealer had a bona fide, pre-existing relationship before the foreign person entered the United States;

(iv) Any agency or branch of a U.S. person permanently located outside the United States, provided that the transactions occur outside the United States; or

(v) U.S. citizens resident outside the United States, provided that the transactions occur outside the United States, and that the foreign broker or  **\*30033**  dealer does not direct its selling efforts toward identifiable groups of U.S. citizens resident abroad.

(b) When used in this rule,

(1) The term "family of investment companies" shall mean:

(i) Except for insurance company separate accounts, any two or more separately registered investment companies under the Investment Company Act of 1940 that share the same investment adviser or principal underwriter and hold themselves out to investors as related companies for purposes of investment and investor services; and

(ii) With respect to insurance company separate accounts, any two or more separately registered separate accounts under the Investment Company Act of 1940 that share the same investment adviser or principal underwriter and function under operational or accounting or control systems that are substantially similar.

(2) The term "foreign associated person" shall mean any natural person domiciled outside the United States who is an associated person, as defined in section 3(a)(18) of the Act, of the foreign broker or dealer, and who participates in the solicitation of a U.S. institutional investor or a major U.S. institutional investor under paragraph (a)(3) of this section.

(3) The term "foreign broker or dealer" shall mean any non-U.S. resident person (including any U.S. person engaged in business as a broker or dealer entirely outside the United States, except as otherwise permitted by this rule) that is

not an office or branch of, or a natural person associated with, a registered broker or dealer, whose securities activities, if conducted in the United States, would be described by the definition of "broker" or "dealer" in sections 3(a)(4) or 3(a)(5) of the Act.

(4) The term "major U.S. institutional investor" shall mean a person that is:

(i) A U.S. institutional investor that has, or has under management, total assets in excess of $100 million; provided, however, that for purposes of determining the total assets of an investment company under this rule, the investment company may include the assets of any family of investment companies of which it is a part; or

(ii) An investment adviser registered with the Commission under section 203 of the Investment Advisers Act of 1940 that has total assets under management in excess of $100 million.

(5) The term "registered broker or dealer" shall mean a person that is registered with the Commission under sections 15(b), 15B(a)(2), or 15C(a)(2) of the Act.

(6) The term "United States" shall mean the United States of America, including the States and any territories and other areas subject to its jurisdiction.

(7) The term "U.S. institutional investor" shall mean a person that is:

(i) An investment company registered with the Commission under section 8 of the Investment Company Act of 1940; or

(ii) A bank, savings and loan association, insurance company, business development company, small business investment company, or employee benefit plan defined in Rule 501(a)(1) of Regulation D under the Securities Act of 1933 (17 CFR 230.501(a)(1)); a private business development company defined in Rule 501(a)(2) (17 CFR 230.501(a)(2)); an organization described in section 501(c)(3) of the Internal Revenue Code, as defined in Rule 501(a)(3) (17 CFR 230.501(a)(3)); or a trust defined in Rule 501(a)(7) ( 17 CFR 230.501(a)(7)).

(c) The Commission, by order after notice and opportunity for hearinq, may withdraw the exemption provided in paragraph (a)(3) of this section with respect to the subsequent activities of a foreign broker or dealer or class of foreign brokers or dealers conducted from a foreign country, if the Commission finds that the laws or regulations of that foreign country have prohibited the foreign broker or dealer, or one of a class of foreign brokers or dealers, from providing, in response to a request from the Commission, information or documents within its possession, custody, or control, testimony of foreign associated persons, or assistance in taking the evidence of other persons, wherever located, related to activities exempted by paragraph (a)(3) of this section.

By the Commission.

Jonathan G. Katz,

Secretary.


July 11, 1989.

[FR Doc. 89-16725 Filed 7-17-89; 8:45 am]

BILLING CODE 8010-01-M

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.