# **EXHIBIT C**

**5 Law Sec. Reg. § 14:54**

**Treatise on the Law of Securities Regulation** | May 2019 Update
Thomas Lee Hazen

**Chapter 14. MARKET REGULATION; BROKER-DEALER REGULATION; CREDIT RATING AGENCIES**

**Part III. —Broker-Dealer Registration and Regulation**

§ 14:54. Definitions of Broker and Dealer

Correlation Table

For many years, Broker was defined in the Exchange Act to include any person, other than a bank,[1] in the business of buying and selling securities for others.[2] The exclusion of banks was eliminated and replaced by an exclusion for certain banking activities.[3] To fall within the definition, it is not necessary that the broker deal directly with customers; thus, for example, clearing brokers are subject to SEC regulation.[4] A dealer is defined by the Exchange Act to be any person who is in the business of purchasing securities for his or her own account.[5] However, when someone is acting as an ordinary trader for his or her own account, they are not likely to be considered to be dealers under the Act.[5.05] Thus, for example, creditors who resell securities issued in a reorganization are not likely to be considered dealers.[5.10]

The Act's registration requirements, as well as the definitions of broker and dealer, are drafted broadly to include a wide range of securities professionals. Key terminology in the definitions of broker and dealer is the phrase "engaged in the business."[6] In deciding whether a firm is acting as a broker-dealer, a number of factors are considered. The relevant factors include whether the firm (1) receives transaction-based compensation, such as commissions or referral fees,[7] (2) is involved in negotiations between an issuer of securities and investors, (3) makes valuations as to the merits of the investment or gives advice, and (4) is active rather than passive in locating investors.[8] A referral service that has no involvement in the negotiations can trigger the registration requirements where the referral service may still be viewed as prescreening potential clients and possibly pre-selling the securities.[9] Participating in a public offering as an underwriter or dealer requires registration as a broker-dealer under the Exchange Act.[10]

Merely providing information that may facilitate investors will not classify the provider as a broker-dealer. Thus, a company that merely provided information on the Internet regarding offerings did not itself classify the provider as a broker-dealer.[11] However, another company that made this type of information available for a fee based on purchases of securities so recommended would be operating as a broker-dealer.[12] Furthermore, a website that is organized in order to bring investors and companies together must either operate under the supervision of a broker-dealer,[13] or else register as a broker-dealer.[14] An Internet portal which merely connects investors to registered broker-dealers need not register as a broker dealer.[15] Similarly, a company providing broker-dealers with a portal for providing online road shows to its customers did not have to register as a broker dealer where no securities transactions were taking place through the service provided.[16] An online bulletin board that does no more than provide information about securities or other investment opportunities does not have to register as a broker dealer so long as it does not render investment advice nor act as an intermediary in any resulting transactions.[17]

Questions involving firms that offer services that are collateral to broker-dealer activities also may implicate the broker-dealer definition. The mere fact that there is some association with a broker-dealer does not render a firm itself a broker-dealer. Thus, for example, a firm working with a broker-dealer to provide an employee leasing service to customers of the broker-dealer does not itself have to register as a broker-dealer, so long as it makes it clear in its promotional material that its only business is to provide employee leasing services.[18] A firm dedicated to assisting employers in explaining employee benefit plans to employees did not have to register as a broker-dealer, provided its advice was limited to the restrictions

outlined by the company in its request for no action relief.[19] A firm that sells framed decorative stock certificates did not have to register as a broker-dealer; however, once the firm started offering unframed certificates with some investment value, the SEC reversed its previous no action position.[20]

Configuring and maintaining web-based interfaces for companies providing financial services in connection with brokerage service will not require registration as a broker-dealer of the organization providing the web services.[21] Internet portals for broker-dealer services frequently have the appearance of securities broker-dealers. As pointed out below, the SEC has not developed a method for analyzing these Internet providers, aside from asking whether their services involve transaction-based fees.[22]

A service purportedly seeking to facilitate communications between registered broker dealers that invites investors to participate through their broker-dealers is sufficiently engaged in soliciting retail customers so as to implicate the broker-dealer registration requirements, especially where fees would be based on a per order basis.[23] This is the type of active participation that distinguished the operation from one passively providing an Internet portal between investors and registered broker-dealers.[24]

