UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No. 19 C 1711 |
| RIVER NORTH EQUITY LLC, EDWARD M. LICEAGA, MICHAEL A. CHAVEZ, NANOTECH ENTERTAINMENT, INC., NANOTECH GAMING, INC. DAVID R. FOLEY, and LISA L. FOLEY, | ) ) ) ) ) ) | Judge Thomas M. Durkin |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court in this enforcement action by the United States Securities and Exchange Commission ("SEC") is defendants River North Equity, LLC ("River North") and Edward M. Liceaga's partial motion to dismiss, and defendant Michael A. Chavez's motion to dismiss (River North, Liceaga and Chavez together, "Defendants"). R. 36; R. 40. For the following reasons, the Court denies both motions.

**Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background

This case involves the stock distribution of two microcap companies under the control of David Foley: NTEK and NTGL. According to the complaint and of relevance here, Foley caused those companies to issue him over 1 billion shares of stock. He and his wife Lisa Foley then orchestrated the sale of those shares at discounted prices to defendant River North in dozens of transactions through River North's Director of Business Development, Chavez. River North's president and sole manager Liceaga then quickly resold the stock to investors in unregistered transactions, paying some of the proceeds back to the Foleys. The SEC brought a nine-count complaint against the Defendants, the Foleys, and others regarding this and related conduct. R. 1. River North and Liceaga then filed a partial motion to dismiss certain of the claims against

2

them, R. 36, and Chavez filed a separate motion seeking dismissal of all claims against him, R. 40. The following counts are at issue for purposes of resolving those motions: Count VII, alleging that River North acted as an unregistered dealer and Chavez as an unregistered broker in violation of Section 15(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78o(a)(1), in connection with those transactions; Count VIII, alleging that Liceaga and Chavez aided and abetted River North's Section 15(a) violations; and Count IX, alleging that Liceaga is liable in the alternative as a control person for River North's violations.

## Analysis

***Preliminary matters.*** Certain considerations underlie the Court's decision. First, and as the parties acknowledged, there is no binding authority construing either "dealer" or "broker" under Section 15(a). And the majority of the decisions the parties cite were on summary judgment or following a bench trial. In fact, only one decision, *SEC v. Mapp*, 240 F. Supp. 3d 569 (E.D. Tex. 2017), granted a motion to dismiss a Section 15(a) claim, and the Court views it as an outlier.

Next, while the parties agree that the Court should consider all of the circumstances surrounding the transactions in question in making its determinations on those issues, and that certain factors—discussed later—are relevant to its analysis, they also agree that no factor controls, and that the SEC need not plausibly allege the presence of each factor, so long as it has alleged some. *SEC v. Benger*, 697 F. Supp. 2d 932, 945 (N.D. Ill. 2010). Indeed, the presence of even a single factor may be enough.

Further, although Defendants contend that many of the SEC's allegations are conclusory, in so arguing, Defendants ignore that the Seventh Circuit allows a plaintiff to supplement allegations in responding to a Rule 12(b)(6) motion, provided the supplemental allegations are consistent with the complaint. *Geinosky v. City of Chi.*, 675 F.3d 743, 745-46 n.1 (7th Cir. 2012); *Forseth v. Vill. of Sussex,* 199 F.3d 363, 368 (7th Cir. 2000). Here, the SEC's response is consistent with its complaint in all relevant respects, so the Court considers the allegations there in ruling on Defendants' motions.

Finally, and as the Court stated at oral argument, although Defendants are correct that the SEC is not entitled to any leniency for pleading deficiencies, the fact that it conducted a pre-suit investigation does not mean that a higher pleading standard applies either. Instead, like any plaintiff, to survive Defendants' motions, the SEC need only satisfy the standard outlined above. The Court now turns to the merits of Defendants' respective motions, beginning with River North and Liceaga's.

***River North and Liceaga's Motion.*** River North argues that it acted as a trader, not a dealer, so Section 15(a)'s registration requirement did not apply. Liceaga argues by extension that it could not be liable for aiding and abetting River North, or for control person liability, because there was no Section 15(a) violation to begin with. Accordingly, the Court first addresses whether the SEC has plausibly alleged that River North acted as a "dealer."

The broker-dealer registration requirement is "of the utmost importance in effecting the purposes of the Act," as it enables the SEC to "exercise discipline over

4

those who may engage in the securities business," and "establishes necessary standards with respect to training, experience, and records." *Benger*, 697 F. Supp. 2d at 944 (quoting *Celsion Corp. v. Stearns Mgmt. Corp.*, 157 F. Supp. 2d 942, 947 (N.D. Ill. 2001)). As such, the Exchange Act broadly defines "dealer" as "any person engaged in the business of buying and selling securities . . . for such person's own account." Section 3(a)(4)(A), 15 U.S.C. § 78c(a)(5)(A). Under what has become known as the "trader exception," however, a person who buys or sells securities "*not* as part of a regular business" is not a dealer. Section 3(a)(5)(B), 15 U.S.C. § 78c(a)(5)(B).

