UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-1711 |
| | ) | |
| v. | ) | District Judge Sunil R. Harjani |
| | ) | |
| David R. Foley, et. al., | ) | Magistrate Judge Keri L. Holleb Hotaling |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S STATUS REPORT AND STATEMENT OF
INTENT TO MOVE FOR SUMMARY JUDGMENT**

Pursuant to the Court's minute entry of July 17, 2025 (Docket No. 168), and as directed by the Court, Plaintiff Securities and Exchange Commission ("SEC") files this status report and statement of intent to move for summary judgment against Defendants David R. Foley, Lisa L. Foley and Michael A. Chavez after the completion of fact and expert discovery.

**A.      Status of the SEC's Claims**

1.      On March 11, 2019, the SEC filed its Complaint, alleging that nine defendants in this matter violated antifraud and registration provisions of the Securities Act of 1933 ("the Securities Act"), and/or the Securities Exchange Act of 1934 ("the Exchange Act") including offering and selling unregistered securities, engaging in the manipulative trading of those securities, acting as an unregistered securities dealer and broker and issuing false and misleading public disclosures.[1]  [*See* Docket No. 1]

---

[1] On May 7, 2019, the Court approved the SEC's partial or "bifurcated" settlements with Defendants Jeffrey Foley and Bennie Blankenship, entered judgments including permanent injunctive relief, and ordered financial remedies to be determined at a later date.  [Docket Nos. 29, 30, 31]  On December 19, 2019, the Court approved the SEC's settlements with Defendants NanoTech Entertainment, Inc. ("NTEK") and NanoTech Gaming, Inc. ("NTGL") and entered judgments ordering permanent injunctive relief against each defendant.  [Docket Nos. 75, 76, 77]  The SEC's complaint did not request, and the consent judgments did not provide for, any financial relief against NTEK or NTGL.

2.      More recently, on June 17, 2025, the Court granted the SEC's request to dismiss certain claims against Defendants Edward Liceaga and River North Equity, LLC ("River North"). [Docket No. 164]  The Court then approved the SEC's settlements with Liceaga and River North, and entered consent judgments which included orders of permanent injunctive relief, disgorgement and prejudgment interest against each defendant, and a civil penalty against Liceaga.  [Docket Nos. 172, 173, 174]

3.      The SEC's claims for liability and remedies against Defendants David Foley, Lisa Foley and Michael Chavez remain pending.

**B.      Status of Related Criminal Case**

4.      On November 4, 2024, a federal jury convicted David Foley on two counts of securities fraud involving NTGL shares and acquitted him on eight wire fraud counts.  *United States v. Foley*, No. 21-CR-19 (N.D. Ill.).  In the criminal case, three motions are still pending (one pretrial and two post-trial) challenging the securities fraud counts.  In August 2025, David Foley's sentencing hearing was postponed and has not been rescheduled.

**C.      Status of Discovery**

5.      David Foley and Lisa Foley are *pro se*; they both invoked their Fifth Amendment rights and did not appear for deposition during discovery.  Chavez is now *pro se*; but he previously was represented by counsel when he was deposed in 2020.  The SEC has obtained sworn declarations from a number of witnesses, including Liceaga, investors, and records custodians.  The SEC also has obtained the transcripts from David Foley's criminal trial, where Foley's co-defendant Bennie Blankenship, after pleading guilty, offered testimony against Foley on the issue of market manipulation.

6.       The period allowed for fact discovery has been extended several times and closed on September 2, 2025.  [Docket No. 166]  However, there are a few written discovery matters that

remain to be addressed. Accordingly, the Magistrate Judge set a status hearing on November 13, 2025, at which time the Magistrate Judge expects to set a schedule for expert discovery. [Docket No. 175] The SEC already has retained an expert to provide appropriate opinion testimony in support of its claims.