Although the Exchange Act does not define the phrase "engaged in the business," case law and no-action letters have outlined the fact that "regularity of participation" is a primary indication of being "engaged in the business" and therefore of acting as a broker-dealer.[25] When someone participates in securities transactions "at key points in the chain of distribution,"[26] he or she will be considered to be acting as a broker-dealer.[27] The SEC has explained that participation in securities transactions that can qualify as engaging in the business as a broker-dealer include selecting the market to which a securities transaction will be sent, assisting an issuer to structure prospective securities transactions, helping an issuer identify potential purchasers of securities, soliciting securities transactions (including advertising), and participating in the order-taking or order-routing process (for example, by taking transaction orders from customers).[28] "Factors indicating that a person is 'engaged in the business' include, among others: receiving transaction-related compensation; holding one's self out as a broker, as executing trades, or as assisting others in completing securities transactions; and participating in the securities business with some degree of regularity. In addition to indicating that a person is 'effecting transactions,' soliciting securities transactions is also evidence of being 'engaged in the business.'"[29]

Thus, for example, solicitation of investors over a four-year period has been ruled regular participation.[30] The purchase of several million dollars' worth of securities has also been ruled regular participation, making the purchaser one "engaged in the business" and thus a broker.[31] A firm that engages in securities transactions will still qualify as a broker subject to registration even though the securities transactions represent a small part of the firm's overall business.[32] A firm or service that also matches customer orders may have to register as an exchange in addition to becoming a registered broker-dealer.[33]

An individual advertising "on a single, isolated basis" an interest to engage in securities transactions for his or her own account might not be "engaged in the business."[34] However, more frequent advertising might mean the advertiser was "engaged in the business" and required to register.[35] Thus, merely holding oneself out as willing to engage in securities transactions on behalf of others will satisfy the "regularity of participation" standard.[36] A company which has never offered for sale securities and does not intend to in the future may be allowed to make a one-time offer and sale.[37] However, a company which has made a similar offering in the past and may again in the future could be required to register, since it would be engaging in the business on a "recurring basis."[38]

To be engaged in the business of securities transactions, a company need not have that business as its sole nor even primary business.[39] Accordingly, a real estate developer who proposed to accept and sell securities as partial payment for real estate lots "as a part of his regular business activities" would be required to register with the Commission.[40] It has further been held that a Swiss banking corporation whose American security business represented less than three or four percent of its lending business was found to be a broker or dealer.[41] In another instance, the SEC staff refused to issue no action relief and indicated that broker-dealer registration would be required for a business consultant that was offering companies various forms of advice including advice regarding their equity and debt financing needs.[42]

In order for persons to be required to register as broker-dealers, not only must they be "engaged in the business," but that business must also be one of "effecting transactions in securities for the account of others" or "buying and selling securities" for their own account.[43] Buying and selling for one's own account or effecting transactions for others are conclusive indicia of

the conducting of a business for which one must register as a broker or dealer.[44] Other less obvious factors indicating that a business is one for which a person must register include: (1) the earning of a commission based upon the volume of securities transactions; (2) solicitation of securities business, in person or by advertisement; and (3) a person's past and intended future employment in the securities business.[45] Any or all of these factors can be evidence that a business is one of "effecting transactions in securities" for one's own account or for the account of others. A federal district court has held that the SEC lacks jurisdiction to require registration of people in the United States whose brokerage activity is exclusively offshore.[46]

From the foregoing, it follows that if securities professionals "regularly participate" to a level at which those professionals can be deemed to be "engaged in the business" of effecting transactions in securities for others or for themselves, those professionals will be required to register.[47] In addition the Act's reach can extend to persons who inadvertently fall within the definition of a securities broker.[48] Thus, for example, business brokers may fall within the registration requirements.[49]

Individuals who consult with broker-dealers may be required to register. A "consultant" who is not registered may not solicit customer orders.[50] In such a case, having a registered[51] broker "somewhere around" does not prevent a violation of the registration requirement.