The "dealer" definition has not been subject to extensive judicial interpretation. But courts that have construed it generally require a "certain regularity of participation in securities transactions." *See, e.g., Mass. Fin. Servs., Inc. v. Sec. Investor Prot. Corp.*, 411 F. Supp. 411, 415 (D. Mass. 1976), *aff'd*, 545 F.2d 754 (1st Cir. 1976); *SEC v. Offill*, 2012 WL 246061, at *7 (N.D. Tex. Jan. 26, 2012). The SEC alleges that during the relevant period River North bought and sold over 10 billion shares of stock from more than 62 microcap issuers, and then quickly resold them to the investing public, receiving some $31 million in profit. From this, it is more than plausible that River North meets the statutory "dealer" definition.

But River North contends that more is required, complaining that the SEC failed to allege the presence of a laundry list of factors set forth in various SEC no-action letters and other guidance. By way of example, River North contends that the SEC has not alleged that River North: extended credit; acted as an underwriter; held itself out publicly as willing to buy or sell securities from its own account on a

5

continuing basis; or carried a dealer inventory of securities. But as the Court stated, these factors (and any decisions construing them) are not controlling. They are neither exclusive, nor function as a checklist through which a court must march to resolve a dispositive motion. And whether and which are met is necessarily a fact-based inquiry best reserved for summary judgment or trial. In short, there's a reason most opinions the parties cite were decided at later stages.

Further, the SEC actually *did* allege certain of these factors. Indeed, despite River North's attempts to persuade the Court otherwise at oral argument, the Court finds that the SEC sufficiently alleged that River North effectively extended credit to the Foleys through its take-now, pay-later stance. And it is likewise clear from the allegations that River North held itself out publicly through its website as willing to buy securities.

But the Court finds it particularly significant that according to the allegations, like an underwriter, River North: (1) purchased stocks at a discounted price directly from numerous issuers, including NTEK and NTGL through Foley as their control person (instead of purchasing stocks already in the marketplace, like a trader); and (2) turned a profit not from selling only after market prices increased (like a trader), but rather from quickly reselling at a marked-up price. This arrangement has been recognized by the SEC as characteristic of a "dealer." *See Gordon Wesley Sodorff, Jr.*, 50 S.E.C. 1249, 1992 WL 224082, at *5 (Sep. 2, 1992). The Court thus rejects River North's argument that the SEC has failed to allege it was a "dealer."

For his part, Liceaga argues that the SEC failed to state a claim for aider and abettor liability (Count VIII) and control person liability (Count IX) because it did not allege a violation by River North as required. Because the Court has concluded otherwise, those arguments necessarily fail. Liceaga makes no other argument regarding control person liability.

But Liceaga contends that the SEC failed to state a claim for aider and abettor liability because it did not plausibly allege *scienter*. In addition to a primary violation, aider and abettor liability in this context requires: (1) the alleged aider and abettor's general awareness that his actions were part of an overall illegal course of conduct; and (2) the aider and abettor's substantial assistance in the primary violation. *Monetta Fin. Servs., Inc. v. SEC*, 390 F.3d 952, 956 (7th Cir. 2004). The Seventh Circuit has yet to determine whether recklessness can establish *scienter* for this purpose. But the Court finds that it is plausible if not likely from the SEC's allegations that Liceaga was aware that the conduct at issue was not lawful. Indeed, Liceaga is River North's president and sole manager, with considerable experience in the field. And according to the SEC, he obtained attorney opinion letters by submitting information about River North that was false,[1] profiting (along with River North) from the conduct at issue to the tune of $3.4 million. As such, this argument also fails.

---

[1] Among other things, the SEC alleges that the materials Liceaga submitted in order to obtain these opinion letters included the false statement that River North and Liceaga had fully paid for and owned the shares in question for more than one year prior to sale—a fact Liceaga must have known to be false. R. 1 ¶¶ 73-74.

7

Finally, River North and Liceaga argue that allowing the claims against them to go forward would violate their due process rights, citing the Second Circuit's decision in *Upton v. SEC*, 75 F.3d 92 (2d Cir. 1996) and pointing to the attorney opinion letters Liceaga solicited. But while the Court agrees that formal SEC guidance on these matters would be helpful, it cannot conclude that the SEC's claims fail as a matter of law for lack of it. The definition at issue is broad. The factors for the Court's consideration are merely factors. And the players in this case are not new to this field. Accordingly, the Court denies River North and Liceaga's motion to dismiss in its entirety.