### D. Motions for Summary Judgment

7. After the conclusion of expert discovery, the SEC intends to move for summary judgment against David Foley, Lisa Foley, and Chavez on *all* counts of the Complaint against them, including: against David and Lisa Foley under Section 5 of the Securities Act; against David Foley under Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder; against David Foley under Section 9(a)(2) of the Exchange Act; and against Chavez under Section 15(a) of the Exchange Act.

David Foley and Lisa Foley Are Liable Under Section 5 of the Securities Act

8. To establish a *prima facie* case against the Foleys under Section 5, the SEC must show that: (1) no registration statement was in effect or filed as to NTEK or NTGL; (2) the Foleys directly or indirectly sold or offered to sell those securities; and (3) the sale or offer was made through the use of interstate facilities or the mails. *SEC v. Zenergy Int'l, Inc.*, 141 F. Supp. 3d 846, 852 (N.D. Ill. 2015). No proof of scienter is required. *Id.* at 852, n. 6.

9. It is undisputed that David Foley and Lisa Foley directly or indirectly offered and sold shares of stock to the public as part of an unregistered distribution. The Foleys converted and were issued 1.1 billion shares of NTEK and 19.1 million shares of NTGL. They sold all of those securities to Liceaga and River North through companies owned by the Foleys: Royal Capital and Galaxy Entertainment. River North then sold those NTEK and NTGL securities on the public markets.

10. No registration statements were filed or in effect for any sales of NTEK and NTGL stock, and those sales utilized emails, the U.S. mail, phone calls and electronic fund transfers. For those transactions that occurred when David Foley was in prison, David Foley directed those sales and Lisa Foley acted as both a "substantial factor" and a "necessary participant" in the offer and sale of NTEK and NTGL stock. *See SEC v. Holschuh*, 694 F.2d 130, 140 (7th Cir. 1982). Lisa Foley closed over 40 of the 78 stock purchase deals with River North, negotiated advances of payment, and utilized some of the proceeds from the sales to fund NTEK's and NTGL's payroll and bills.

11. Once the SEC establishes its *prima facie* case, David Foley and Lisa Foley bear the burden of establishing any defenses to the SEC's claims. *See SEC v. Ralston Purina Co.*, 346 U.S. 119, 126 (1953). However, they will not be able to show that they qualify for any safe harbors or exemptions from registration. David Foley was an affiliate of NTEK and NTGL because he exerted control over each corporation, including hiring and firing employees, preparing financial statements and directing company employees. David and Lisa Foley also owned and controlled Royal Capital, Galaxy Entertainment and Universal Communication. And the Foleys' sales of NTEK and NTGL stock to River North failed to comply with the one-year holding period and other requirements set forth in Rule 144 relating to sales by affiliates. *See* 17 C.F.R. § 230.144(b), (d); *Zenergy*, 141 F. Supp. 3d at 853.

> David Foley Is Liable Under Sections 17(a) of the Securities Act and
> Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

12. The SEC can prove that David Foley violated Securities Act Section 17(a)(1) and 17(a)(3) and Exchange Act Section 10(b) and Rules 10b-5(a) and (c) by showing that he committed a deceptive or manipulative act in furtherance of a scheme to defraud in connection with the offer or

4

sale of securities.[2]  *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 159 (2008).  The SEC can prove violations of Securities Act Section 17(a)(2) and Exchange Act Rule 10b-5(b) by showing that David Foley made a material misstatement or omission in connection with the purchase or sale of securities.  *Basic, Inc. v. Levinson*, 485 U.S. 224, 299 (1988).  Violations of Section 17(a)(1) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 require a showing of scienter.  *Aaron v. SEC*, 446 U.S. 680, 701-02 (1980).  The SEC can prove David Foley's scienter by showing his recklessness, which has been defined as an "extreme departure from the standards of ordinary care, and which represents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor may have been aware of it." *Sundstrand Corp. v. Sun Chem. Corp.*, 553 F.2d 1033, 1045 (7th Cir. 1976).  Scienter is not required to establish David Foley's violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act, which can be premised on negligence.  *See Aaron*, 446 U.S. at 696.