Section 3(e) of the 1934 Act[52] exempts charitable organizations and section 3(a)(12)(A)(v)[53] excludes certain charitable funds from the Act's definition of security. Those who deal exclusively in those securities would thus be exempt from broker-dealer registration. However, promoting funds denominated as charitable annuities that bear resemblance to investment contracts will not be subject to the broker-dealer registration requirements.[54]

Westlaw. © 2019 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

Footnotes

[1] Banks have traditionally been prohibited from engaging in commercial securities brokerage by the Glass–Steagall Act (12 U.S.C.A. §§ 24, 378(a)). However, there has been erosion and eventual repeal of the prohibition. *See* §§ 22:29 to 22:31 *infra*.
Chinese wall (or fire walls, as they are sometimes called) issues have arisen in connection with bankruptcy proceedings. Thus, for example, an investment firm that was a member of a creditors committee was permitted to trade for its own accounting the shares of the company subject to bankruptcy proceedings so long as the firm maintained adequate Chinese wall procedures. Matter of Federated Dept. Stores, Inc., 1991 WL 79143 (Bankr. S.D. Ohio 1991).

[2] 15 U.S.C.A. § 78c(a)(4)(A) ("The term 'broker' means any person engaged in the business of effecting transactions in securities for the account of others"). Formerly, the definition excluded banks. Banks are no longer excluded from the definition. Instead, section 3(a)(4)(B) provides an exception from the definition for certain bank activities. 15 U.S.C.A. § 78c(a)(4)(B). *See* § 14:55 *infra*. *See also, e.g.,* Dennis T. Rice, The Expanding Requirement for Registration as "Broker–Dealer" Under the Securities Exchange Act of 1934, 50 Notre Dame Law. 201 (1974).

[3] 15 U.S.C.A. § 78c(a)(4)(A); 15 U.S.C.A. § 78c(a)(4)(B). *See* § 14:55 *infra*.

[4] *See generally* Henry F. Minnerop, The Role and Regulation of Clearing Brokers, 48 Bus.Law. 841 (1993). *See also, e.g.*, Henry F. Minnerop, Clearing Arrangements, 58 Bus. Law. 917 (2003). Note, Bar Baron at the Gate: an Argument for Expanding the Liability of Securities Clearing Brokers for the Fraud of Introducing Brokers, 74 N.U.L. Rev. 1014 (1999). *Cf.* Transfer On–Line, Inc., [1999–2000 Transfer Binder]Fed. Sec. L. Rep. (CCH) ¶ 77,862, 2000 WL 719802 (SEC No Action Letter May 3, 2000).

[5] Section 3(a)(5)(A) provides: "The term 'dealer' means any person engaged in the business of buying and selling securities for such persons own account, through a broker or otherwise." 15 U.S.C.A. § 78c(a)(5)(A). *Compare* section 2(12) of the 1933 Act, which defines dealer more broadly so as to include not only those dealing for their own account, but also professionals acting as brokers. 15 U.S.C.A. § 77b(12). Formerly Section 3(a)(5) provided: "The term 'dealer' means any person engaged in the business of buying and selling securities for his own account, through a broker or otherwise, but does not include a bank, or any person insofar as he buys or sells securities for his own account, either individually or in some fiduciary capacity, but not as part of a regular business." 15 U.S.C.A. § 78c(a)(5). When the statute was amended to its current form Congress added an exception from the definition for "a person that buys or sells securities for such person's own account, either individually or in a fiduciary capacity, but not