***Chavez's motion.*** Chavez argues that he is not a broker under the Exchange Act, and therefore did not violate the Act by failing to register. But the Court again finds the SEC's claim plausible as alleged.

Like "dealer," the Exchange Act defines "broker" broadly to include "any person engaged in the business of effecting transactions in securities for the account of others." Section 3(a)(4)(A), 15 U.S.C. § 78c(a)(4)(A). And again, courts construing the definition have considered various factors. In *Benger*, the court found "regularity of participation in securities transactions at key points in the chain of distribution" and receipt of commissions or other transaction-based compensation of particular importance. 697 F. Supp. 2d at 944.

The SEC alleges both here. Indeed, according to the complaint, as River North's Director of Business Development, it was Chavez's job to identify investment opportunities and negotiate terms of securities transactions. And Chavez's conduct

8

was certainly "regular." With respect to NTEK and NTGL alone, the SEC alleges that Chavez brokered 82 separate sales of stock from the Foleys to River North, involving 1.1 billion shares of NTEK stock, and 19.1 million shares of NTGL.

Chavez does not dispute the numbers, but contends that the complaint alleges only that Chavez "helped facilitate"—as opposed to "effectuated"—sales. This is pure semantics; the allegations make clear that Chavez was deeply involved in the transactions at key points. Specifically, and among other things, Chavez: negotiated the terms of the stock purchase agreements, obtaining substantial discounts for River North; confirmed key terms of each stock sale with the Foleys; arranged for the transfer of securities from the Foleys to River North's brokerage account; and assisted the Foleys in obtaining advances from River North in connection with some of the transactions. Simply put and as in *Benger*, Chavez "facilitated the consummation of the sales." 697 F. Supp. 2 at 945. And that is enough.

According to the SEC, Chavez also received a 1.95% fee from the Foleys—referred to by the Foleys themselves as a "broker fee"—among other transaction-based compensation. Chavez contends that any conclusion that can be drawn from this "broker fee" is vitiated by the fact that Chavez also received a bonus and salary. But the Court is not persuaded that the receipt of other compensation renders his status as broker implausible; indeed, percentage-based compensation like the broker fee implies reward for success *as a broker*, as does the fact that it was referred to by the Foleys as such.

Next, Chavez argues that the SEC failed to plausibly allege other factors set forth in *SEC v. Hansen*, 1984 WL 2413 (S.D.N.Y. Apr. 6, 1984),[2] and also contends that the SEC's claim fails because it did not allege Chavez's "control or authority over the accounts of others." But despite Chavez's urging to the contrary, the Court finds that the "control" factor is just that—another factor in a list that is persuasive, but not binding. And as stated, the SEC need not allege facts to establish all factors; the presence of even a few is enough. *Benger*, 697 F. Supp. 2d at 945.

In sum, the allegations are sufficient to infer that Chavez was heavily involved in the Foley transactions at key points, and received transaction-based compensation for his work. Accordingly, it is plausible that Chavez acted as an unregistered broker, and his motion to dismiss is denied as to Count VII.

Chavez also contends that Count VIII—that he aided and abetted River North's violations—should be dismissed for failure to allege either that Chavez had the requisite knowledge of River North's violation, or that he substantially assisted River North in its violation. But again the Court disagrees. Chavez's argument regarding substantial assistance fails for the reasons the Court found that the SEC sufficiently alleged his involvement in the transactions for purposes of Count VII. And regarding *scienter*, Chavez does not dispute that he was barred by FINRA from

---

[2] The six factors set forth in *Hansen* as relevant to the "broker" determination are: (1) whether the person is an employee of the issuer; (2) whether the person received commissions as opposed to salary; (3) whether the person is selling, or previously sold, the securities of other issuers; (4) whether the person is involved in negotiations between the issuer and the investor; (5) whether the person makes valuations as to the merits of the investment or gives advice; and (6) whether the person is an active rather than passive finder of investors. *Hansen*, 1984 WL 2413, at *10.

associating with any member firm. Accordingly, he knew he could not associate with a registered dealer, so must have known that River North was not registered. Yet Chavez associated with River North anyway, and the allegations permit an inference that he sought an unregistered firm specifically—negotiating discounted purchase prices for it as a broker would—to further his financial wherewithal to the tune of $2.1 million in personal profit. This is enough to infer his knowledge. Chavez's motion to dismiss Count VIII is denied.

## Conclusion

The Court's ruling provides no comment on the ultimate success of the SEC's allegations. But because each of the SEC's claims is plausible as alleged, that issue is for another day. The motions to dismiss are denied. R. 36; R. 40.

ENTERED:

*Thomas M Durkin*

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: December 4, 2019