13.     It is undisputed that David Foley acted in concert with Blankenship by purchasing shares of NTEK and NTGL stock in the open market in an effort to artificially inflate the volume and purchase price of those stocks.  Blankenship's testimony in the criminal trial, and the emails exchanged between David Foley and Blankenship, demonstrate that they traded NTEK and NTGL stock in the open market in order to obtain a higher purchase price for each tranche of NTEK and NTGL stock that the Foleys sold to River North.  In addition, Foley and Blankenship traded in NTEK and NTGL in order to increase trading volume and create a liquid market into which River

---

[2]     As an initial matter, the SEC may invoke the doctrine of collateral estoppel to prove David Foley's liability for securities fraud by satisfying four criteria:  (1) the issue was the same as in the prior litigation; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action.  *Grede v. FCStone, LLC*, 867 F.3d 767, 776 (7th Cir. 2017).  Here, a jury found David Foley liable for securities fraud involving NTGL, one of the very same stocks at issue in this case.  So once a judgment is entered against him, David Foley is precluded from relitigating his liability in this Court and summary judgment may be entered against him on that issue.  The collateral estoppel effect of a criminal judgment is not affected by a pending appeal. *See Ross ex rel. Ross v. Board of Educ. of Twp. High Sch. Dist. 211,* 486 F.3d 279, 284 (7th Cir. 2007).

North and Liceaga could sell NTEK and NTGL stock. David Foley also instructed Blankenship to encourage his investor group to purchase NTEK and NTGL stock at specific times through his promotions. The manipulative trading by David Foley and Blankenship, combined with the investor group's trading, had a significant impact on the market for NTEK and NTGL stock.

14.     David Foley acted with scienter. He and Blankenship coordinated their manipulative trading in accounts that they maintained and controlled. In addition, David Foley purchased millions of shares of NTEK stock in his own (and in Jeffrey Foley's) brokerage accounts at higher prices than he was receiving for the discounted shares the Foleys were selling to River North. As a sophisticated investor, David Foley knew or was reckless in not knowing that his actions created the false impression of an active and liquid market for NTEK and NTGL stock.

15.     In addition, it is undisputed that David Foley prepared false and misleading financial statements for both NTEK and NTGL, and directed his brother, Jeff Foley, to publish them on the OTC Markets website. David Foley is the maker of the false and misleading NTEK and NTGL financial statements because he had ultimate authority over the statements, including their content and whether and how to communicate them. *See Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2302 (2011). The financial statements were materially misleading because they: (1) disclosed only a portion of the promissory notes and convertible debentures issued to David Foley and his assignees; (2) failed to disclose that David Foley continued to control NTEK and NTGL, although Jeff Foley was the CEO of each entity; (3) failed to disclose that David Foley controlled Royal Capital and Galaxy Entertainment; and (4) falsely categorized the proceeds from the unregistered sales of NTEK and NTGL stock sold to River North and Liceaga as income to those companies. These misstatements and omissions were material because reasonable investors would have considered it important that the Foleys were selling millions of shares of NTEK and NTGL stock through debt conversions, that David was still in control of NTEK and NTGL, and that

6

millions of dollars in purported "income" for NTEK were in fact the proceeds from sales of company stock. At the time David Foley made each of the false statements, he knew or was reckless in not knowing, that they were false.

### David Foley Is Liable Under Section 9(a)(2) of the Exchange Act

16.     The SEC can prove that David Foley violated Section 9(a)(2) of the Exchange Act, which makes it unlawful to "effect . . . a series of transaction in any security . . . creating actual or apparent active trading in such security, or raising or depressing the price of such security, for the purpose of inducing the purchase or sale of such security by others." *See*, *e.g.*, *SEC v. Fiore*, 416 F. Supp. 3d 306, 325 (S.D.N.Y 2019) (quoting 15 U.S.C. § 78i(a)(2)).