|   |   |
|---|---|
|   | as a part of a regular business." 15 U.S.C.A. § 78c(a)(5)(B). Congress also added an exception for certain banking activities. 15 U.S.C.A. § 78c(a)(5)(C). *See* § 14:55 *infra*. *Compare* section 2(a)(12) of the 1933 Act which defines dealer more broadly so as to include not only those dealing for their own account but also professionals acting as brokers. 15 U.S.C.A. § 77b(a)(12). |
| 5.05 | *See* Chapel Investments, Inc. v. Cherubim Interests, Inc., 177 F. Supp. 3d 981 (N.D. Tex. 2016) ("Dealers do not include persons 'who buy and sell securities for their own account as ordinary traders'"), quoting In the Matter of the Application of Gordon Wesley Sodorff, Jr. For Review of Disciplinary Action Taken by the National Association of Securities Dealers, Inc., 50 S.E.C. 1249, Release No. 34, 31134, Release No. 31134, 52 S.E.C. Docket 1246, 1992 WL 224082, *5 (S.E.C. Release No. 1992). |
| 5.10 | Chapel Investments, Inc. v. Cherubim Interests, Inc., 177 F. Supp. 3d 981 (N.D. Tex. 2016) (creditors were not dealers); Oceana Capitol Group Limited v. Red Giant Entertainment, Inc., 150 F. Supp. 3d 1219, 1225 (D. Nev. 2015) ("Reselling the freely tradeable shares acquired in a court approved Section 3(a)(10) exchange does not make the person receiving the shares a dealer that would be required to register"). |
| 6 | Sections 3(a)(4), 3(a)(5); 15 U.S.C.A. §§ 78c(a)(4), 78c(a)(5). |
| 7 | *Cf.* In re Southern States Cooperative, Inc., 2000 WL 966734 (Ill.Sec.Dept. No Action Letter 2000) (No–Action or Interpretive Letter) April 6, 2000 ("earnings commissions based upon the volume of securities sold by a person also indicates that person's status as a broker or dealer"). |
| 8 | Securities and Exchange Com'n v. Zubkis, Fed. Sec. L. Rep. (CCH) ¶ 90769, 2000 WL 218393 (S.D. N.Y. 2000); SEC v. Hansen, Fed. Sec. L. Rep. (CCH) ¶ 91426, 1984 WL 2413 (S.D. N.Y. 1984), Massachusetts Financial Services, Inc. v. Securities Investor Protection Corp., 411 F. Supp. 411, 415, Fed. Sec. L. Rep. (CCH) ¶ 95654 (D. Mass. 1976); MuniAuction, Inc., 2000 WL 291007 (SEC No Action Letter March 13, 2000). *See also, e.g.,* Stockback.com, LLC, 2000 WL 1072530 (SEC No Action Letter July 28, 2000) MuniAuction, Inc., 2000 WL 291007 (SEC No Action Letter March 13, 2000); Charles Schwab & Co., Inc., 1996 WL 762999 (SEC No Action Letter November 27, 1996); Angel Capital Electronic Network, 1996 WL 636094 (SEC No Action Letter October 25, 1995). |
| 9 | Brumberg, Mackey & Wall, P.L.C., 2010 WL 1976174 (SEC. No Action Letter, May 17, 2010) (refusing no action request). *But cf.,* Sinclair & Co. LLC v. Pursuit Inv. Management LLC, 74 A.D.3d 650, 903 N.Y.S.2d 395 (1st Dep't 2010) (broker-dealer's customer referral services were not sufficiently investment-related to make investment fund manager its customer such that arbitration would be required). |
| 10 | *See, e.g.,* Securities And Exchange Commission V. Milan Capital Group, Inc., Ira A. Monas And Rita A. Monas, 00 CIV. 108 (DC) (S.D.N.Y.) (JANUARY 7, 2000), Litigation Release No. 16405, 71 S.E.C. Docket 1080, 2000 WL 12467 (S.E.C. Release No. 2000). *See also, e.g.,* Securities and Exchange Commission Release Notice, Release No. 33, 7810, Release No. 34, 42531, Release No. 7810, Release No. 42531, 71 S.E.C. Docket 2070, 2000 WL 279232 (S.E.C. Release No. 2000) (participation in unregistered offerings). |
| 11 | *See* StockPower, Inc., 1998 WL 767495 (SEC No Action Letter July 13, 1998) (company announcing public offerings on website was not acting as a broker-dealer where all it did was to provide, at no charge, a Web site where investors can obtain a prospectus and other information and access a secure communication link to contact directly the independent Bank Transfer Agent). *See also, e.g.,* e-Media, LLC, 2000 WL 1848294 (SEC No Action Letter Dec. 14, 2000) (Internet portal providing vehicle for online road shows to registered broker-dealers did not have to register itself as a broker-dealer). |
| 12 | In re Flannigan, Release No. 34, 47142, Release No. 47142, 79 S.E.C. Docket 842, 2003 WL 60764 (S.E.C. Release No. 2003) (affirming NASD sanctions for using unregistered personnel in soliciting indications of interest in IPO); Oil–N–Gas, Inc., 2000 WL 1119244 (SEC No Action Letter June 8, 2000). |
| 13 | *See* City of Milford v. Andresakis, 1996 WL 431820 (Conn. Super. Ct. 1996). |
| 14 | Progressive Technology, Inc., [2000–2001 Transfer Binder]Fed. Sec. L. Rep. (CCH) ¶ 78,009, 2000 WL 1508655 (SEC No Action Letter Oct. 11, 2000). |
| 15 | Charles Schwab & Co., Inc., 1996 WL 762999 (SEC No–Action Letter November 27, 1996) (granting no action relief to Internet providers to provide a link between their subscribers and a registered broker-dealer). *See, e.g.,* Azza Intern. Corp. v. Gas Research Institute, 2001 WL 103414 (N.D. Ill. 2001). |