17.     It is undisputed that David Foley issued instructions to, and acted in concert with, Blankenship in order to manipulate the price of NTEK and NTGL stock. As discussed above, Foley and Blankenship engaged in a series of transactions in NTEK and NTGL stock in ways that created a false and misleading appearance of market activity and inflated the stock price for the purpose of increasing the profitability of the Foleys' stock sales to River North.

### Michael Chavez Is Liable Under Section 15(a) of the Securities Act

18.     During the period of time at issue, Chavez was not registered as a securities broker (although he previously was licensed as one). Accordingly, the SEC can prove that Chavez violated Section 15(a) of the Exchange Act, acting as a securities broker as defined by Section 3(a)(4) of the Exchange Act, by showing that he "engaged in the business of effecting transactions in securities for the account of others." That statutory phrase connotes "a certain regularity of participation in securities transactions at key points in the chain of distribution." *Massachusetts Fin. Serv., Inc. v. Sec. Investor Prot. Corp.,* 411 F. Supp. 411, 415 (D. Mass. 1976), *aff'd*, 545 F.2d 754 (1st Cir. 1976); *see also SEC v. Kramer*, 778 F. Supp. 2d 1320, 1334 (M.D. Fla. 2011). The SEC can prevail by showing that a defendant held himself out as a broker-dealer, or received transaction-based

compensation or commissions, or by extending or arranging for the extension of credit in connection with a securities transaction. *See SEC v. Benger*, 697 F. Supp. 2d 932, 945 (N.D. Ill. 2010); *Massachusetts Fin. Servs., Inc.,* 411 F. Supp. at 415; *SEC v. Nat'l Executive Planners, Ltd.*, 503 F. Supp. 1066, 1073 (M.D.N.C. 1980).

19.     It is undisputed that Chavez participated regularly and at key points in the sales of NTEK and NTGL between the Foleys and River North. Chavez introduced the Foleys to Liceaga as potential sellers of microcap securities. Then, as River North's Director of Business Development, Chavez facilitated approximately 78 sales of NTEK and NTGL stock between the Foleys and River North from 2014 to 2016. Chavez negotiated with the Foleys, on behalf of River North, the terms of the stock purchase agreements. Chavez received transaction-based compensation from both the Foleys (as sellers) and from River North (as a buyer). Chavez also received bonuses based on River North's profits from its sales of NTEK and NTGL stock to the public. Finally, Chavez arranged for the extension of credit between the Foleys and River North by negotiating the advancement of funds in connection with River North's purchases of NTEK and NTGL stock.

20.     Counsel for the plaintiff will be prepared to discuss this matter at the in-person status hearing scheduled for September 18, 2025, at 9:30 a.m. (*See* Docket No. 168)

Date:  September 11, 2025                          Respectfully submitted,

                                         */s/ Robert M. Moye*
                                         Robert M. Moye (MoyeR@sec.gov)
                                         Alyssa A, Qualls (QuallsA@sec.gov)
                                         Richard G. Stoltz (StoltzR@sec.gov)
                                         Christine S. Bautista (BautistaC@sec.gov)
                                         175 West Jackson Boulevard, Suite 1450
                                         Chicago, Illinois 60604
                                         (312) 353-7390

                                         *Attorneys for Plaintiff Securities*
                                         *and Exchange Commission*

## **CERTIFICATE OF SERVICE**

I do hereby certify that on September 11, 2025, I served a copy of the foregoing document

on all counsel of record by the Court's ECF system, and by email delivery on:


Defendant David R. Foley  (david@hyperware.com)

*pro se*

Defendant Lisa L. Foley (lisalyoung@aol.com)

*pro se*

Defendant Michael A. Chavez (mchavez@ridgepointcapital.com)

*pro se*

Defendant Bennie Blankenship (bennie_blankenship@yahoo.com)

*pro se*


*s/Robert M. Moye*
Robert M. Moye