| | |
|---|---|
| 16 | e-Media, LLC, 2000 WL 1848294 (SEC No Action Letter Dec. 14, 2000) (Internet portal providing vehicle for online road shows to registered broker-dealers did not have to register itself as a broker-dealer). |
| 17 | Progressive Technology Inc., 2000 WL 1508655 (SEC No Action Letter Oct. 11, 2000) (providing an online resource for individuals or businesses that are interested in obtaining debt and/or equity financing); Stockback.com, LLC, 2000 WL 1072530 (S.E.C. No–Action Letter July 28, 2000) (consumer stock ownership program); Angel Capital Electronic Network, 1996 WL 636094 (SEC No Action Letter Oct. 25, 1996) (online listing of small business offerings). *But see* Oil–N–Gas, Inc., 2000 WL 1119244 (SEC No Action Letter June 8, 2000) (proposal to provide oil and gas investment opportunities to accredited investors would result in operating as a broker-dealer; no action relief denied). |
| 18 | *See* Headway Corporate Staff Administration, 2002 WL 1998005 (SEC No Action Letter Aug. 14, 2002) (no action letter granted even though some of the brokerage firm employees would also be employees of the firm in question, since they would not be engaging in the securities business with respect to the employment with the human resources firm). |
| 19 | Total Benefit Communications, Inc., 2001 WL 1477917 (SEC No Action Letter Nov. 6, 2001). |
| 20 | U.S. v. Harrison, 26 Fed. Appx. 335 (4th Cir. 2002). |
| 21 | Streetline, Inc., 2002 WL 1290386 (SEC No Action Letter June 4, 2002). |
| 22 | In addition to the authorities in the immediately preceding footnote, *see* Tara Loomis, Broker–Dealers: SEC Scratches Head, N.Y.L.J. p. 5 (May 31, 2001). |
| 23 | Azza Intern. Corp. v. Gas Research Institute, 2001 WL 103414 (N.D. Ill. 2001). *See* Tara Loomis, Broker–Dealers: SEC Scratches Head, N.Y.L.J. p. 5 (May 31, 2001). |
| 24 | Charles Schwab & Co., Inc., 1996 WL 762999 (SEC No Action Letter November 27, 1996) (granting no action relief to Internet providers to provide a link between their subscribers and a registered broker-dealer). *See, e.g.,* Azza Intern. Corp. v. Gas Research Institute, 2001 WL 103414 (N.D. Ill. 2001) ("The Schwab letter addressed the situation raised by broad-based portals that would not specifically direct their operations toward the securities industry, and that would take an essentially passive role toward the interaction between the brokerage and customers, other than routing messages. In that context, the portal could receive a 'nominal flat fee' for each order transmitted. The staff has never extended the Schwab letter beyond that narrow context"). *See also, e.g.,* e-Media, LLC, 2000 WL 1848294 (SEC No Action Letter Dec. 14, 2000) (Internet portal providing vehicle for online road shows to registered broker-dealers did not have to register itself as a broker-dealer). |
| 25 | Massachusetts Financial Services, Inc. v. Securities Investor Protection Corp., 411 F. Supp. 411, 415, Fed. Sec. L. Rep. (CCH) ¶ 95654 (D. Mass. 1976), affirmed 545 F.2d 754 (1st Cir.1976), cert. denied, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977) (definitions of broker and dealer "connote a certain regularity of participation in securities transactions at key points in the chain of distribution"). |
| 26 | Massachusetts Financial Services, Inc. v. Securities Investor Protection Corp., 411 F. Supp. 411, 415, Fed. Sec. L. Rep. (CCH) ¶ 95654 (D. Mass. 1976), affirmed 545 F.2d 754 (1st Cir.1976), cert. denied, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977); BD Advantage, Inc., 2000 WL 1742088 (SEC No Action Letter Oct. 11, 2000). *See also* Securities and Exchange Commission v. National Executive Planners, Ltd., 503 F. Supp. 1066, 1073, Fed. Sec. L. Rep. (CCH) ¶ 97822 (M.D. N.C. 1980). |
| 27 | *See, e.g.*, BD Advantage, Inc., 2000 WL 1742088 (SEC No Action Letter Oct. 11, 2000). |
| 28 | BD Advantage, Inc., 2000 WL 1742088 (SEC No Action Letter Oct. 11, 2000). |
| 29 | BD Advantage, Inc., 2000 WL 1742088 (SEC No Action Letter Oct. 11, 2000) relying on S.E.C. v. Century Inv. Transfer Corp., Fed. Sec. L. Rep. (CCH) ¶ 93232, 1971 WL 297 (S.D. N.Y. 1971) (defendant "engaged in the brokerage business by soliciting customers through ads in the Wall Street Journal, and engaging in sales activities designed to bring about mergers between private corporations and publicly held shells"). |
| 30 | Securities and Exchange Commission v. National Executive Planners, Ltd., 503 F. Supp. 1066, 1073, Fed. Sec. L. Rep. (CCH) ¶ 97822 (M.D. N.C. 1980). |
| 31 | UFITEC, S.A. v. Carter, 20 Cal. 3d 238, 142 Cal. Rptr. 279, 571 P.2d 990, Fed. Sec. L. Rep. (CCH) ¶ 96252 (1977). |

      *See also, e.g.,* S.E.C. v. Ridenour, 913 F.2d 515, Fed. Sec. L. Rep. (CCH) ¶ 95475 (8th Cir. 1990) (account executive for brokerage firm who dealt with clients with regard to his numerous "private" bond deals had a sufficiently high level of activity to require registration as a broker-dealer).

32    S.E.C. v. Kenton Capital, Ltd., 69 F. Supp. 2d 1, 13 (D.D.C. 1998).

33    *See* Azza Intern. Corp. v. Gas Research Institute, 2001 WL 103414 (N.D. Ill. 2001).

34    Joseph McCulley, SEC No–Action Letter, [1972–1973 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 78,982 at 82,111 (Sept. 1, 1972).

35    Joseph McCulley, SEC No–Action Letter, [1972–1973 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 78,982 at 82,111 (Sept. 1, 1972).

36    S.E.C. v. Schmidt, Fed. Sec. L. Rep. (CCH) ¶ 93202, 1971 WL 293 (S.D. N.Y. 1971).

37    *E.g.,* Joseph McCulley, [1972–1973 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 78,982 (SEC No–Action Letter Sept. 1, 1972). *See also, e.g.,* Samuel M. Krieger, 1982 WL 29327 (SEC No Action Letter July 11, 1982).

38    Joseph McCulley, [1972–1973 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 78,982 (SEC No–Action Letter Sept. 1, 1972).

39    *See, e.g.,* S.E.C. v. Kenton Capital, Ltd., 69 F. Supp. 2d 1, 13 (D.D.C. 1998).

40    Castleman & Co., [1975–1976 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 80,260 at 85,552 (SEC No–Action Letter July 15, 1975). *See also, e.g.,* John R. Wirthlin, 1999 WL 34898 (SEC No Action Letter Jan. 19, 1999) (staff would not grant no action relief to individual who proposed to contact certain professionals, such as accountants and commercial real estate brokers, who may have clients that are interested in exchanging their interests in real estate for registered real estate limited partnership interests).
In contrast, the sale of real estate will not by itself trigger registration as a securities broker-dealer. *Cf.,* Notice of Application of the National Association of Realtors for Exemptive Relief Under Sections 15 and 36 of the Exchange Act and Request for Comment, Sec. Exch. Act Rel. No. 34–56779 (SEC Nov. 9, 2007) (proposing an exemption from the 1934 Act's broker-dealer registration requirements for bona fide real estate brokers dealing with commercial real estate ventures).

41    *See* UFITEC, S.A. v. Carter, 20 Cal. 3d 238, 142 Cal. Rptr. 279, 571 P.2d 990, Fed. Sec. L. Rep. (CCH) ¶ 96252 (1977).

42    Hallmark Capital, 2007 WL 1879799 (SEC No Action Letter June 11, 2007).

43    15 U.S.C.A. §§ 78c(a)(4), (a)(5).

44    15 U.S.C.A. § 78c(a)(5).

45    *See* David A. Lipton, A Primer on Broker–Dealer Registration, 36 Cath.U.L.Rev. 899, 914–15 (1987).

46    U.S. S.E.C. v. Benger, 934 F. Supp. 2d 1008, Fed. Sec. L. Rep. (CCH) ¶ 97352 (N.D. Ill. 2013) (SEC lacked jurisdiction to require registration of defendants in the United States engaging in off-shore boiler-room activities; the court reasoned that as is the caser with Rule 10b-5, domestic transactions are required before the SEC can impose the registration requirements of section 15(a)). In so ruling the court relied on Morrison v. National Australia Bank Ltd., 561 U.S. 247, 130 S. Ct. 2869, 177 L. Ed. 2d 535, Fed. Sec. L. Rep. (CCH) ¶ 95776, R.I.C.O. Bus. Disp. Guide (CCH) ¶ 11932, 76 Fed. R. Serv. 3d 1330 (2010), which along with extraterritorial jurisdiction is discussed in § 17.4 *infra*.

47    *See, e.g.,* Eastside Church of Christ v. National Plan, Inc., 391 F.2d 357, 361–362 (5th Cir. 1968). *Cf.* Sec. Exch. Act Rel. No. 34–39291 (SEC 1997) (denying exemption for nonprofit association set up to facilitate share purchases through dividend reinvestment plans). *But cf.* Social Finance, Inc., 2014 WL 5907528 (SEC No Action Letter November 13, 2014) (firm assisting various not-for-profit social service providers in obtaining funding for their operations or social programs through the offer and sale of Social Impact Bonds (SIBs) without registering as a broker-dealer pursuant to Section 15(b) of the Exchange Act); Christian Bonds, Inc., [1971–1972 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 78,407 (SEC No Action Letter Aug. 27, 1971) (advising church officials on procedures in bond offerings, providing necessary documents, and arranging with local bank handling of bond retirements and

| | |
|---|---|
| | payment of principal and interest did not require registration as broker-dealer). |
| 48 | *See, e.g.*, Oil–N–Gas, Inc., 2000 WL 1119244 (SEC No Action Letter June 8, 2000) (Internet service providing information in connection with securities purchases); John Asling, [1973 Transfer Binder]Fed. Sec. L. Rep. (CCH) ¶ 79,484 (SEC No Action Letter Aug. 4, 1973) (matching mutual fund buy and sell orders); Fulham & Co., Inc., [1972–1973 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 79,186 (SEC No Action Letter Dec. 20, 1972) (private investment bank); William Goldberg, Inc., [1972–1973 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 78,990 (SEC No Action Letter Aug. 25, 1972) (investment adviser); Instant Funds, Inc., [1970–1971 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 78,090 (SEC No Action Letter Feb. 12, 1971) (offering to purchase up to ten shares of certain company from each seller who brought in certificate). |
| 49 | *See* Michael Bamberger, Sales of Businesses—When Are Business Brokers Securities Brokers?, 71 Marq.L.Rev. 309 (1988). |
| 50 | *See* In The Matter Of Stephen Mazuchowski (A/K/A Steve Mazur), Respondent., Release No. 34, 67532, Release No. 30158, Release No. 67532, Release No. IC - 30158, 104 S.E.C. Docket 1136, 2012 WL 3068201 (S.E.C. Release No. 2012). |
| 51 | In The Matter Of Stephen Mazuchowski (A/K/A Steve Mazur), Respondent., Release No. 34, 67532, Release No. 30158, Release No. 67532, Release No. IC - 30158, 104 S.E.C. Docket 1136, 2012 WL 3068201 (S.E.C. Release No. 2012) |
| 52 | 15 U.S.C.A. § 78c(e). |
| 53 | 15 U.S.C.A. § 78c(a)(12)(A)(v), added to the 1934 Act by the Philanthropy Protection Act of 1995, Pub.L. No. 104-62, 109 Stat. 682 (Dec. 8, 1995). |
| 54 | Warfield v. Alaniz, 569 F.3d 1015, Blue Sky L. Rep. (CCH) ¶ 74775, Fed. Sec. L. Rep. (CCH) ¶ 95262 (9th Cir. 2009) (upholding finding that charitable annuity was a security and company was not shielded by the Investment Company Act exclusion). |

**End of Document** © 2019 Thomson Reuters. No claim to original U.S. Government Works.